UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS Jun 1

Civil Action No. _____    M.P

|  |  |
|---|---|
| D. Lyle Elkins<br>And<br>Martha Elkins<br>    Plaintiffs<br><br>Vs.<br><br>International Brotherhood of<br>Teamsters Local 264<br>And<br>Catherine Creighton<br>And<br>Shuttle America<br>    Defendants | **05 11130 NMG**<br><br>RECEIPT # _____<br>AMOUNT $ 250.00<br>SUMMONS ISSUED 3<br>LOCAL RULE 4.1 ___<br>WAIVER FORM ___<br>MCF ISSUED ___<br>BY DPTY. CLK. M.P.<br>DATE 5/1/2005 |

COMPLAINT AND DEMAND FOR JURY TRIAL

MAGISTRATE JUDGE JGD

INTRODUCTION

1. This is an action brought by Plaintiffs D. Lyle Elkins (hereinafter referred to as "Lyle

Elkins") and his wife Martha Elkins, against the former employer of Mr. Elkins (Shuttle

America) for wrongful termination of employment in violation of contract, against an

employee organization (labor union) which had the obligation to represent Mr. Elkins in a

dispute regarding the termination of his employment, for breach of its duty of fair

representation owed to Mr. Elkins pursuant to federal caselaw as well as under the

Railway Labor Act, 45 U.S. Code Sections 151a, 152, 181 and 182. Specifically, on or

about February 3, 2003, Mr. Elkins was wrongfully discharged from his employment

with Shuttle America, in violation of the collective bargaining agreement between Shuttle

1

America and International Brotherhood of Teamsters Local 264. In the arbitration

hearing in which Mr. Elkins' termination was contested, he was represented by Ms.

Creighton, an attorney, acting on behalf of Local 264. The representation provided to

Mr. Elkins by attorney Creighton on behalf of Local 264 of the Teamsters was conducted

in such a manner as to be perfunctory and in bad faith, causing Mr. Elkins to lose the

arbitration, and causing Local 264 to have breached its duty of fair representation to Mr.

Elkins. Ms. Creighton is sued individually by Mr. Elkins for intentional and negligent

infliction of emotional distress. Shuttle America is sued by Mr. Elkins for wrongful

termination in violation of the collective bargaining agreement, as well as for intentional

infliction of emotional distress. Local 264 is sued by Mr. Elkins for breach of the duty of

fair representation, and negligent and intentional infliction of emotional distress. Martha

Elkins brings claims for loss of consortium against all defendants. The arbitration

decision denying Mr. Elkins' claims and upholding his termination was not issued until

December 3, 2004, and was not received by Mr. Elkins until on or after December 9,

2004, so the statutes of limitation for the claims asserted by Mr. and Mrs. Elkins in this

action did not start to run until December 9, 2004.

JURISDICTION AND VENUE

2. Jurisdiction over this matter lies in this Court pursuant to 28 U.S. Code Section

1331 (federal question jurisdiction) and 28 U.S. Code Section 1337 (regulation of

commerce) as this cases raises questions of whether certain of the Defendants breached

obligations owed to Plaintiff Lyle Elkins under the Railway Labor Act, 45 U.S. Code

Section 151, 151a, 152, 181 and 182. Jurisdiction pursuant to 28 U.S. Code Section 1367

(supplemental jurisdiction) is proper in this Court as to the breach of contract claims

2

against Shuttle America, the negligent and intentional infliction of emotional distress claims and the loss of consortium claims.

3.    Venue in this district is proper pursuant to 28 U.S. Code Section 1391, as Mr. Elkins was employed by Shuttle America in Bedford, Massachusetts, as a substantial part of the events giving rise to these claims occurred in this district, as Defendants Shuttle America and Teamsters Local 264 did business in this district, as the harm suffered by Mrs. Elkins occurred in this district, and as Defendants Shuttle America and Teamsters Local 264 do business in and reside in this district.

THE PARTIES

4.    Lyle Elkins is an individual residing in Centerville, Barnstable County, Massachusetts.  He has been, at all times relevant to this complaint, an employee as that term is defined in 45 U.S. Code sections 151 and 181.

5.    Martha Elkins is the wife of Plaintiff D. Lyle Elkins, and at all times relevant to this complaint was the wife of Lyle Elkins.  Mrs. Elkins is an individual residing in Centerville, Barnstable County, Massachusetts.  At the time of the improper actions of Defendants giving rise to her claims in this action, namely 2004, Martha Elkins was married to Lyle Elkins, and was living with him as husband and wife.

6.    Defendant Teamsters Local 264 is a labor union with a principal place of business in Cheektowaga, New York. A all times relevant to this complaint, Local 264 did business in Bedford, Massachusetts and other parts of the Eastern District of Massachusetts, by having members who lived and worked there, administering collective bargaining agreements there, collecting dues there, and being party to and being involved in the administration of, collective bargaining agreements covering employees working there.

3

Plaintiff Lyle Eklins paid a service fee or agency fee (the legal equivalent of union dues) to Local 264 during the time that he was employed by Shuttle America, as a condition of his employment by Shuttle America. It was Local 264's duty and obligation to provide representation to Lyle Elkins at his arbitration hearing in June 2004. Local 264 owed a duty of fair representation to Lyle Elkins. Local 264 is a "representative" as that term is defined in 45 U.S. Code Section151.

7. Defendant Catherine Creighton is an individual who, on information and belief, resides in the State of New York. Ms. Creighton is an attorney licensed to practice in New York.

8. Defendant Shuttle America is a foreign corporation which at all times relevant to this complaint did business in Bedford, Massachusetts. At all times relevant to this complaint, until on or about February 3, 2003, Shuttle America was the employer of Lyle Elkins. At all times relevant to this Complaint, Shuttle America has been a common carrier by air engaged in interstate commerce, pursuant to 45 U.S. Code Section 151, 181 and 182.

FACTUAL ALLEGATIONS

9. Lyle Elkins was a licensed commercial airline pilot at the time he worked for Shuttle America. He is also an attorney licensed to practice law in Massachusetts.

10. In the Spring of 1999, Lyle Elkins started employment with Shuttle America as a commercial airline pilot.

11. At all times relevant to this complaint, and at all times while Mr. Elkins was employed by Shuttle America: Lyle Elkins resided in and was domiciled in Massachusetts; as a pilot employed by Shuttle America, Lyle Elkins was based in

4

Massachusetts in relation to his employment; Lyle Elkins was employed by Shuttle America in Massachusetts; Lyle Elkins flew out of Bedford, Massachusetts; Shuttle America flew flights out of Bedford, Massachusetts; Shuttle America did business in Bedford, Massachusetts; and Shuttle America sent Lyle Elkins paychecks to him in Massachusetts.

12. During most of the time while Lyle Elkins was employed by Shuttle America, he was represented by a labor union, Teamsters Local 264. During the period of union representation while he was employed by Shuttle America, Lyle Elkins paid a "service fee" or "agency fee" to Teamsters Local 264, in consideration for Local 264 serving as Mr. Elkins' collective bargaining agent and his union representative. Pursuant to the collective bargaining agreement between Shuttle America and Local 264, as well as relevant statutes and caselaw, Lyle Elkins was required to pay this "service fee" or "agency fee" to Local 264, in order to remain employed by Shuttle America.

13. At all times while he paid a service fee or agency fee to Local 264, Lyle Elkins resided in Massachusetts and was employed by Shuttle America in Massachusetts. All communications between Lyle Elkins and Local 264 were directed to Lyle Elkins in Massachusetts. Local 264 did business in Massachusetts in relation to its representation of Lyle Elkins and its collection of agency fees or service fees from him. At all times relevant to this complaint, Local 264 represented other employees of Shuttle America in Massachusetts in addition to Lyle Elkins, and collected either service fees or union dues from those other individuals working and living in Massachusetts.

14. At all times relevant to this complaint, Lyle Elkins was a member in good standing of Local 264.

5

15. In 2001-2002, Lyle Elkins was involved in an employment dispute with Shuttle America. Specifically, Shuttle America had wrongfully claimed that Mr. Elkins had resigned from his employment with Shuttle America. Mr. Elkins' dispute with Shuttle America was taken to arbitration by Local 264, and the arbitrator hearing the dispute ruled in favor of Mr. Elkins. As a result of the dispute, Mr. Elkins had been out of work at Shuttle America for approximately 12 months. In December, 2002, Shuttle America was ordered to put Mr. Elkins back to work and to pay him back pay and benefits.

16. Despite prevailing in the arbitration, Mr. Elkins was still not back to work by January 2003, as his attorney (representing Mr. Elkins as well as Local 264) and the attorney for Shuttle America, could not fully agree as to how to carry out the arbitration award, and as Mr. Elkins had to wait for a date to attend ground school. Specifically, they could not agree as to how to compute the back pay Mr. Elkins was owed. The union attorney was attorney Joseph Giroux. The Shuttle America attorney was attorney Fogleman.

17. Mr. Elkins was very concerned, anxious, stressed and depressed about not yet returning to work and not yet being paid the monetary aspect of the arbitration award. Mr. Elkins was also very concerned, anxious, stressed and depressed about losing his rights under the arbitration award if he returned to work before the backpay issue was resolved, due to his understanding of certain language in the arbitration award referring to the arbitrator losing jurisdiction over the case once Mr. Elkins returned to work.

18. By letter dated January 22, 2003 Mr. Elkins was informed by Shuttle America that he would be required, as part of his return to work, to attend flight training ("ground school") on February 3, 2003. Mr. Elkins was extremely upset about this requirement, as among other things, Mr. Elkins was concerned that attending flight school would cause the arbitrator to lose jurisdiction over the pay matter, Mr. Elkins felt he would not be fairly judged in the

6

training, and in general Mr. Elkins was feeling too anxious and depressed to go through
flight training.

19. Mr. Elkins' anxiety, stress and depression over these issues became so great that on
January 25, 2003, after receiving the requirement that he attend flight school, Mr. Elkins
went to be treated by a psychiatrist, Dr. Jay Stearns of Plymouth, Massachusetts. It was the
opinion of Dr. Stearns in late January 2003 that Mr. Elkins was suffering from so much
psychiatric stress, anxiety and depression due to these issues regarding his backpay and
return to work, that Mr. Elkins should not attend flight school on February 3, 2003. On
January 28, 2003 Dr. Stearns wrote to attorney Giroux the following:

> "Because of health concerns for my patient, D. Lyle Elkins, I am of the medical
> opinion that he should not attend the Shuttle America SAAB training scheduled for
> February 3, 2003. Please note that I shall be out of my office from January 29
> through February 14, 2003."

20. Due to the dispute over Mr. Elkins' arbitration award, and hostility toward Mr. Elkins by
Shuttle America, by late January 2003 Mr. Elkins was communicating with Shuttle America
through attorney Giroux. Mr. Elkins informed attorney Giroux of the demand that he attend
flight school, and told him of the concerns he had about attending flight school (as discussed
above) as well as the fact that his doctor felt that Mr. Elkins should not attend flight school.
As previously mentioned, attorney Giroux was sent a letter from Dr. Stearns saying that for
medical reasons Mr. Elkins should not attend the flight school.

21. Attorney Giroux informed Shuttle America (by communicating with the Shuttle America
attorney, attorney Fogleman) that Mr. Elkins was not able to attend the flight school for
medical reasons, according to his doctor's orders.

22. For the reasons discussed above, in particular Mr. Elkins' psychiatric condition, the
medical reasons referred to by his doctor, Mr. Elkins did not attend the flight school on

7

February 3, 2003. Shuttle America sent Mr. Elkins a letter dated February 11, 2003 stating that Mr. Elkins was removed from the payroll as of February 3, 2003, as he had not arrived for the start of the training. Mr. Elkins did not realize that this constituted the termination of his employment until April 2003 when he reviewed his personnel file. At no time did Mr. Elkins resign from his position. Mr. Elkins' employment was terminated as of February 3, 2003. Based upon internal Shuttle America documents, the decision to terminate Mr. Elkins' employment was made on February 3, 2003.

23. Shuttle America was aware that Mr. Elkins did not attend the flight school for medical reasons, as they admitted that in a letter sent to Mr. Elkins after his employment was terminated. The letter states in relevant part as follows:

> "You are correct, we were informed that you did not intend on attending the February 3, 2003 training class. We were further informed that you made this decision based on medical reasons. We have not received any supporting documentation, nor a request for a medical leave of absence."

24. Shuttle America knew of Mr. Elkins' medical reasons for not attending the flight school based upon information provided to attorney Fogelman by attorney Giroux.

25. The termination of Mr. Elkins' employment was in violation of the collective bargaining agreement between Local 264 and Shuttle America, as well as violating various state and federal statutes against discrimination due to a real or perceived disability.

26. Under the collective bargaining agreement between Shuttle America and Local 264 which was in force at all times relevant to this complaint, Local 264 had the right to contest and fight employee firings, such as Mr. Elkins' firing, through a grievance process and then through a form of binding arbitration sometimes called a "System Board of Adjustment." In this complaint, the System Board of Adjustment process is referred to

8

as "arbitration." It was up to Local 264 to determine whether to take a grievance to arbitration. Once a case was taken to arbitration, an employee such as Mr. Elkins did not have the right to take any further actions to contest a termination of employment.

27. Mr. Elkins filed a timely grievance over his termination and being required to attend the flight school. The grievance was filed under and pursued under, the collective bargaining agreement between Shuttle America and Local 264. The grievance went through all of the steps of the grievance process under the contract, including arbitration. The grievance process did not end until December 2004. On December 3, 2004 the arbitrator issued his decision upholding the termination of Mr. Elkins' employment. Mr. Elkins received the decision on or about December 9, 2004.

28. In his grievance, Mr. Elkins grieved the termination of his employment, and the termination of his employment for not attending flight school. Implicitly in the grievance, by grieving the other two issues, Mr. Elkins was also grieving Shuttle America's refusal to allow him to postpone his flight school training until a date when he was medically able to attend it, and Shuttle America's refusal to discuss his need for a reasonable accommodation (delaying flight school training) due to his medical condition (anxiety, stress and depression).

29. As is set forth above, the union agent who represented Mr. Elkins in the 2002 arbitration hearing and subsequent proceedings was attorney Joseph Giroux of the law firm of Creighton, Pearce, Johnsen & Giroux, located in Buffalo, New York. Attorney Giroux communicated with Shuttle America after the arbitration in an attempt to carry out the terms of the arbitration award, and also communicated with Shuttle America regarding whether Mr. Elkins would attend the flight school on February 3, 2003, as well

9

as the reasons why Mr. Elkins would not attend the flight training. The communications

attorney Giroux had with Shuttle America were communications with the attorney for

Shuttle America, attorney Fogelman.

30. In the months after his February 2003 termination of employment from Shuttle

America, Mr. Elkins became dissatisfied with the level of representation he was receiving

from Local 264 through attorney Giroux. Specifically, in the months after Mr. Elkins'

termination, attorney Giroux did not adequately represent Mr. Elkins, and both Local 264

and attorney Giroux acting on behalf of Local 264, did not adequately communicate with

Mr. Elkins regarding his claims of improper termination. As a result, starting on or about

April 4, 2003, on several occasions Mr. Elkins asked Local 264 to provide him with a

representative other than attorney Giroux. Local 264 did not respond to his requests, and

attorney Giroux continued to inadequately communicate with Mr. Elkins.

31. Due to the difficulties he was having in receiving adequate representation or

communication from Local 264 or attorney Giroux, on or about April 14, 2003, Mr.

Elkins filed a complaint against attorney Giroux with the Attorney Grievance Committee

of the Bar of the State of New York. In the grievance submitted to the grievance

committee, Mr. Elkins claimed that attorney Giroux, in the course of his actions

representing Mr. Elkins on behalf of Local 264, had improperly represented him. On

April 14, 2003, Mr. Elkins asked the Attorney Grievance Committee to postpone the

investigation of his complaint, as it seemed as if attorney Giroux might be starting to

represent him properly.

32. On August 28, 2003, due to repeated inadequate representation on the part of

attorney Giroux, Mr. Elkins asked attorney Giroux to have Local 264 appoint a new

10

representative for him, instead of attorney Giroux.

33. On October 5, 2003 Mr. Elkins wrote to the Attorney Grievance Committee of the New York Bar, again complaining of inadequate representation by attorney Giroux, and asking the grievance Committee to investigate his current and prior complaints against attorney Giroux.

34. On information and belief, the Grievance Committee wrote to attorney Giroux on several occasions regarding the complaints filed by Mr. Elkins against attorney Giroux.

35. Attorney Giroux responded to the Grievance Committee regarding the complaints filed by Lyle Elkins against him.

36. On November 26, 2003, the Attorney Grievance Committee wrote to Mr. Elkins, informing him that based upon its review, it was unable to determine if attorney Giroux had committed any breach of professional ethics or engaged in any improper conflict of interest.

37. Through late December 2003, Mr. Elkins continued to be inadequately represented by Local 264. Accordingly, on December 24, 2003, Mr. Elkins, informed Local 264 that he would be filing suit against it for breach of its duty of fair representation owed to him. Mr. Elkins, proceeding pro se, filed suit against Local 264 on December 29, 2003 for breach of the duty of fair representation. Although the suit was not served, Local 264 was aware that the suit had been filed. As Local 264 improved its representation of Mr. Elkins after the filing of the lawsuit, Mr. Elkins voluntarily dismissed the suit in February 2004.

38. By letter dated January 28, 2004, Local 264 informed Mr. Elkins that he was going to be represented by a new union representative.

11

39. On February 11, 2004, Mr. Elkins traveled to Buffalo, New York to meet his new Local 264 representative. The new representative was attorney Catherine Creighton, a law partner of attorney Giroux in the firm of Creighton, Pearce, Johnsen & Giroux. During the meeting with Local 264 officers and Ms. Creighton, Mr. Elkins expressed his concern about being represented by a partner of attorney Giroux, and asked for representation by an attorney from another law firm. There was also substantial discussion during the meeting of whether Mr. Elkins would be entitled to emotional distress damages in the upcoming arbitration of his termination. Mr. Elkins and attorney Creighton strongly disagreed over this issue during the meeting. Mr. Elkins insisted he was entitled to such damages, and attorney Creighton disagreed. On March 15, 2004, Mr. Elkins received a letter from attorney Creighton officially notifying him that she was indeed going to be his attorney and represent him on behalf of Local 264.

40. Mr. Elkins had no contact with attorney Creighton between March 15, 2004 and May 19, 2004, when he had a general discussion of the upcoming arbitration with her over the phone. Mr. Elkins was informed that the arbitration was scheduled for June 10, 2004, and that Ms. Creighton would meet with him the evening prior to the arbitration to prepare him for the hearing. Ms. Creighton said nothing about her intent not to pursue emotional distress damages for Mr. Elkins.

41. Mr. Elkins met with attorney Creighton on June 9, 2004, the evening prior to the arbitration hearing in Pittsburgh, Pennsylvania. During their conversation, Mr. Elkins told attorney Creighton that his mental state had deteriorated since their last conversation, and his emotional state was fragile. In response, attorney Creighton became hostile and abusive to Mr. Elkins. Among other things, she stated that she did not want to hear

anything about Mr. Elkins' mental health as it had nothing to do with the case. Mr. Elkins tried to explain to Ms. Creighton that his emotional health was central to the case, as it was one of the reasons he could not attend the flight school, and as he had the right to seek damages against Shuttle America for infliction of emotional distress. In response, attorney Creighton raised her voice so that other patrons of the restaurant in which the conversations took place could hear her, and she proceeded to raise her voice to Mr. Elkins and to curse at him. In a raised voice she used words to the effect of: " I did not come all the way from Buffalo to put up with your bullshit…go fuck yourself…your fucking problem is that you rub people the wrong fucking way…" Ms. Creighton then went over to a table in the restaurant where one of the members of the arbitration panel that would be hearing the case the next day was sitting. A union official who had recently been assigned to be a representative for Mr. Elkins, Richard Lipsitz, who was seated with Mr. Elkins said that if he and Ms. Creighton did not "shake hands," "you will be in big trouble tomorrow."

42. Mr. Elkins was stunned, shocked, humiliated and embarrassed by Ms. Creighton's words and actions. Mr. Elkins went to his hotel room and took additional medication to try to calm his severe distress.   He was extremely upset and anxious all night, and unable to sleep, due to Ms. Creighton's actions and the knowledge that he would have to rely upon her to represent him in the arbitration the next day.

43. The arbitration hearing took place the next day. Ms. Creighton engaged in a number of actions in the course of representing Mr. Elkins during the arbitration which were improper and harmful to Mr. Elkins, including the following:  refusing to sit next to Mr. Elkins; not getting into evidence an important medical report regarding Mr. Elkins'

13

emotional state prior to the flight school; not objecting to certain evidence presented by Shuttle America at the hearing; engaging in an off the record conversation with the arbitrator and opposing counsel out of the presence of Mr. Elkins after which she forced Mr. Elkins to drop his claim that he could not attend the training for medical reasons, on threat by the arbitrator to allow counsel for Shuttle America who was conducting the hearing for Shuttle America, to testify at the hearing (which would have required attorney Creighton to call her partner attorney Giroux as a witness); refusing to press Mr. Elkins' claims for emotional distress damages against Shuttle America.

44. The actions of attorney Creighton in conducting the arbitration of Mr. Elkins' termination grievance on behalf of Local 264, were perfunctory and in bad faith, served to deny Mr. Elkins a fair arbitration hearing, and thus were a violation of the duty of fair representation owed to Mr. Elkins by Local 264. The conduct of the arbitration, due to the totality of Ms. Creighton's various improper actions, was perfunctory and in bad faith, caused Mr. Elkins to lose the arbitration hearing, and was a violation of the duty of fair representation owed by Local 264 to Mr. Elkins. Ms. Creighton, acting as agent of Local 264 and on behalf of Local 264, had badwill and malice toward Mr. Elkins due to his differences with her partner Mr. Giroux, and his complaints to the union and the Attorney Grievance Committee regarding Mr. Giroux. Ms. Creighton's bad faith actions taken in relation to the arbitration hearing were intentional and willful. Ms. Creighton's bad faith actions in relation to the arbitration hearing include, but are not limited to, the following:

a. Ms. Creighton's public verbal abuse of Mr. Elkins and her public verbal assault of him the night prior to the arbitration.
b. Ms. Creighton's refusal to sit next to Mr. Elkins at the hearing, interfering with her effective representation of Mr. Elkins during the hearing.

14

c. Ms. Creighton's failure to raise the issue of disability discrimination at the arbitration.

d. Ms. Creighton's failure to withdraw as Mr. Elkins' representative at the arbitration, knowing that her law partner Mr. Giroux was not able to represent Mr. Elkins due to a conflict of interest caused by Mr. Elkins having filed a disciplinary complaint against Mr. Giroux.

e. Ms. Creighton's failure to withdraw as Mr. Elkins' representative at the arbitration, knowing that if she presented Mr. Elkins' claims that he could not attend the flight school for medical reasons, her law partner attorney Giroux would be a witness.

f. Ms. Creighton's failure to adequately or zealously pursue Mr. Elkins' claim that he could not attend the flight school for medical reasons.

g. Ms. Creighton's failure to adequately or zealously pursue Mr. Elkins' claim that he could not attend the flight school for medical reasons, as she would have to call her law partner as a witness if those claims were pursued.

h. Ms. Creighton's pressuring Mr. Elkins to agree not to pursue his claim that he could not attend the flight school for medical reasons, as if those claims were pursued Ms. Creighton would have to withdraw from representation or be faced with an ethical violation.

i. Ms. Creighton's failure to adequately or zealously pursue Mr. Elkins' claim for emotional distress damages.

j. Ms. Creighton's failure to introduce into evidence important medical reports and documents regarding Mr. Elkins' mental health.

k. Ms. Creighton's failure to object to improper testimony or evidence presented by Shuttle America.

l. Ms. Creighton's general hostility to Mr. Elkins during the arbitration hearing.

m. Ms. Creighton's open hostility to Mr. Elkins during the arbitration hearing, which detracted from Mr. Elkins' credibility and the merit of his claims.

n. Ms. Creighton's failure to call various witnesses to testify at the hearing.

o. Ms. Creighton's failure to call attorney Giroux to testify at the hearing (regarding his having given Shuttle America notice of Mr. Elkins' medical excuse for not attending the flight school), as calling attorney Giroux as a witness would have raised ethical issues for Ms. Creighton and her law partner attorney Giroux.

p. Ms. Creighton's general inadequate representation of Mr. Elkins during the arbitration

45. In the arbitration decision which was eventually issued, the arbitrator ruled against

Mr. Elkins. As a result, his firing was upheld. Mr. Elkins' claims in his arbitration were

meritorious, and if not for the improper actions of attorney Creighton during the

arbitration, he would have won the arbitration and been reinstated to employment with

Shuttle America.

46. In the days after the arbitration hearing, Mr. Elkins wrote to Local 264, complaining of Ms. Creighton's improper actions towards him and her inadequate representation. Mr. Elkins also requested different representation from Local 264, but this request was denied.

47. Subsequent to the arbitration hearing, as a direct and proximate result of Ms. Creighton's actions set forth above, Mr. Elkins' mental health deteriorated, to the point that in July 2004 Mr. Elkins had to undergo a ten day in-patient hospital stay for psychiatric treatment. Since his release from the hospital, Mr. Elkins has received psychiatric treatment on a regular and continuing basis. As a result of the deterioration of his mental health, he has had to cease practicing law. Due to his psychiatric condition and psychiatric treatment, it is uncertain whether he will ever be able to be medically approved for certification as an airline pilot.

48.    Local 264 is fully liable and responsible for all of the improper actions of its agent and representative, Catherine Creighton, set forth in this complaint.

49. The reason for Ms. Creighton's improper actions toward Mr. Elkins as set forth above, was hostility toward Mr. Elkins. Her improper actions were discriminatory, perfunctory and in bad faith. Her actions were in bad faith, were intentional, hostile, severe and unrelated to legitimate union objectives, were improperly motivated, and were not based upon any legitimate exercise of the discretion granted to her as Mr. Elkins' representative.

50. To the extent that there may have been any administrative procedures available to Mr. Elkins in this matter to complain about the failure of Local 264 to represent him properly, such remedies would have been futile, and therefore did not have to be

exhausted by Mr. Elkins.

51. Local 264 had a duty to represent Mr. Elkins fairly, in a manner that was not

arbitrary, discriminatory or in bad faith. This duty is the "duty of fair representation"

owed to Mr. Elkins by Local 264 (as his elected bargaining representative) pursuant to 45

U.S. Code Sections 151a, 152, 181 and 182, and federal commonlaw.

52. The actions of Ms. Creighton and Local 264 as set forth herein were intentional,

knowing and willful. The actions of Ms. Creighton and Local 264 as set forth herein

have caused Mr. Elkins to suffer much financial harm and emotional pain and suffering,

and will continue to cause him much financial harm and emotional pain an suffering in

the future.

## COUNT I-BREACH OF DUTY OF FAIR REPRESENTATION-TEAMSTERS LOCAL 264

53. Plaintiffs reallege and incorporate by reference as if fully set forth herein, paragraphs

1-52 above.

54. By its actions set forth above, Teamsters Local 264 has breached its duty of fair

representation owed to Mr. Elkins, causing him to suffer damages, including financial

damages and emotional pain and suffering.

WHEREFORE, Plaintiff Lyle Elkins demands that he be awarded judgment against Teamsters Local 264 in an amount to be determined by this Court, including monies to compensate him for lost back pay and benefits, lost future pay and benefits, lost earning capacity, emotional pain and suffering, interest, punitive damages, costs and attorneys fees, and such other and further relief that this Court deems just and proper.

## COUNT II-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS-TEAMSTERS LOCAL 264

55. Plaintiffs reallege and incorporate by reference as if fully set forth herein, paragraphs

1-54 above.

56. In taking the actions set forth above, Ms. Creighton (acting on behalf of Teamsters

Local (264): either intended to inflict emotional distress upon Mr. Elkins or knew or

should have known that emotional distress was the likely result of her conduct; engaged

in conduct which was extreme and outrageous, beyond all possible bounds of decency,

and was utterly intolerable in a civilized community; took actions which caused Mr.

Elkins to suffer emotional distress; caused Mr. Elkins to suffer emotional distress which

was severe and which was of a nature that no reasonable man could be expected to

endure. Ms. Creighton has engaged in the intentional infliction of emotional distress

upon Mr. Elkins, causing him to suffer damages, and as the representative and agent of

Local 264 in relation to all of her actions set forth herein, Local 264 is liable and

responsible for her having inflicted emotional distress upon Mr. Elkins.

WHEREFORE, Plaintiff Lyle Elkins demands that he be awarded judgment against
Teamsters Local 264 in an amount to be determined by this Court, including monies to
compensate him for lost earning capacity, emotional pain and suffering, interest, punitive
damages, costs and attorneys fees, and such other and further relief that this Court deems
just and proper.

## COUNT III-NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS-TEAMSTERS LOCAL 264

57. Plaintiffs reallege and incorporate by reference as if fully set forth herein, paragraphs

1-56 above.

58. The actions of Ms. Creighton set forth above constitute negligence on her part in the

representation of Mr. Elkins. As a result of her negligent actions set forth above, Ms.

Creighton has caused Mr. Elkins to suffer from extreme emotional distress, including

depression. Mr. Elkins has received substantial medical and psychiatric treatment for

these injuries and conditions. Mr. Elkins has suffered a variety of severe physical

symptoms and harms since the negligent actions of Ms. Creighton due to the extreme emotional distress he has been suffering from since and due to that negligence of Ms. Creighton. Mr. Elkins has suffered from these physical symptoms and harms for a substantial amount of time since Ms. Creighton's negligence, and in relation to most of these symptoms and harms he has suffered from them from the time of her negligence to the present date. These severe physical symptoms and harms he has been suffering from due to the extreme emotional distress include the following: concentration problems, diarrhea, sleeplessness, stomach problems, severe anxiety, gastrointestinal distress, appetite problems, nightmares, reduced sex drive, depression, and despair. Ms. Creighton has engaged in the negligent infliction of emotional distress upon Mr. Elkins, causing him to suffer damages, and as the representative and agent of Local 264 in relation to all of her actions set forth herein, Local 264 is liable and responsible for her having inflicted emotional distress upon Mr. Elkins.

59. As is set forth above, Ms. Creighton was negligent in her representation of Mr. Elkins. This negligence caused Mr. Elkins to suffer extreme emotional distress. Mr. Elkins suffered severe emotional distress and his severe emotional distress was caused directly and proximately by Ms. Creighton's negligence. In relation to his severe emotional distress, Mr. Elkins has suffered physical harm manifested by objective symptomatology. A reasonable person would have suffered severe emotional distress under the circumstances set forth in this complaint as did Mr. Elkins.

60. By it's actions set forth above, Local 264, through the actions of its agent and representative Ms. Creighton, has negligently inflicted severe emotional distress upon Lyle Elkins, and has directly and proximately caused him to suffer severe emotional

19

distress.

WHEREFORE, Plaintiff Lyle Elkins demands that he be awarded judgment against Teamsters Local 264 in an amount to be determined by this Court, including monies to compensate him for lost earning capacity, emotional pain and suffering, interest, punitive damages, costs and attorneys fees, and such other and further relief that this Court deems just and proper.

## COUNT IV-BREACH OF CONTRACT AND WRONGFUL TERMINATION-SHUTTLE AMERICA

61. Plaintiffs reallege and incorporate by reference as if fully set forth herein, paragraphs

1-60 above.

62. By its actions set forth above, Shuttle America has breached the collective bargaining

contract pursuant to which Plaintiff Lyle Elkins was employed, wrongfully terminated

Plaintiff's employment, and terminated Plaintiff's employment in a manner contrary to

and in violation of the collective bargaining contract pursuant to which Plaintiff was

employed. These actions also constitute a violation of 45 U.S. Code Sections 152, 181

and 182. These illegal actions have caused Mr. Elkins to suffer damages, including

financial damages and emotional pain and suffering.

WHEREFORE, Plaintiff Lyle Elkins demands that he be awarded judgment against Shuttle America in an amount to be determined by this Court, including monies to compensate him for lost back pay and benefits, lost future pay and benefits, lost earning capacity, emotional pain and suffering, interest, punitive damages, costs and attorneys fees, and that he be reinstated to his former position with Shuttle America, and such other and further relief that this Court deems just and proper.

## **COUNT V-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS-SHUTTLE AMERICA**

63. Plaintiffs reallege and incorporate by reference as if fully set forth herein, paragraphs

1-62 above.

64. In taking the actions set forth above, Shuttle America: either intended to inflict

emotional distress upon Mr. Elkins or knew or should have known that emotional distress

was the likely result of its conduct; engaged in conduct which was extreme and

outrageous, beyond all possible bounds of decency, and was utterly intolerable in a

civilized community; took actions which caused Mr. Elkins to suffer emotional distress;

caused Mr. Elkins to suffer emotional distress which was severe and which was of a

nature that no reasonable man could be expected to endure. Shuttle America has engaged

in the intentional infliction of emotional distress upon Mr. Elkins, causing him to suffer

damages.

WHEREFORE, Plaintiff Lyle Elkins demands that he be awarded judgment against
Shuttle America in an amount to be determined by this Court, including monies to
compensate him for lost earning capacity, emotional pain and suffering, interest, punitive
damages, costs and attorneys fees, and such other and further relief that this Court deems
just and proper.

## COUNT VI-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS-CATHERINE CREIGHTON

65. Plaintiffs reallege and incorporate by reference as if fully set forth herein, paragraphs

1-64 above.

66. In taking the actions set forth above, Ms. Creighton: either intended to inflict

emotional distress upon Mr. Elkins or knew or should have known that emotional distress

was the likely result of her conduct; engaged in conduct which was extreme and

outrageous, beyond all possible bounds of decency, and was utterly intolerable in a

civilized community; took actions which caused Mr. Elkins to suffer emotional distress;

caused Mr. Elkins to suffer emotional distress which was severe and which was of a

nature that no reasonable man could be expected to endure. Ms. Creighton has engaged

in the intentional infliction of emotional distress upon Mr. Elkins, causing him to suffer

damages.

WHEREFORE, Plaintiff Lyle Elkins demands that he be awarded judgment against
Catherine Creighton in an amount to be determined by this Court, including monies to
compensate him for lost earning capacity, emotional pain and suffering, interest, punitive
damages, costs and attorneys fees, and such other and further relief that this Court deems
just and proper.

## COUNT VII-NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS-
## CATHERINE CREIGHTON

67. Plaintiffs reallege and incorporate by reference as if fully set forth herein, paragraphs

1-66 above.

68. The actions of Ms. Creighton set forth above constitute negligence on her part in the

representation of Mr. Elkins. As a result of her negligent actions set forth above, Ms.

Creighton has caused Mr. Elkins to suffer from extreme emotional distress, including

depression. Mr. Elkins has received substantial medical and psychiatric treatment for

these injuries and conditions. Mr. Elkins has suffered a variety of severe physical

symptoms and harms since the negligent actions of Ms. Creighton due to the extreme

emotional distress he has been suffering from since and due to that negligence of Ms.

Creighton. Mr. Elkins has suffered from these physical symptoms and harms for a

substantial amount of time since Ms. Creighton's negligence, and in relation to most of

these symptoms and harms he has suffered from them from the time of her negligence to

the present date. These severe physical symptoms and harms he has been suffering from

due to the extreme emotional distress include the following: concentration problems,

diarrhea, sleeplessness, stomach problems, severe anxiety, gastrointestinal distress,

22

appetite problems, nightmares, reduced sex drive, depression, and despair. Ms.

Creighton has engaged in the negligent infliction of emotional distress upon Mr. Elkins,

causing him to suffer damages.

69. As is set forth above, Ms. Creighton was negligent in her representation of Mr.

Elkins. This negligence caused Mr. Elkins to suffer extreme emotional distress. Mr.

Elkins suffered severe emotional distress and his severe emotional distress was caused

directly and proximately by Ms. Creighton's negligence. In relation to his severe

emotional distress, Mr. Elkins has suffered physical harm manifested by objective

symptomatology. A reasonable person would have suffered severe emotional distress

under the circumstances set forth in this complaint as did Mr. Elkins.

70. By her actions set forth above, Ms. Creighton has negligently inflicted severe

emotional distress upon Lyle Elkins, and has directly and proximately caused him to

suffer severe emotional distress.

WHEREFORE, Plaintiff Lyle Elkins demands that he be awarded judgment against
Catherine Creighton in an amount to be determined by this Court, including monies to
compensate him for lost earning capacity, emotional pain and suffering, interest, punitive
damages, costs and attorneys fees, and such other and further relief that this Court deems
just and proper.

COUNT VIII-LOSS OF CONSORTIUM-TEAMSTERS LOCAL 264

71. Plaintiff Martha Elkins realleges and incorporates by reference as if fully set forth

herein, paragraphs 1-70 above.

72. By its actions set forth above, and as a direct and proximate result of those actions,

Local 264 has severely restricted and injured Martha Elkins in the receipt and the benefit

of her husband's society, companionship and consortium, and caused her to lose her

husband's companionship, society and consortium, all to her great damage.

23

WHEREFORE, Martha Elkins demands that she be awarded judgment in her favor and against Local 264 in an amount to be determined by this Court, plus interest, costs and such other and further relief that this Court finds just and proper.

## COUNT IX-LOSS OF CONSORTIUM-SHUTTLE AMERICA

73. Plaintiff Martha Elkins realleges and incorporates by reference as if fully set forth

herein, paragraphs 1-72 above.

74. By its actions set forth above, and as a direct and proximate result of those actions,

Shuttle America has severely restricted and injured Martha Elkins in the receipt and the

benefit of her husband's society, companionship and consortium, and caused her to lose

her husband's companionship, society and consortium, all to her great damage.

WHEREFORE, Martha Elkins demands that she be awarded judgment in her favor and against Shuttle America in an amount to be determined by this Court, plus interest, costs and such other and further relief that this Court finds just and proper.

## COUNT X-LOSS OF CONSORTIUM-CATHERINE CREIGHTON

75. Plaintiff Martha Elkins realleges and incorporates by reference as if fully set forth

herein, paragraphs 1-74 above.

76. By its actions set forth above, and as a direct and proximate result of those actions,

Catherine Creighton has severely restricted and injured Martha Elkins in the receipt and

the benefit of her husband's society, companionship and consortium, and caused her to

lose her husband's companionship, society and consortium, all to her great damage.

WHEREFORE, Martha Elkins demands that she be awarded judgment in her favor and against Catherine Creighton an amount to be determined by this Court, plus interest, costs and such other and further relief that this Court finds just and proper.

## PLAINTIFFS DEMAND A TRIAL BY JURY AS TO ALL ISSUES AND COUNTS SO TRIABLE.

24

D. Lyle Elkins
Martha Elkins
By their attorney,
MITCHELL J. NOTIS

MITCHELL J. NOTIS
Law Office of Mitchell J. Notis
370 Washington Street
Brookline, Massachusetts 02445
617-566-2700
BBO# 374360

25

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

D, Lyle Elkins
Martha Elkins

**(b)** County of Residence of First Listed Plaintiff  *Barnstable*
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS** International Brotherhood of Teamsters
Local 264
Joni
Catherine Creighton    Shuttle America

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.    M.P

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
BBO#374360        617-566-2700
Mitchell Notis
Law Office of Mitchell Notis  370 Washington St
Brookline, MA 02445

Attorneys (If Known)
N/K

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

05 1130 NMG

## IV.  NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☒ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN    (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
45 US Code §151a,152 (8), 152 — Railway Labor Act
Brief description of cause:
Breach of Unions duty of fair representation to member in violation of Railway Labor act

## VII. REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S)
IF ANY

(See instructions):  None

JUDGE

DOCKET NUMBER

DATE  6/1/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only) D. Lyle Elkins vs. International Brotherhood of Teamsters Local 264

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

Jun 1
M.P

- I. 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

- II. 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730, *Also complete AO 120 or AO 121
  740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases

- III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
  315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
  380, 385, 450, 891.    **05 11130 NMG**

- IV. 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
  690, 810, 861-865, 870, 871, 875, 900.

- V. 150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
YES ☐  NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
YES ☐  NO ☒
If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
YES ☐  NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
YES ☐  NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
YES ☒  NO ☐

A. If yes, in which division do all of the non-governmental parties reside?
Eastern Division ☒    Central Division ☐    Western Division ☐

B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
Eastern Division ☐    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
YES ☐  NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME Mitchell Notis - Law Office of Mitchell Notis
ADDRESS 370 Washington St, Brookline, MA 02445
TELEPHONE NO. 617-566-2700

(CategoryForm.wpd -5/2/05)