UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D. LYLE ELKINS AND MARTHA ELKINS,<br>Plaintiffs<br><br>v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 264, CATHERINE CREIGHTON, AND SHUTTLE AMERICA,<br>Defendants | DOCKET NO: 05-11130NMG |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT,
CATHERINE CREIGHTON'S MOTION TO DISMISS**

**I.     INTRODUCTION**

In this matter, the plaintiffs, D. Lyle Elkins and Martha Elkins, have brought a complaint against, among others, attorney Catherine Creighton (hereinafter "Creighton"). The allegations in the plaintiffs' complaint arise from an employment dispute that D. Lyle Elkins ("Elkins") had with his employer, Shuttle America. Elkins initiated a grievance (the "Grievance") through the collective bargaining agreement between Shuttle America and co-defendant International Brotherhood of Teamsters Local 264 (the "Union"). Creighton was retained by the Union to represent its interests in the Grievance process.

The sole claims against Creighton are for emotional distress and loss of consortium relating to actions by Creighton taken as part of her representation of the Union. However, this Court does not have personal jurisdiction over Ms. Creighton, and the claims asserted against her are preempted by federal labor law. Moreover, the claims against Creighton are barred because

statements made by an attorney are afforded an absolute privilege. Therefore, as a matter of law, the plaintiffs' complaint must be dismissed.

II.     **FACTUAL AND PROCEDURAL HISTORY**

As a part of the Grievance process, an arbitration was held in Pittsburgh, PA on June 10, 2004. Plaintiffs' Complaint, ¶ 41; Affidavit of Catherine Creighton, Exhibit A, ¶ 5. The plaintiffs' claims against Creighton for emotional distress arose out the events surrounding the arbitration proceeding. Plaintiffs' Complaint, ¶ 41. Specifically, Elkins alleges that while preparing for the arbitration, Creighton became verbally hostile to him when he insisted, against her judgment, that she pursue an emotional distress claim on his behalf in the Grievance. Complaint, ¶¶ 39-41.

At all times relevant to this lawsuit, Creighton resided in the State of New York and was never domiciled in the Commonwealth of Massachusetts. Exhibit A, ¶ 1. Creighton is an attorney duly admitted to practice before the Courts of the State of New York, and is not admitted to practice law before the Courts of the Commonwealth of Massachusetts. Exhibit A, ¶ 2. In fact, Ms. Creighton has never practiced law in the Commonwealth of Massachusetts. Exhibit A, ¶ 2. Neither Creighton nor her law practice have any offices, representatives, realty, personalty, bank accounts, or presence whatsoever in the Commonwealth of Massachusetts. Exhibit A, ¶ 3.

Moreover, all of the work performed by Creighton relevant to the Grievance proceeding was either in New York or at an arbitration forum in Pittsburgh, PA. None of the proceedings associated with the grievance transpired in the Commonwealth of Massachusetts. Exhibit A, ¶ 5. In fact, Creighton has never personally entered the Commonwealth of Massachusetts to conduct

968565v1

any business whatsoever relating to her representation of the Union or the Grievance. Exhibit A, ¶ 6.

The plaintiffs brought this action in Federal Court alleging that the defendants violated the Railway Labor Act, 45 U.S.C. 151 *et seq*. The plaintiffs further allege that this Court has supplemental jurisdiction over the state law claims of negligent infliction of emotional distress and intentional infliction of emotional distress brought against Ms. Creighton. However, the plaintiffs' complaint fails to address the absence of personal jurisdiction over Creighton and the preemption of their claims against her.

### III.  ARGUMENT

#### A.  THE PLAINTIFFS' COMPLAINT AGAINST MS. CREIGHTON MUST BE DISMISSED BECAUSE SHE IS NOT SUBJECT TO PERSONAL JURISDICTION IN THE COMMONWEALTH OF MASSACHUSETTS

Under Rule 12(b)(2), the plaintiff bears the burden of proving jurisdictional facts. See Williams v. Episcopal Diocese of Massachusetts, 436 Mass. 574, at footnote 2 (2002); citing New Hampshire Insurance Guarantee Association v. Markem Corp., 424 Mass. 344, 346 (1997); Brown v. Tobyne, 10 Mass. App. Ct. 833 (1980). In order for this court to have personal jurisdiction over Creighton, the plaintiff must: (1) satisfy the requirements of the Massachusetts "long-arm" statute; and (2) meet the Constitutional requirements of personal jurisdiction imposed by the Due Process Clause in the Fourteenth Amendment. American Express Int'l v. Mendez-Capellan, 889 F.2d 1175, 1178 (1st Cir. 1989). The Due Process Clause does not allow the exercise of personal jurisdiction where a defendant does not have adequate contacts with the forum state, even if the literal requirements of a long-arm statute have been met. See International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945). The burden of establishing facts sufficient to fend off a motion to dismiss for lack of jurisdiction over the person is on the

plaintiff. Kleinerman v. Morse, 26 Mass. App. Ct. 819 (1989) (citing Morrill v. Tong, 390 Mass. 120, 129 (1983)); see also, Carlson Corp. v. Univ. of Vermont, 380 Mass. 102 (1980).

> 1. **The Massachusetts Long Arm Statute Does Not Provide a Basis for Personal Jurisdiction Over Creighton.**

The Massachusetts long-arm statute allows for personal jurisdiction based only on continuing contact or acts or conduct within the Commonwealth. M.G.L. c. 223A §§ 2 and 3. The plaintiffs must carry this burden under each section of the long-arm statute that they claim applies to the facts and circumstances of this case. Raleigh Rug Company v. R.A. Civitello Co., 23 Mass. App. Ct. 1025, 1026 (1987) ("[w]hen confronted by a motion under rule 12(b)(2), a plaintiff who relies on §3(d) has the burden of establishing facts upon which it can be determined that his cause of action arises out of business which the defendant transacted here"); Catrone v. Ogden Suffolk Downs, Inc., 647 F. Supp. 850, 856 (D. Mass. 1986) (plaintiff has the burden of proof under §3(a)); see also Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 3 (1979). In this instance, looking at the only potentially relevant provisions of the Massachusetts Long Arm Statute, the plaintiffs cannot carry that burden.

M.G.L. c. 223A § 2, Personal Jurisdiction Based upon Continuing Contact with Commonwealth, provides:

> A court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, this commonwealth as to any cause of action.

However, Creighton, has never been domiciled or maintained a principle place of business in this Commonwealth. Exhibit A, ¶¶ 1, 3. Therefore, there is no basis for personal jurisdiction under c. 223A § 2.

Likewise, M.G.L. c. 223A § 3, Personal Jurisdiction Based Upon Acts or Conduct Within Commonwealth, provides, in pertinent part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> (a) transacting any business in this commonwealth;
>
> (b) contracting to supply services or things in this commonwealth;
>
> (c) causing tortious injury by an act or omission in this commonwealth;
>
> (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from . . . services rendered, in this commonwealth;
>
> (e) having an interest in, using or possessing real property in this commonwealth;
>
> (f) contracting to insure any person, property or risk located within this commonwealth at the time of contracting;
>
> (g) maintaining a domicile in this commonwealth . . .
>
> (h) having been subject to the exercise of personal jurisdiction of a court of the commonwealth which has resulted in an order of alimony, custody, child support or property settlement . . .

None of the sections of M.G.L. c. 223A § 3 create a basis for personal jurisdiction over Creighton.

> **(a)    223A § 3(a) does not provide a basis for personal jurisdiction because Ms. Creighton was not transacting business in the Commonwealth.**

In order for jurisdiction to exist pursuant to M.G.L. c. 223A, §3(a), " transacting any business in this Commonwealth," the facts must satisfy two requirements: (1) the defendant must have transacted business in Massachusetts, and (2) the plaintiffs' claim must have arisen from the defendant's transaction of such business. <u>Tatro v. Manor Care, Inc.</u>, 416 Mass. 763, 767,625 N.E.2d 549 (1994). These requirements are not satisfied in this case as Creighton has never transacted business in Massachusetts relating to this matter. Exhibit A, ¶ 6.

The establishment of jurisdiction under c. 223A §3(a) requires the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent. Tatro, 416 Mass. at 767; Bennett v. Jack Dennis Whitewater Trips, 925 F. Supp. 889. 893-4 (D. Mass. 1996). An isolated (and minor) transaction with a Massachusetts resident is insufficient. Tatro, 416 Mass. at 767.

In Bennett, the plaintiff was a Massachusetts resident who sued a Wyoming Corporation seeking to recover for injuries sustained by the plaintiff while on a whitewater rafting excursion conducted by the defendant in Wyoming. Bennett, 925 F. Supp. at 891-2. The court examined the defendant's contacts with Massachusetts and found them insufficient for the court to exercise jurisdiction. Id. Specifically, the court found that the defendant had no Massachusetts office, telephone number, bank accounts or post office box and sent no promotional material or brochures to Massachusetts unless contacted by Massachusetts resident and requested to do so. Id. at 892-4. Furthermore, no contact occurred and no contract was entered into between the plaintiff and the defendant while the plaintiff was in Massachusetts and the plaintiff, who was on a tour of national parks, did not reserve a place or pay for the whitewater rafting trip until she arrived in Wyoming. Id. The case at hand is factually similar to Bennett.

It is undisputed that Creighton did not maintain an office in Massachusetts, that her representation of the Union occurred in New York, and the alleged incident that gave rise to the plaintiffs claims against Creighton occurred in Pittsburgh, PA. Exhibit A, ¶¶ 3, 5. Moreover, Creighton did not solicit business, send promotional materials or enter into any relevant contracts in Massachusetts. In the absence of these requisite minimum contacts between Creighton and the Commonwealth, the plaintiffs are unable to satisfy their burden necessary to establish the exercise personal jurisdiction over Creighton.

968565v1

   **(b)**  **223A § 3(b) does not provide a basis for personal jurisdiction because Creighton did not enter into a contract to supply services in the Commonwealth.**

In order to exercise personal jurisdiction under 223A § 3(b), Creighton must have entered into a contact to supply services in Massachusetts. However, this did not occur. In fact, Creighton never entered into any contract with Elkins, in Massachusetts or otherwise, as she only represented the Union in the Grievance matter. Exhibit A, ¶ 4. Accordingly, there is no basis for personal jurisdiction over Ms. Creighton pursuant to 223A § 3(b).

   **(c)**  **223A § 3(c) does not provide a basis for personal jurisdiction because Creighton did not cause tortious injury by an act or omission in the Commonwealth.**

Similarly, Creighton did not cause the alleged tortious injury to the plaintiffs by any act or omission in this Commonwealth. To the contrary, Creighton was never present in Massachusetts relating to her representation of the Union in the Grievance. Exhibit A, ¶ 6. Therefore, 223A § 3(c) is inapplicable to the instant matter.

   **(d)**  **223A § 3(d) does not provide a basis for personal jurisdiction because Creighton does not engage in or solicit business in the Commonwealth.**

Creighton is also not subject to long-arm personal jurisdiction under 223A § 3(d). Creighton has never practiced law in Massachusetts, thus she is not engaging in business there. Exhibit A, ¶¶ 2-3. Moreover, she has not solicited to conduct business in this Commonwealth. Exhibit A, ¶¶ 2-3, 6.

   **(e)**  **223A §§ 3(e), (f), (g) and (h) do not provide a basis for personal jurisdiction because Creighton does not: have interest in real estate; contract to provide insurance; maintain a domicile; or been subject to an order or alimony, custody, child support or property settlement in the Commonwealth.**

Finally, c. 223A §§ 3(e), (f), (g) or (h) of the long-arm statute does not provide a basis for jurisdiction over Ms. Creighton. Specifically, Creighton does not own an interest in real estate in

Massachusetts (required invoke 223A § 3(e)); does not contract to insure in Massachusetts (required to invoke 223A § 3(f);) does not maintain a domicile in Massachusetts (required to invoke 223A § 3(g)); and has never been subject to an order of alimony, custody, child support or property settlement. Exhibit A, ¶ 3. Accordingly, there is no basis for personal jurisdiction over Ms. Creighton pursuant to 223A §§ 3(e), (f), (g) or (h).

### 2. Exercise Of Personal Jurisdiction Over Creighton Is Constitutionally Impermissible.

The Fourteenth Amendment prohibits a state court from exercising jurisdiction over a non-resident defendant unless that defendant has "certain minimum contacts" with the state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 413-14, (1984), (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). In particular, a court cannot assert jurisdiction unless "the defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

"It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." World-Wide Volkswagen, at 299, quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958); see also, Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-475 (1985). Courts require purposeful availment to ensure that "random," "fortuitous," or "attenuated" contacts with a state do not cause a defendant to be haled into its courts. Burger King, 471 U.S. at 475, citing Keeton v. Hustler Magazine, 465 U.S. 770, 774, (1984); see also, Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 107 (1987). In this case, Creighton's sole contact with this Commonwealth is that she was compelled to deal with one of

968565v1

its residents with whom she had no contractual relationship while representing her client in other jurisdictions.

The requisite degree of "minimum contacts" sufficient to comport with "fair play and substantial justice" depends on whether the court is exercising general or specific jurisdiction. <u>Massachusetts School of Law v. American Bar Ass'n</u>, 142 F.3d 26, (1st Cir. 1998); <u>Donatelli v. National Hockey League</u>, 893 F.2d 459, 462-463 (1st Cir. 1990). A defendant that has "continuous and systematic activity in the forum state" may be subjected to the general jurisdiction of the courts within that state. <u>Noonan v. The Winston Co.</u>, 135 F.3d 85, 89 (1st Cir. 1998). In the absence of such activity, a non-resident defendant may only be subjected to specific jurisdiction, i.e. jurisdiction "where the cause of action arises directly out of, or relates to, the defendant's forum based contacts." <u>Noonan v. The Winston Co.</u>, 135 F.3d at 89.

The test for specific jurisdiction requires the court to consider: (a) the degree to which the lawsuit is related to the defendant's contacts with the forum; (b) the defendant's purposeful availment of the forum; and (c) the fairness of forcing the defendant to appear. <u>Phillips Exeter Academy v. Howard Phillips Fund</u>, 196 F.3d 284, 288 (1st Cir. 1999). Here, the plaintiffs allege no facts upon which this Court can find that Creighton, a non-resident defendant, has the minimum contacts needed to satisfy the Due Process Clause. First, as for general jurisdiction, Creighton has not engaged in any systematic activity, whatsoever, in Massachusetts. Secondly, the plaintiff asserts no facts which establish that this litigation directly arises out of, or relates to, any activities by Creighton in Massachusetts. She has not engaged in any activity which demonstrate that she has purposefully availed herself of the privilege of conducting activities in Massachusetts, which would thus invoke the benefits and protections of the Commonwealth's laws and make her involuntary presence before the courts foreseeable. Accordingly, the

968565v1

plaintiffs' have failed to establish any grounds upon which to assert personal jurisdiction over Creighton.

    **B.    THE PLAINTIFFS' COMPLAINT AGAINST MS. CREIGHTON MUST BE DISMISSED BECAUSE THE CLAIMS AGAINST HER ARE PREEMPTED BY FEDERAL LAW.[1]**

Even if this Court could assert personal jurisdiction over Creighton, the plaintiffs' complaint still must be dismissed because their state law claims for emotional distress are preempted by Section 301 of the Labor Management Relations Act ("LRMA"), 29 U.S.C. §185.

    **1.    As The Representative Of The Union, The Labor Management Relations Act Preempts State Law Claims Against Creighton.**

Section 301 of the LMRA, 29 U.S.C. § 185, confers federal jurisdiction over "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." The Supreme Court has declared that section 301 preempts a state-law claim "if the resolution of [that] claim depends upon the meaning of a collective-bargaining agreement." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06, 100 L. Ed. 2d 410, 108 S. Ct. 1877 (1988). Specifically, state law claims by union members, such as Elkins, are preempted by the LMRA where the conduct complained of is undertaken pursuant to the collective bargaining agreement ("CBA"). See United Steel Workers of America v. Rawson, 495 U.S. 362, 109 L. Ed 2d 362, 110S. S. Ct. 1904 (1990) (holding that Union's duties arose out of the CBA); Goulet v. Carpenters District Counsel of Boston and Vicinity, 884 F. Supp. 17, 148 L.R.R.M. 2886 (D. Mass. 1994). Preemption cannot be avoided by characterizing the Union's negligent performance on behalf of its members as a state law tort. Rawson, 495 at 371-372.

---

[1]    In addition to the arguments set forth below, Creighton also expressly incorporates and adopts by reference the arguments set forth in the motion papers of the Union with regard to preemption of all claims against her.

Ms. Creighton's was retained by the Union to represent **its interests** during the Grievance proceedings. Those proceedings, including the arbitration, were mandated by the terms of the CBA. And all of the plaintiff's claims against Creighton are based solely on her actions in connection with her preparation for, and conduct of, that mandatory arbitration proceeding. Specifically, Elkins complains of Creighton's conduct during a preparation meeting the night before the arbitration hearing. Complaint ¶ 41. He further complains that she did not follow his direction during that hearing. Id. ¶ 43-44. Essentially, he complains that as a result of her conduct, Creighton did not properly represent his interests in the Grievance process. The scope of Creighton's responsibilities in connection with the Grievance process, and particularly the establishment as to whom she owed a duty, are defined by the CBA. In order to determine whether Creighton's actions in connection with her representation of the Union in the Grievance process was appropriate, one by definition must look to the provisions of the CBA. Accordingly, consistent with the Supreme Court's holding in Rawson, the plaintiffs' state law claims against Creighton are preempted. See Rawson, 495 at 371-372.

> 2.  **The Plaintiffs' Claims Against Creighton Are Preempted As They Relate To Creighton's Actions As The Representative Of The Union.**

In this matter, all of the allegations in the plaintiffs' complaint against Ms. Creighton arose in her capacity as a union representative, and relate to her conduct in that capacity. In fact, Elkins has specifically alleged that his claim for negligent infliction of emotional distress is based upon the assertion that "Ms. Creighton was negligent in her representation of Mr. Elkins." Complaint ¶ 59. Such claims are assertions that Creighton, as representative of the Union, breached the so-called duty of fair representation ("DFR"). However, state law claims based on a breach of such a duty are preempted by federal law. See BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers, 132 F.3d 824, 827 (1st Cir. 1997).

A union acting in its representative capacity owes a duty to those on whose behalf it acts. See Ford Motor Co. v. Huffman, 345 U.S. 330, 337, 97 L. Ed. 1048, 73 S. Ct. 681 (1953). This duty derives from the union's status as the exclusive bargaining agent for the employees. BIW Deceived, 132 F. 3d 824, 827. It implicates section 9(a) of the NLRA, and "includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171, 177, 17 L. Ed. 2d 842, 87 S. Ct. 903 (1967); Id. However, by definition, a complaint that states a DFR claim "alleges a breach by the Union of a duty grounded in federal statutes and . . . federal law therefore governs [the] cause of action." Id. Consequently, state law is preempted whenever a plaintiff's claim invokes rights derived from a union's duty of fair representation. See Condon v. Local 2944, 683 F.2d 590, 594-95 (1st Cir. 1982); BIW Deceived, 132 F.3d at 830 ("A union's rights and duties as the exclusive bargaining agent in carrying out its representational functions" collectively comprise a field in which "the policy of the law is so dominated by the sweep of federal statutes that legal relations which [those rights and duties] affect must be deemed governed by federal law having its source in those statutes, rather than by local law."). Id. (internal citations omitted).

In this case, Ms. Creighton was acting as a representative for the Union during the Grievance proceedings. As noted above, the plaintiffs allege that Creighton was negligent in her handling of the Grievance, including her manner of dealing with Elkins, causing him to suffer emotional distress. To establish such a claim, the plaintiffs must also establish a breach of duty by Creighton. Any such duty could only arise in her capacity as representative of the Union. And regardless as to the nature of the damages alleged, including negligent and intentional conduct and loss of consortium, where they arise from the union's "representational activities,"

they are preempted by federal labor law. See Goulet v. Carpenters District Counsel of Boston and Vicinity, 884 F. Supp. 17 (D. Mass. 1994). Accordingly, the plaintiffs' claims are preempted by the federal law governing the DFR. BIW Deceived, 132 F.3d at 830.

    **C.    The Plaintiffs' Claim For Intentional Infliction Of Emotional Distress Is Preempted Because The Conduct Of Ms. Creighton Was Not Outrageous.**

Finally, notwithstanding, and subject to, the foregoing arguments, the plaintiffs' claim against Creighton for intentional infliction of emotional distress also must be dismissed as the actions of Creighton as alleged by the plaintiff did not amount to "outrageous conduct" as required under the law. And absent evidence of such conduct, the plaintiffs' claims for intentional infliction of emotional distress are preempted. Farmer v. United Bhd. of Carpenters & Joiners, 430 U.S. 290, 301-06, 51 L. Ed. 2d 338, 97 S. Ct. 1056 (1977); Goulet, F. Supp at 24.

Extreme and outrageous conduct sufficient to support an emotional distress claim has been defined as conduct that is "atrocious, and utterly intolerable in a civilized community." Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1021 (1st Cir. 1988), *cert. denied*, 488 U.S. 821, 102 L. Ed. 2d 42, 109 S. Ct. 65 (1988). Massachusetts law and the Restatement of Torts make clear that "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not constitute extreme and outrageous behavior. Tetrault v. Mahoney, Hawkes and Goldings, 425 Mass. 456, 466; 681 N.E.2d 1189, 1197 (1997); Gouin v. Gouin, 249 F. Supp. 2d 62, 78 (D. Mass. 2003).

In the case at hand, the plaintiffs allege that while preparing the Grievance arbitration, Creighton became exasperated at Elkins' continued insistence upon assertion of claims with which Creighton did not agree. At that time, she raised her voice and used profanity. See Plaintiffs' Complaint, ¶ 41. Such assertions hardly rise to the level of conduct which is "atrocious and utterly intolerable in a civilized community." See Fudge, 840 F.2d at 121. The

purported conduct of Creighton, as alleged by the plaintiffs, at best, falls within rubric of "mere insults" and "petty oppressions" which do not support a claim for emotional distress. Tetrault, 425 Mass. at 466; Gouin, 249 F. Supp. at 78.

### D. The Plaintiffs' Claims Are Barred As The Alleged Conduct of Creighton Was Privileged.

Massachusetts recognizes that statements made by an attorney in the institution or conduct of litigation, or in conferences and other communications preliminary to judicial proceedings are afforded an absolute privilege. Doe v. Nutter, McClennen & Fish, 41 Mass. App. Ct. 137, 140 (1996). A properly asserted privilege provides the defendant complete protection from liability, regardless of veracity the plaintiff's claims "even if the offensive statements are uttered maliciously or in bad faith." Id. The absolute privilege protects that maker from **any** civil liability, regardless of how a plaintiff couches the claim. "Thus, Massachusetts courts have applied the privilege, not only in defamation cases, but as a general bar to civil liability based on the attorney's statements." Id. This expressly includes claims of intentional infliction of emotional distress. Meltzer v. Grant, 193 F. Supp. 2d 373, 378 (D.Mass. 2002), citing Lucas v. Newton Wellesley Hospital, 2001 Mass. Super. LEXIS 329, 2001 WL 834618 (Mass.Super.), also citing Sriberg v. Raymond, 370 Mass. 105, 109, 345 N.E.2d 882 (1976).

In this case, the statements of Creighton were made as the representative of the Union in a quasi-judicial arbitration proceeding mandated by law (and precluding litigation of the issue). The privilege applicable to such statements is "absolute." Doe, 41 Mass. App. Ct. 137 at 140. Moreover, the intent of the Commonwealth in establishing this privilege dictates that it be equally applied to compulsory arbitration proceedings conducted in lieu of litigation. "'If the policy... is really to mean anything then we must not permit its circumvention by affording an

968565v1

almost equally unrestricted action under a different label.'" <u>Sullivan v. Birmingham</u>, 11 Mass. App. Ct. 359, 368, 416 N.E.2d 528, 533-34 (1981) quoting <u>Rainier's Dairies v. Raritan Valley Farms, Inc.</u>, 19 N.J. 552, 564, 117 A.2d 889 (1955).  As the statements at issue were made in connection with a judicial proceeding, they are privileged, thus precluding the plaintiffs' claims.

IV.    **CONCLUSION**

Based on the foregoing, Creighton respectfully requests that this Court grant her motion to dismiss the complaint against her with prejudice and grant costs and other relief as this Court deems just and proper.

Dated: October 19, 2005

                                      Respectfully submitted,

                                      CATHERINE CREIGHTON
                                      By her Attorneys,

                                      /s/Steven J. Bolotin
                                      Steven J. Bolotin, BBO#564085
                                      Justin M. Fabella, BBO#654859
                                      MORRISON MAHONEY LLP
                                      250 Summer Street
                                      Boston, MA  02210
                                      (617) 439-7500
                                      sbolotin@morrisonmahoney.com
                                      jfabella@morrisonmahoney.com

968565v1

**CERTIFICATE OF SERVICE**

I Justin M. Fabella, do hereby certify that I have this day served the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CAROLINE CREIGHTON'S MOTION TO DISMISS** to all counsel of record in this action by mailing the same on October 19, 2005, postage prepaid to:

Mitchell J. Notis
Counsel for Plaintiffs
Law Office of Mitchell J. Notis
370 Washington Street
Brookline, MA  02445

John D. Burke
Counsel for International Brotherhood
of Teamsters Local 264
Dumont, Morris and Burke, P.C.
14 Beacon Street, Suite 300
Boston, MA 02108

William R. Wilder
Baptiste & Wilder, P.C.
Counsel for International Brotherhood
of Teamsters Local 264
1150 Connecticut Ave., N.W.
Suite 500
Washington, D.C. 20036

Richard W. Paterniti
Thomas R. Smith
Counsel for Shuttle America
Jackson Lewis LLP
75 Park Plaza, 4th Floor
Boston, MA 02327

_____
Justin M. Fabella

968565v1

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D. LYLE ELKINS<br>AND MARTHA ELKINS,<br>    Plaintiffs<br><br>v.<br><br>INTERNATIONAL BROTHERHOOD<br>OF TEAMSTERS LOCAL 264,<br>CATHERINE CREIGHTON,<br>AND SHUTTLE AMERICA,<br>    Defendants | DOCKET NO: 05-11130NMG |

### AFFIDAVIT OF CATHERINE CREIGHTON

I, Catherine Creighton, on oath do depose and say as follows:

1. At all times relevant to this lawsuit, I have resided in the State of New York. I was never domiciled in the Commonwealth of Massachusetts.

2. I am an attorney duly admitted to practice before the Courts of the State of New York. I am not admitted to practice law before the Courts of the Commonwealth of Massachusetts. I have never practiced law in the Commonwealth of Massachusetts.

3. Neither I, nor my law practice, have any offices, representatives, realty, personalty, bank accounts, or presence whatsoever in the Commonwealth of Massachusetts.

4. I represented the interest of International Brotherhood of Teamsters Local 264 (the "Union") in a grievance filed by the plaintiff, D. Lyle Elkins. None of the proceedings associated with the grievance transpired in the Commonwealth of Massachusetts.

1

967974v1

5.    All of the work performed by me relevant to the plaintiff's complaint was either in New York or at an arbitration forum in Pittsburgh, PA.

6.    In fact, I have never personally entered the Commonwealth of Massachusetts to conduct any business whatsoever relating to my representation of the Union or the grievance filed by the plaintiff, D. Lyle Elkins.

7.    I submit this Affidavit in support of the within Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY, THIS 14th DAY OF OCTOBER, 2005.

_____
Catherine Creighton

2

967974v1