### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSCHUSETTS

D. Lyle Elkins, et al.,

        Plaintiffs,

v.

Teamsters Local 264, et al.,

        Defendants.

Case No. 05-11130 (NMG)

### DEFENDANT TEAMSTERS LOCAL 264's
### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION TO DISMISS COMPLAINT

Defendant Teamsters Local 264 ("local" or "union") moves to dismiss under Fed. R. Civ. P. 12(b)(2)&(6) the plaintiffs' complaint on the grounds that this court lacks personal jurisdiction over it; that the complaint fails to state a claim for the breach of the duty of fair representation; that the plaintiffs' state laws claims are preempted by the union's duty of fair representation under federal law; and that the complaint fails to state a claim for intentional infliction of emotional distress.[1]

The local has no substantial contacts with this forum. Its headquarters is in Cheektowaga, New York. Its scope of jurisdiction is Western New York. It does not carry on business in Massachusetts. Its representation of the Shuttle America pilots has not occurred in this state. It owns no property in this state. The plaintiffs' claims do not arise out of contacts alleged to exist between the local and the Commonwealth of

---

[1]    Mrs. Elkins' claim for loss of consortium is derivative of Mr. Elkins' claims. If Mr. Elkins fails to make out viable claims under the DFR doctrine and his state law torts, then Mrs. Elkins' claim fails along with his. *See Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 74 (1st Cir. 2001); *Breton v. Travelers Ins. Co.*, 147 F.3d 58 (1st Cir. 1998).

Massachusetts, but out of events that occurred in Buffalo, New York and Pittsburgh, Pennsylvania. Accordingly, the personal jurisdiction of this Court—either general or specific—over the local is lacking.

Further, the complaint fails to state a claim that the Local breached its duty of fair representation ("DFR") to the plaintiff Lyle Elkins in administering his grievance. A union is accorded substantial discretion in adjusting grievances and is liable for a breach of its DFR only if it acted in a manner that is "arbitrary, discriminatory, or in bad faith" toward the plaintiff. The plaintiff's mere dissatisfaction with the union's representation is not sufficient. Rather, the union must act in a manner that seriously undermined the arbitral process. The complaint reflects, at most, that plaintiff Lyle Elkins disagreed with the tactical decisions made by the union representatives during the arbitration on his grievance. The plaintiffs' conclusory allegations fail to identify any discrimination or bad faith by the union toward Mr. Elkins and do not allege facts sufficient to show that the union acted so far outside a wide range of reasonableness as to be irrational. The plaintiffs' DFR claim fails as a matter of law.

The duty of fair representation imposed on a union pursuant to the Railway Labor Act serves to completely preempt state law claims that allege nothing more than conduct by the union in its representative capacity. While the plaintiffs plead their claims as state law torts for negligent and intentional infliction of emotional distress, the plaintiffs challenge only the conduct of union representatives in the grievance process. The court is not required to defer to "artful pleading" by a plaintiff to avoid preemption. The plaintiffs' state law claims do not go beyond the union's actions in its representative capacity. Accordingly, the DFR operates to completely preempt these claims.

$-2-$

Even considering Mr. Elkins' claim for intentional infliction of emotional distress, he fails to state a claim. Plaintiff alleges no more than the union's mishandling of his grievance. The allegations against defendant Creighton amount to nothing other than alleged insults and hostility to Mr. Elkins. These allegations fall far short of the outrageousness required for the tort of intentional infliction of emotional distress.

Accordingly, the plaintiffs' action should be dismissed with prejudice in its entirety.

## **FACTS**

Accepting the plaintiffs' allegations as true for purposes of this motion, they allege the following:

Plaintiff Lyle Elkins was hired as a pilot by Shuttle America in 1999. Complaint ¶ 10. He flew for Shuttle America out of Bedford, Massachusetts. *Id.* ¶ 11.

Local 264 represented the pilots of Shuttle America as their collective bargaining representative. Complaint ¶ 12. Mr. Elkins was an "agency fee payer" to the Local, in lieu of union membership. *Id.* ¶¶ 6, 12.

Mr. Elkins was first discharged by Shuttle America in 2001-02. Complaint ¶ 15. Local 264 grieved Mr. Elkins' discharge and won his reinstatement through arbitration in December 2002. *Id.* ¶ 15.

Following Elkins' reinstatement, Shuttle America assigned the plaintiff to a training class in January 2003. Complaint ¶ 18. Mr. Elkins failed to attend that training session due to an alleged medical issue. *Id.* ¶ 19. Attorney Joseph Giroux, the union attorney who represented plaintiff in his first discharge arbitration, notified the Company that Elkins was medically unable to attend training. *Id.* ¶ 21. In February 2003 Shuttle America discharged Mr. Elkins for failing to report for training, asserting

$-3-$

that he failed to produce medical documentation to support his failure to report and had not requested a medical leave of absence from the company. *Id.* ¶ 23.

Local 264 grieved Mr. Elkins' second discharge. Complaint ¶ 27. The union and company submitted the grievance to arbitration. *Id.* The local assigned attorney Catherine Creighton to prosecute the grievance on behalf of Mr. Elkins. Mr. Elkins met with Ms. Creighton in Buffalo, New York. *Id.* ¶ 39. In that meeting, Mr. Elkins had a disagreement with Ms. Creighton over the availability of emotional distress damages in arbitration. *Id.*

Mr. Elkins again met with Ms. Creighton prior to the arbitration hearing. Complaint ¶ 41. Mr. Elkins claimed to Ms. Creighton that his mental condition had deteriorated and he was in a fragile emotional state. *Id.* Plaintiffs allege that Ms. Creighton stated she did not want to hear about Mr. Elkins' health and that the issue was not relevant to the arbitration. *Id.* Mr. Elkins argued with Ms. Creighton over the issue. *Id.* Plaintiffs allege Ms. Creighton swore at Mr. Elkins and then left the table where she was meeting with him. *Id.*

Plaintiffs allege Ms. Creighton engaged in tactics during the arbitration process with which Plaintiff Elkins disagreed, including not introducing evidence regarding Elkins' medical condition or pressing his claim for emotional distress damages. Complaint ¶ 43. They allege Ms. Creighton was negligent in providing such representation. Complaint ¶ 46, 58.

Following the arbitration hearing, the arbitrator issued a decision upholding Mr. Elkins' termination by the company. Complaint ¶ 45.

− 4 −

## **ARGUMENT**

### I.    Standards for review of Rule 12(b)(2) and 12(b)(6) motions

Unless it conducts an evidentiary hearing, a district court considering a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction does so under a "prima facie" standard. *United States v. Swiss American Bank*, 274 F.3d 610, 618 (1st Cir. 2001). It is the plaintiff's burden to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution with evidence of specific facts. *Id.* at 618-19, *quoting Pleasant Street II*, 987 F.2d at 44. "The district court is to accept properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law." *Id.*

In considering a Rule 12(b)(6) motion to dismiss, the district court accepts as true all well-pleaded allegations of the complaint and grants reasonable inferences in favor of the plaintiff. *Gouin v. Gouin*, 249 F. Supp. 2d 62, 67 (D. Mass. 2003). It need not accept "bald assertions, . . . subjective characterizations, optimistic predictions, or problematic suppositions." *Id.*, *citing United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992).[2] The court should dismiss the complaint if it appears beyond doubt that the

---

2    Given the substantial deference due a union under the DFR doctrine, courts have required that plaintiffs plead specific facts showing the union acted arbitrarily, in bad faith, or in a discriminatory manner. *See Gainey v. Brotherhood of Ry. & S.S. Clerks*, 313 F.2d 318, 323 (3rd Cir. 1963); *Lusk v. Eastern Product Corp.*, 427 F.2d 705, 708 (4th Cir. 1970); *Balowski v. UAW*, 372 F.2d 829, 835 (6th Cir. 1967); *Augspurger v. BLE*, 510 F.2d 853, 859 (8th Cir. 1975); *Stagely v. Illinois Central R.R.*, 397 F.2d 546, 552 (7th Cir. 1968); *Archie v. Chicago Truck Drivers*, 585 F.2d 210,219-20 (7th Cir. 1978); *Williams v. General Foods Corp.*, 492 F.2d 399, 405 (7th Cir. 1974); *Hardcastle v. Western Greyhound Lines*, 303 F.2d 182, 185 (9th Cir. 1962); *Washington v. Chicago & N.W. Transportation Co.*, 1992 U.S. Dist. LEXIS 15900 (N.D. Ill. 1992); *Stephens v. Roadway Express*, 1982 U.S. Dist. LEXIS 9561 (N.D. Ga. 1982); *West v. Keebler Co.*, 1982 U.S. Dist. LEXIS 16756 (M.D. Ga. 1982); *Curry v. Atlanta Newspapers*, 1981 U.S. Dist. LEXIS 11085 (N.D. Ga. 1981); *Maisonet v. Trailer and Marine Transport, Inc.*, 514 F.

plaintiff cannot prove any set of facts in support of his claim that would entitle him to

relief. *Id.*

## II.    The court lacks personal jurisdiction over Local 264

### A.    *Standard for establishing personal jurisdiction*

A court may hold personal jurisdiction over a party by either general or specific

jurisdiction.[3]/  In evaluating whether general personal jurisdiction exists, a court must

examine the quality and quantity of a party's contacts with the forum. *Swiss American*

*Bank*, 274 F.3d at 619. The plaintiff must show both that the defendant has "continuous

---

Supp. 1129, 1133 (D.P.R. 1981)("bare conclusory allegation of the existence of a
conspiracy without more, is insufficient to state a cause of action").

[3]    Massachusetts long arm statute provides as follows:

A court may exercise personal jurisdiction over a person, who acts directly or by
an agent, as to a cause of action in law or equity arising from the person's
   (a)    transacting any business in this Commonwealth;
   (b)    contracting to supply services or thing in this Commonwealth;
   (c)    causing tortious injury by an act or omission in this Commonwealth;
   (d)    causing tortious injury in this Commonwealth by an act or omission
          outside this commonwealth if he regularly does or solicits business, or
          engages in any other persistent course of conduct, or derives substantial
          revenue from goods used or consumed or services rendered, in this
          commonwealth;
   (e)    having an interest in, using or possessing real property in this
          commonwealth;
   (f)    contracting to insure any person, property or risk located within this
          commonwealth at the time of contracting;
   (g)    maintaining a domicile in this commonwealth while a party to a personal
          or marital relationship out of which arises a claim for divorce, alimony,
          property settlement, parentage of a childe, child support or child custody;
          or the commission of any act giving rise to such a claim; or
   (h)    having been subject to the exercise of personal jurisdiction of a court of the
          commonwealth which has resulted in an order of alimony, custody, child
          support, or property settlement, notwithstanding the subsequent
          departure of one of the original parties from the commonwealth, if the
          action involves modification of such order or orders and the moving party
          resides in the commonwealth, or if the action involves enforcement of such
          order notwithstanding the domicile of the moving party.

ALM GL ch 223A, § 3.

and systematic general business contacts" with the forum and that the exercise of jurisdiction over the defendant is reasonable. *Id.* The standard for evaluating whether a party's contacts satisfy the constitutional requisites for general jurisdiction is more stringent than that for specific jurisdiction. *Id.*

Alternatively, a plaintiff can attempt to show that a court holds specific personal jurisdiction over the defendant. To do so, a plaintiff must show (1) that his claim relates to or arises out of the defendant's contacts with the forum; (2) that those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws; and (3) that exercise of jurisdiction by the court meets the requirements of fundamental fairness. *Swiss American Bank.* 274 F.3d at 621.

In evaluating whether the plaintiff's claim relates to or arises out of the defendant's contacts, the evidence must demonstrate a nexus between the contacts and the plaintiff's cause of action. *Swiss American Bank,* 274 F.3d at 621. Further, the "purposeful availment" requirement is satisfied only where a defendant "purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receive, to be subject to the court's jurisdiction based on these contacts." *Id.* at 624.

The First Circuit Court of Appeals will not find specific jurisdiction based on the in-forum effects of activities outside the forum. 274 F.3d at 624. Rather, it requires a showing actual contacts or injury within the forum. *Id.* The Supreme Court requires that the specific in personam jurisdiction analysis focus on the activities of the defendant in the forum, not the residence or location of the plaintiff. *New England Health Care Employees Union v. Fall River Nursing Home, Inc.,* 802 F. Supp. 674, 678

(D.R.I. 1992), *citing, Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 414 n. 8 (1984).

### B. Local 264 has no contacts with Massachusetts to support a finding of either general or specific personal jurisdiction

1. Local 264 does not have systematic and continuous business contacts with Massachusetts to support general personal jurisdiction

As reflected in the declaration of Ron Lucas, President of Teamsters Local 264, the Local does not have contacts with the Commonwealth of Massachusetts to grant this court general personal jurisdiction over it. The union's jurisdiction, with the exception of Shuttle America, is limited to Buffalo and Western New York State. Lucas Decl. ¶ 2. It has no members in Massachusetts and plaintiff Lyle Elkins was not a member of the Local, but an agency fee payer in lieu of membership. *Id.* ¶ 3. *See also* Complaint ¶ 6.

The Local does not perform representative functions in Massachusetts or otherwise conduct business here. Lucas Decl. ¶ 8. It does not maintain business relationships with person in Massachusetts. *Id.* ¶ 9. Its representative functions on behalf of Shuttle America pilots have not been performed in Massachusetts. *Id.* ¶ 7. Its representation of Mr. Elkins, either in its general capacity as representative of the Shuttle America pilots or in its particular representation in the grievance that is the subject of this litigation, has not occurred in Massachusetts. *Id.* ¶ 12.

Finally, the Local does not own property, real or personal, in Massachusetts. Lucas Decl. ¶ 4.

Local 264 submits that it has no contacts that reflect "continuous and systematic general business contacts" with the Commonwealth of Massachusetts. *Swiss American Bank,* 274 F.3d at 619. Even under the "transacting business" provision of the

Massachusetts long-arm statute (Mass. Gen. Laws ch. 223A, § 3(a)), which is construed broadly, Local 264 has no "purposeful acts" or "deliberate non-fortuitous contacts" making foreseeable a need to invoke the protection of the laws of Massachusetts. *HTI Solutions, Inc. v. Telephone Credit Union of New Hampshire*, 2002 Mass. Super. LEXIS 14, *5 (Super. Ct-Middlesex, 2002). Accordingly, general personal jurisdiction is lacking in this court.

> 2.    This court does not possess specific personal jurisdiction over Local 264 because the plaintiffs' claims do not arise out of any conduct by the local in Massachusetts; further, the union has not acted in a manner to avail itself of this forum nor has it purposefully directed actions at this forum

As set forth above, to establish specific personal jurisdiction in this court over Local 264, the plaintiffs must demonstrate that their claims arise from the local's conduct in Massachusetts, that the local purposefully availed itself of Massachusetts as a forum, and that the exercise of jurisdiction is fundamentally fair. The union submits that the plaintiffs cannot carry this burden, as the local has not engaged in any actions in the Commonwealth having a nexus to the plaintiffs' claims. *Swiss American Bank*, 274 F.3d at 621.

The preparation for the arbitration hearing on Mr. Elkins' grievance occurred in Buffalo, NY and Pittsburgh, PA. Complaint ¶¶ 39, 41; Lucas Decl. ¶ 11. The arbitration hearing occurred in Pittsburgh. Complaint ¶ 43; Lucas Decl. ¶ 10. The facts alleged in support of the various claims asserted in the complaint occurred in Pittsburgh, PA either the night before or during the arbitration hearing. Complaint ¶¶41-44. No facts are plead—and none can be proven—to place in the Commonwealth of Massachusetts any of

− 9 −

the defendant's acts alleged in support of the plaintiffs' claims. Accordingly, plaintiffs have failed to satisfy the first element of specific personal jurisdiction.

Since the plaintiffs cannot prove any acts by Local 264 in Massachusetts upon which their claims are based, they necessarily cannot establish that the local's actions reflected purposeful availment of the benefits of this forum. As reflected in Mr. Lucas' declaration, the local has no contacts with Massachusetts that could support a conclusion it has purposefully availed itself of the Commonwealth's laws. Further, the plaintiffs' cannot rely on the so-called "effects test" established in *Calder v. Jones*, 465 U.S. 783 (1984), since the First Circuit rejects personal jurisdiction on the basis of the in-forum effects of activities outside the forum. It requires a showing of actual contacts or injury within the forum. *Swiss American Bank*, 274 F.3d at 625. That Elkins resides in Massachusetts is no basis for specific personal jurisdiction in the absence of any conduct by the Local in the Commonwealth. *New England Health Care Employees Union*, 802 F. Supp. at 678.

Here, the actions complained of did not occur in Massachusetts and nothing can be shown that Local 264 "purposefully directed" any actions toward this forum so that the union could expect to be sued here. 274 F.3d at 624. Given the inability of the plaintiffs to prove the first and second elements of specific personal jurisdiction, it is unnecessary to consider whether an exercise of personal jurisdiction would accord with fundamental fairness. Plainly, it would not. Accordingly, specific personal jurisdiction is lacking and the complaint should be dismissed as to the local.

— 10 —

## III. The complaint fails to state a claim for breach of the duty of fair representation

### A.    The DFR standard

A union owes a duty of fair representation to all persons in the bargaining unit for which it is the exclusive collective bargaining representative. It breaches that duty only if its actions toward an employee are "arbitrary, discriminatory, or in bad faith." *Plumley v. Southern Container,* 303 F.3d 364, 374 (1st Cir. 2002), *quoting Vaca v. Sipes,* 386 U.S. 171, 186 (1967). In the context of grievance processing, a union breaches its DFR only if its actions "seriously undermined the arbitral process." *Vaca,* 386 U.S. at 191.

The grievance process is not a "straightjacket" forcing the union to pursue every grievance filed by an employee. *Ayala v. Union de Tronquista de Puerto Rico,* 74 F.3d 344, 345-46 (1st Cir. 1996).    The union has considerable discretion in adjusting a grievance. *Id.* at 346.

Negligence in the processing of a grievance does not constitute a breach of the DFR. *MacKnight v. Leonard Morse Hospital,* 828 F.2d 48, 51 (1st 1987). *See also Miller v. United States Postal Serv.,* 985 F.2d 9, 12 (1st Cir. 1993). Nor is it a breach of that duty for a union to misconstrue a collective bargaining agreement in processing a grievance. *Ayala,* 74 F.3d at 346.

An employee does not have an absolute right to prosecute a grievance through the union. *Plumley,* 303 F.3d at 374-75. And merely because the union disposes of a grievance in a manner contrary to the wishes of the employee does not give rise to a claim for breach of the DFR. *Id. See also Williams v. Sea-Land Corp.,* 844 F.2d 17, 21

— 11 —

(1st Cir. 1938)(grievant's disappointment with union's decision that his discharge was with cause does not meet standard for breach of DFR).

Even the union's personal hostility or animosity toward the grievant is insufficient to establish a breach of the DFR in the absence of facts showing "that the union's handling of the grievance was itself materially deficient." *Leonard Morse Hospital*, 828 F.2d at 51.

**B.** **The plaintiffs' complaint states nothing more than Elkins' disagreement with the union's tactical decisions in prosecuting his grievance; it alleges no facts that could establish the union conducted itself in an arbitrary, discriminatory, or bad faith manner that seriously undermined the arbitral process**

The plaintiffs' complaint is heavy with their subjective characterizations of the motives of union representatives who prosecuted Mr. Elkins' grievance. What is clear from the complaint is that—for the second time—the union took to arbitration Mr. Elkins' discharge by the company. The discharge that gave rise to the grievance that is the subject of this action occurred only after the union won Mr. Elkins' reinstatement from an earlier discharge by Shuttle America. Complaint ¶ 15.

When Mr. Elkins failed to report for work following his reinstatement and was terminated, the local again filed a grievance on his behalf. Complaint ¶¶ 22, 27. It prosecuted that grievance to an arbitration hearing and, though it was not required to do so, retained an attorney to handle the grievance. Complaint ¶¶ 27, 40.

Plaintiffs must establish that the union prosecuted Mr. Elkins' grievance in a perfunctory manner that was arbitrary, discriminatory, or in bad faith.    The arbitrariness required is conduct that is "so far outside a wide range of reasonableness as to be irrational." *ALPA v. O'Neill*, 499 U.S. 65, 67 (1991).

The plaintiffs' allegations fall well short of this standard. They complain first that the union's attorney disagreed with Mr. Elkins on the availability of emotional distress damages in arbitration and declined to present that issue to the system board of adjustment. Complaint ¶¶ 39, 43. They also complain of tactical decisions made by the union attorney not to present evidence of Mr. Elkins' medical condition or call another union attorney as witness. *Id.* ¶¶ 43, 44. Of the litany of allegations in paragraph 44 of the complaint, the specific allegations made relate only to tactical decisions by the union's attorney on what evidence or argument ought to be presented to the system board. *See* Complaint ¶¶ 44(c)-(k), (n)-(o). The other allegations are conclusory and subjective characterizations of Ms. Creighton's demeanor during the hearing and its effect on the system board. Complaint 44(b), (l), (m), (p).

Plaintiffs allege nothing more than that Mr. Elkins disagreed with the tactical decisions of the union attorney and her appraisal of his grievance. But that is insufficient to make out a claim for breach of DFR. Even if the union attorney misconstrued the contract in determining that Mr. Elkins' medical condition was not relevant to the grievance and emotional distress damages were unavailable,[4] that is not enough to establish a breach of DFR. *Ayala,* 74 F.3d at 346; *Williams,* 844 F.2d at 21. The union is granted "great latitude in determining the merits of an employee's grievance and the level of effort it will expend to pursue it." *Miller,* 844 F.2d at 12.

In *Williams,* the grievant, a seaman, was discharged for alleged insubordination. The union assigned an agent to investigate the issue and the agent concluded Williams' discharge was for just cause. The union refused to process the grievance. The First

---

4    Whether a particular damages remedy was available is, of course, irrelevant to the merits of Elkins' discharge.

Circuit held that the union's conduct could not be described as arbitrary, discriminatory, or in bad faith. 844 F.2d at 21.

Here, "the union neither ignored [Elkins'] complaint nor processed it in a perfunctory way." *Williams*, 844 F.2d at 21. Rather, it prosecuted Elkins' grievance fully to arbitration. The complaint fails to allege more than the plaintiffs' disagreement with the union's evaluation of his grievance and its chosen tactics for presenting the case at arbitration. *Plumley*, 303 F.3d at 375 (plaintiff's allegation that union disposed of grievance contrary to his wishes inadequate to establish claim for breach of DFR); *Williams*, 844 F.2d at 21 (grievant's disappointment with union's evaluation of his grievance does not give rise to a claim for breach of DFR). At most, plaintiffs allege that Ms. Creighton acted negligently in prosecuting the grievance at hearing. Complaint ¶¶ 44(p), 46 (representation inadequate), 58 (attorney's actions "constitute negligence), 59 (attorney "negligent in her representation"). But negligence does not create a DFR breach. *Miller,* 985 F.2d at 12; *Leonard Morse Hosp.*, 828 F.2d at 51.

Even the plaintiff's allegations that Ms. Creighton swore and was abusive toward Mr. Elkins in a preparation meeting before the arbitration are subjective characterizations and inadequate to make out a DFR breach. As the First Circuit Court of Appeals noted in *Leonard Morse Hospital*, hostility or animosity alone do not establish a DFR breach. 828 F.2d at 51. Rather, the plaintiff must be able to show the union's handling of the grievance was itself materially deficient. *Id.* Plaintiffs allege in a conclusory way that Ms. Creighton was hostile to Elkins, but fail to allege facts that could show the union's representation at the hearing was irrational, in bad faith or discriminatory. Given that the union twice prosecuted Mr. Elkins' discharge grievances

to arbitration, the complaint's conclusory allegations that the union discriminated against him or held bad faith toward him cannot be credited.

Given the plaintiffs' exhaustive pleading it is plain that there are no facts they can allege that if proven, would establish the Local breached its DFR to Mr. Elkins. Accordingly, the complaint should be dismissed with prejudice.[5]

## IV. The plaintiffs' state law tort claims should be dismissed as they are preempted by the union's duty of fair representation

### A. The duty of fair representation completely preempts state law claims that challenge a union's representative actions

"Preemption [] can occur by operation of the so-called duty of fair representation (DFR)." *BIW Deceived v. Local S6, IAMAW,* 132 F.3d 824, 830 (1st Cir. 1997). Unlike preemption by Section 301 of the LMRA, preemption by the DFR doctrine is not predicated on the necessity of interpreting the collective bargaining agreement to dispose of a plaintiff's claims. Rather, "state law is preempted whenever a plaintiff's claims invokes rights derived from the union's duty of fair representation." *Id.* DFR preemption operates similarly to Section 301 preemption in that it completely preempts state law claims within its scope. *Id.* at 831. Accordingly, the "artful pleading" doctrine

---

5    The plaintiffs' claim against the Company depend on their ability to prove a DFR breach by the union. As they cannot meet this prerequisite, their claim against the Company also fails. *Plumley,* 303 F.3d at 374 (employee may bring claim against employer only if he proves DFR claim against union). The plaintiffs' burden in this case under the RLA is heavier because § 301 of the Labor Management Relations Act, which is used by employees to bring a breach of contract suit against their employer, does not apply to air carriers. 29 U.S.C. § 152(2). Accordingly, the plaintiffs must prove the carrier colluded with the union in the alleged DFR breach. *See, e.g., United Indep. Flight Officers v. United Airlines,* 756 F.2d 1274, 1283 (7th Cir. 1985); *Crenshaw v. Allied Chemical,* 387 F. Supp. 594, 600 (E.D. Va. 1975)(where plaintiffs consented to representation by union and did not allege facts showing collusion by employer or union in process, they are bound by result of arbitration). The complaint does not contain allegations of collusion against the carrier.

applies to analyze a claim pled as a state law claim that in fact states a claim for the breach of the duty of fair representation. *Id.*

The scope of DFR preemption encompasses all representational conduct by a union. *BIW Deceived,* 132 F.3d at 833 (non-member plaintiffs claims of discrimination by union in employer's interview process preempted since union "plainly acted in a representational capacity during the recruitment process"); *Cahoon v. IBEW, Local 261,* 175 F. Supp. 2d 200, 227 (D. Conn. 2001). State law duties will only escape preemption if they are "wholly outside the ambit of those obligations circumscribed by the federal duty." *Bergeron v. Henderson,* 52 F. Supp. 2d 149, 153 (D. Maine 1999). Moreover, the "local interest" exception to preemption under *San Diego Bldg. Trades Council v. Garmon ,* 359 U.S. 236 (1959), does not apply to preemption under the DFR doctrine because DFR preemption presents an issue of substantive conflict between state and federal law, where federal law must prevail. *Cahoon,* 175 F. Supp. 2d at 228.

### B.    The plaintiffs' state law claims complain of actions by the union, through its agents, as exclusive representative in the grievance process; accordingly, the claims are preempted by the union's duty of fair representation

It is clear from the complaint that Mr. Elkins' state law claims rely entirely on events during the grievance process. He complains of the union attorney's conduct during a preparation meeting the night before the arbitration hearing. Complaint ¶ 41. He further complains of the union attorney's conduct during the hearing. *Id.* ¶ 43-44. None of the allegations of the complaint go beyond the scope of the grievance process or the union's representation of Mr. Elkins.

In his claim for negligent infliction of emotional distress[6]/, Mr. Elkins alleges specifically "Ms. Creighton was negligent in her representation of Mr. Elkins." Complaint ¶ 59. The union acts in its representative capacity in the grievance process and its conduct in that process is governed by its duty of fair representation. *Vaca*, 368 U.S. at 191. By asserting a claim for negligent action in the grievance process, Mr. Elkins is challenging conduct where "the Union plainly acted in a representational capacity" to prosecute the grievance. *BIW Deceived*, 132 F.3d at 833.

Further, Mr. Elkins claim for intentional infliction of emotional distress is predicated on his factual allegations regarding the conduct of the union attorney as representative in the grievance process. The complaint incorporates those factual allegations by reference in its Count II and states, "in taking the actions set forth above", the union is liable for the tort of intentional infliction of emotional distress based on the actions of its agent. Complaint ¶¶ 55, 56. Since Mr. Elkins does not allege any conduct going beyond the scope of the union's representative capacity, but complains only of conduct in the grievance process, his intentional infliction of emotional distress claim is also preempted by the duty of fair representation. *Bergeron*, 52 F. Supp. 2d at 153 (state law duties must "wholly outside the ambit" of the duty of fair representation to avoid preemption); *Cahoon*, 175 F. Supp. 2d at 227.

---

6      The elements for a claim of negligent infliction of emotional distress are that (1) the defendant was negligent; (2) that plaintiff suffered emotional distress as a result of the negligence; (3) the emotional distress was caused by the negligence; (4) the plaintiff suffered physical harm manifested by objective symptomatology; and (5) a reasonable person would have suffered emotional distress under the same circumstances. *Goiun v. Gouin*, 249 F. Supp. 2d 62, 74 (D. Mass. 2003). Since Elkins fails to identify any duty negligently violated by the union except the duty of fair representation owed in processing his grievance, this negligent infliction claim is preempted by the DFR.

Elkins' attempt to cast these claims as state law torts cannot avoid the inevitable conclusion that they are preempted. *Sousa v. Stop & Shop Supermarket*, 1999 U.S. Dist. LEXIS 9367 (D. Mass. 1999), *quoting Steelworkers v. Rawson*, 495 U.S. 362, 371-72 (1985)("preemption cannot be avoided by characterizing [a] Union's negligent performance of what it does on behalf of the members of the bargaining unit pursuant to the terms of the collective-bargaining contract as a state-law tort."). Accordingly, counts II and III of the complaint should be dismissed with prejudice. *Vargas v. Geologistics Americas, Inc.*, 2854 F.3d 232, 234 (1st Cir. 2002)(state law actions subject to DFR preemption do not survive.). 7/

---

7    Complete preemption of the plaintiffs' state law claims by the union's DFR requires dismissal of the their claims against the company and Ms. Creighton. The company's liability is derivative of the Union's DFR and the complaint alleges Ms. Creighton acted solely as an agent of Local 264. Complaint ¶ 48, 56. Plaintiffs do not allege claims against any defendant that go beyond the scope of the union's DFR.

The plaintiffs' claims against Ms. Creighton should also be dismissed with prejudice because "court after court has cited [Atkinson v. Sinclair Refining Co., 370 U.S. 238 (1962)] to foreclose state law claims, however inventively cloaked, against individuals acting as union representatives within the ambit of the collective bargaining process." *Wolfson v. American Airlines, Inc.*, 170 F. Supp. 2d 87, 96 (D. Mass. 2001), *citing, Montplaisir v. Leighton*, 875 F.2d 1, 4 (1st Cir. 1989). This doctrine applies to disputes arising under the Railway Labor Act. *Id.*

In *Montplasir*, the First Circuit barred a suit for malpractice by union members against the union's attorney. The court of appeals rejected the members' argument that the agent immunity established in *Atkinson* should not apply to attorneys. 875 F.2d at 6. It held where the attorney is acting on behalf of the union in carrying out the union's representative functions, *Atkinson* immunity applies. *Id.*

Here, there is no dispute Ms. Creighton acted as the union's agent in prosecuting Mr. Elkins' grievance before the system board and, therefore, her role falls squarely within *Atkinson*. As the First Circuit noted in *Montplasir* "Where counsel has been delegated 'a function that often is performed by a union's business agents or representatives,' disregarding the *Atkinson* rule 'is not warranted or permissible merely because a union chooses to employ an attorney.'" 875 F.2d at 6, *quoting Peterson v. Kennedy*, 771 F.2d 1244, 1258-59 (9th Cir. 1985). Accordingly, all claims against Ms. Creighton should be dismissed with prejudice.

## V.    The complaint fails to state a claim for intentional infliction of emotional distress

Under Massachusetts law a plaintiff seeking to prosecute a claim for intentional infliction of emotional distress must be able to prove that the defendant (1) intended to inflict emotional distress; (2) by undertaking actions that were extreme and outrageous, thereby (3) causing emotional distress which (4) was severe. *Flibotte v. Pennsylvania Truck Lines, Inc.*, 131 F.3d 21, 27 (1st Cir. 1997).    "Massachusetts law and the Restatement make clear that 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' do not constitute 'extreme and outrageous behavior.'" *Gouin*, 249 F. Supp. 2d at 78.    Rather, the conduct challenged must "go beyond all possible bounds of decency and [be] regarded as atrocious and utterly intolerable in our civilized community." *Id.*

Mr. Elkins alleges only that he had an argument with Ms. Creighton in a meeting prior to the arbitration hearing over the relevance of his medical condition and that she swore at him and was "abusive" during that argument. Complaint ¶ 41. His additional allegations go only to Ms. Creighton's representation in the arbitration claiming that she would not sit with him and had "general hostility" toward him. Complaint ¶ 43, 44(b), (l), (m). These allegations fall squarely under the rubric of "petty oppressions and other trivialities." *Goiun*, 249 F. Supp. 2d at 78. Swearing at a person and refusing to sit with him during an arbitration hearing does not begin to approach conduct that is "beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in our civilized community." *Id.* The extensive allegations of the complaint show Elkins cannot prove any set of facts to establish his claim for intentional infliction of emotional

distress and that claim should be dismissed with prejudice as to the union and its attorney.

## CONCLUSION

WHEREFORE, the defendant respectfully requests that its motion be granted, the complaint be dismissed in its entirety with prejudice, and defendant be granted its costs and any other relief as the court deems proper.

Dated: October 19, 2005.          Respectfully submitted,


Gabriel O. Dumont, Jr., BBO#137820
John D. Burke, BBO#556951
Dumont, Morris and Burke, P.C.
14 Beacon Street, Suite 300
Boston, MA 02108
(617) 227-7272/(617) 227-7025 [fax]

William R. Wilder
Baptiste & Wilder, P.C.
1150 Connecticut Ave., N.W., Suite 500
Washington, D.C. 20036
(202) 223-0723/(202) 223-9677 [fax]
wwilder@bapwild.com

Counsel for Defendant Local 264

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing motion was served on

counsel for the plaintiffs and defendants on October 19, 2005, addressed as follows:

Mitchell J. Notis
Law Office of Mitchell J. Notis
370 Washington Street
Brookline, MA 02455

Thomas R. Smith
Richard W. Paterniti
Jackson Lewis, LLP
75 Park Plaza
Boston, MA 02116

Steven J. Bolotin
Morrison Mahoney, LLP
250 Summer Street
Boston, MA 02210

Gabriel O. Dumont, Jr.