## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSCHUSETTS

|  |  |  |
|---|---|---|
| D. Lyle Elkins, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 05-11130 (NMG) |
| Teamsters Local 264, et al., | ) | |
| Defendants. | ) | |

### REPLY IN SUPPORT OF DEFENDANT TEAMSTERS LOCAL 264's
### MOTION TO DISMISS COMPLAINT

**I.    Local 264's representation of the Shuttle America pilots did not involve conduct in Massachusetts; the plaintiffs fail to identify conduct by the Local directed toward Massachusetts that is the basis for their claims**

While attempting to raise a dispute of fact regarding the presence of Local 264 members in Massachusetts, the plaintiffs fail to present facts showing that when the Local represented the Shuttle America pilots it engaged in representational activities in Massachusetts.[1] The burden of proof of personal jurisdiction rests with plaintiffs. *United States v. Swiss American Bank,* 274 F.3d 610, 618 (1st Cir. 2001)(it is plaintiff's burden "to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process clause of the Constitution.").

Even under the broad interpretation of the "transacting any business" element of the Massachusetts long-arm statute, plaintiffs have failed to allege facts showing the Local regularly engaged in representing employees in Massachusetts.  Plaintiffs allege no more than isolated communications to Mr. Elkins by the Local.  *Int'l Shoe Co. v.*

---

[1]    As of December 1, 2005, Local 264 no longer represents the Shuttle America pilots.

*Washington,* 326 U.S. 310, 317 (1945)("single or isolated items of activities in a state . . . are not enough to subject it to suit on causes of action unconnected with the activities there."); Swiss *American Bank*, 274 F.3d at 619 (general personal jurisdiction requires "continuous and systematic general business contacts").  They present nothing to rebut the evidence presented by Local 264 that its representation of Shuttle America pilots did not involve acts in the Commonwealth.  The plaintiffs cannot show facts demonstrating a purposeful availment of the laws of the Commonwealth by the Local sufficient to satisfy the requirements of general personal jurisdiction.

Moreover, plaintiffs must demonstrate that their claims arise from the Local's alleged transacting of business in the Commonwealth.  *HTI Voice Solutions v. Tel. Credit Union of N.H.*, 2002 Mass. Super. LEXIS 14, *7-8 (Super. Ct. Middlesex 2002), *citing*, Gen. Laws c. 223A, §3(a).  They must show their claims "[were] made possible by, or lie[] in the wake of, the transaction of business in the forum State." *Id., quoting Tatro v. Manor Care, Inc.*, 625 N.E.2d 549 (1994).  The plaintiffs do not show any action by the Local directed toward Massachusetts that is the basis for their causes of action. While Mr. Elkins recites phone calls he initiated from Massachusetts to the Local and letters exchanged between the parties, none of these actions form the basis for the plaintiffs' claims against Local 264.  The Elkins' opposition shows that the actions of which they complain arose in Pittsburgh, PA during the arbitration hearing and preparation the night before.  Opposition, pp. 16-19.

Since the plaintiffs' claims rest on actions by the Local's agent allegedly occurring in Pittsburgh, PA and Buffalo, NY, they also fail to establish the requisites for specific personal jurisdiction.   It is not enough that Mr. Elkins resides in Massachusetts and carried his alleged injury home with him. *New England Health Care Employees Union*

*v. Fall River Nursing Home, Inc.*, 802 F. Supp. 674, 678 (D.R.I. 1992)(focus of specific

jurisdiction is actions of defendant, not residence of plaintiff). Plaintiffs must allege

facts showing Local 264 purposefully directed actions toward the Commonwealth

having a nexus to their claims. *Swiss American Bank.* 274 F.3d at 621. They do not.[2]

## II.    Plaintiffs fail to allege facts showing the Local engaged in bad faith, discriminatory, or arbitrary conduct in handling the grievance at arbitration

The plaintiffs' sole basis for alleging bad faith on the part of the Local is alleged

animus toward Mr. Elkins by the Local's outside attorney, Ms. Creighton. *See, e.g.,*

Opposition, pp. 16-17. They assert that Ms. Creighton refused to present her law partner

Mr. Giroux as a witness because she would then be precluded from serving as advocate

in the arbitration. *Id.* They also allege she was hostile toward Mr. Elkins because he

filed bar complaints against Giroux. *Id.* The court need not accept these speculative—

even outlandish—allegations as true. *Gouin v. Gouin*, 249 F. Supp. 2d 62, 67 (D. Mass.

2003)(court need not accept "bald assertions, . . . subjective characterizations,

optimistic predictions, or problematic suppositions."). Further, these allegations

present an incorrect statement of the ethics rule on an attorney as witness. An attorney

is not disqualified from serving as advocate in a matter in which another attorney with

whom that attorney is associated will testify as a witness, absent a disqualifying conflict

of interest. *See* Comment 5 to ABA Model Rule 3.7("Because the tribunal is not likely to

be misled when a lawyer acts as advocate in a trial in which another lawyer in the

---

[2]    *Fall River Nursing Home, Inc.*, 802 F. Supp. at 678 (regular correspondence between Massachusetts corporation and Rhode Island-based union on representation issues insufficient to create specific personal jurisdiction in Rhode Island over corporation "where none of the Defendant's activities with respect to the breach of the collective bargaining agreement or its refusal to comply with the arbitral award took place in Rhode Island.").

lawyer's firm will testify as a necessary witness, paragraph (b) permits the lawyer to do so except in situations involving a conflict of interest.").

The only potential conflict of interest for Ms. Creighton presented by the plaintiffs' allegations is, as noted in Comment 6 to the Model Rule, "if there is likely to be substantial conflict between the testimony of the client and that of the lawyer the representation involves a conflict of interest that requires compliance with Rule 1.7."[3/] At most then, their allegation of a disqualifying conflict of interest requires a conclusion that Ms. Creighton chose not to present Mr. Giroux as a witness in the arbitration because his testimony conflicted with that of Mr. Elkins.  Ms. Creighton's decision does not reflect any action to the detriment of Mr. Elkins.  Rather, she made a tactical decision to avoid introduction of testimony adverse to his case.

The plaintiffs' speculative allegations of hostility by the Local's outside attorney against Mr. Elkins are not enough to establish a breach of DFR absent a showing that the handling of the grievance was also materially deficient.  *MacKnight v. Leonard Morse Hospital*, 828 F.2d 48, 51 (1st 1987).  Their allegations present no more than a tactical dispute over whether to present Mr. Giroux as a witness.  The plaintiffs allege that Ms. Creighton "inadequately represented" Mr. Elkins and admit that their DFR allegations question her "tactical decisions."  *Opp.,* p. 17.  But this sort of tactical second-guessing and claim of negligence is not sufficient to establish a breach of the DFR.  *Leonard Morse Hosp.*, 828 F.2d at 51 ("mere error or negligence is not enough"); *Miller v. USPS*, 985 F.2d 9, 11-12 (1st Cir. 1993)("We also allow the union great latitude in

---

[3]     The plaintiffs' other implicit allegation of ill motive against Ms. Creighton—that she purposefully undermined Mr. Elkins' arbitration in retaliation for his filing of bar charges against Mr. Giroux—is so illogical, outlandish, and conspiratorial as to not warrant substantive comment.

determining the merits of an employee's grievance and the level of effort it will expend to pursue it.").

Plaintiffs do not dispute that the Local fully prosecuted the grievance before an arbitrator. They complain of nothing more than how it represented Mr. Elkins and the sufficiency of that representation. Their allegations do not support a finding of either hostility or arbitrariness in the Local's prosecution of Mr. Elkins' grievance. Nor do they show that the outcome of the arbitration would change if the evidence alleged had been introduced. Their claim for breach of DFR should fail.

**III.    The plaintiffs' state tort claims are either preempted because they fall within the duty of fair representation or their allegations regarding Ms. Creighton's conduct go outside the scope of DFR and thus cannot support their claim for breach of the duty of fair representation by Local 264**

The plaintiffs present the same allegations in support of their state tort claims as they allege in support of their claim for the breach of the duty of fair representation. They rely on Ms. Creighton's alleged verbal abuse of Mr. Elkins the night before the arbitration and her conduct during the arbitration. *Opp.*, pp. 18-20. In an effort to avoid preemption of these claims by the DFR, however, they argue that her conduct was "wholly outside the ambit of the federal duty [of fair representation]." *Opp.*, p. 19. This evasion does not help plaintiffs' cause since, if it is true, then Ms. Creighton's actions cannot support a claim for breach of DFR. But plaintiffs' allegations all relate to Ms. Creighton's representation of Mr. Elkins in the arbitration and the DFR preemption doctrine requires that their state tort claims be dismissed.

**IV.    Plaintiffs' allegations of momentary verbal abuse by Ms. Creighton of  Mr. Elkins cannot state a claim for intentional infliction of emotional distress**

The plaintiffs allege no more than momentary "verbal abuse" by Ms. Creighton toward Mr. Elkins. *Opp., p. 19.* They allege this conduct occurred during a

disagreement over tactics for the arbitration hearing.  *Id.*  Nothing in these allegations can support a conclusion that Ms. Creighton engaged in conduct "intended to cause and in fact causing emotional distress."  *Bailey v. Schriberg*, 576 N.E.2d 1377, 1379 (Mass. App. Ct. 1991).  The allegations do not claim that Ms. Creighton engaged in a sustained barrage of abuse toward Mr. Elkins intended to harm him, only that, in anger, she yelled at him for no more than seconds.  No pervasive conduct is alleged.  Such conduct can hardly be considered "of a nature that no reasonable man could be expected to endure it." *Id.*  Rather, it falls under the rubric of "petty oppressions and other trivialities" and cannot support a claim for intentional infliction of emotional distress.  *Gouin*, 249 F. Supp.2d at 73.

WHEREFORE, Local 264 respectfully requests that its motion be granted, the complaint be dismissed in its entirety with prejudice, and it be granted its costs and any other relief that the Court deems proper.

Dated:  December 19, 2005.                    Respectfully submitted,


**/s/John D. Burke**
John D. Burke, BBO#556951
Dumont, Morris and Burke, P.C.
14 Beacon Street, Suite 300
Boston, MA  02108
(617) 227-7272/(617) 227-7025 [fax]


**/s/William R. Wilder**
William R. Wilder
Baptiste & Wilder, P.C.
1150 Connecticut Ave., N.W., Suite 500
Washington, D.C. 20036
(202) 223-0723/(202) 223-9677 [fax]

Counsel for Defendant Local 264

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing was served via the court's ECF system on counsel registered to receive ECF and by mail on counsel not registered with ECF on December 19, 2005.

**/s/William R. Wilder**
William R. Wilder