UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| D. LYLE ELKINS and MARTHA ELKINS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | CIVIL ACTION |
| INTERNATIONAL BROTHERHOOD | ) | NO. 05-11130-NMG |
| OF TEAMSTERS LOCAL 264, | ) | |
| CATHERINE CREIGHTON, and | ) | |
| SHUTTLE AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION ON
## DEFENDANTS' MOTIONS TO DISMISS

August 28, 2006

DEIN, U.S.M.J.

## I.  INTRODUCTION

On or about February 3, 2003, the defendant Shuttle America terminated the employment of the plaintiff D. Lyle Elkins ("Mr. Elkins") as a commercial airline pilot. Mr. Elkins filed a grievance through the collective bargaining agreement between Shuttle America and the defendant International Brotherhood of Teamsters Local 264 ("Local 264" or the "Union").  The defendant Catherine Creighton ("Ms. Creighton"), an attorney, was retained by Local 264 to represent it at the grievance.  Shuttle America prevailed at the grievance and the termination of Mr. Elkins' employment was upheld.

This action was brought by Mr. Elkins and his wife, the plaintiff Martha Elkins ("Mrs. Elkins").  (See Compl. (Docket No. 1) ("Compl.")).  Mr. Elkins' claims against

Local 264 are for breach of the duty of fair representation owed to Mr. Elkins pursuant to the Railway Labor Act, 45 U.S.C. §§ 151(a), 152, 181, 182, and federal common law (Count I), intentional infliction of emotional distress (Count II), and negligent infliction of emotional distress (Count III). His claims against Shuttle America are for breach of contract and wrongful termination (Count IV), and intentional infliction of emotional distress (Count V). Mr. Elkins' claims against Ms. Creighton are for intentional infliction of emotional distress (Count VI), and negligent infliction of emotional distress (Count VII). Finally, Mrs. Elkins has brought claims for loss of consortium against each of the defendants (Counts VIII - X).

Each of the defendants has filed a motion to dismiss the complaint. For the reasons detailed herein, this court finds that there is no personal jurisdiction in Massachusetts over Local 264, although the complaint against the Union otherwise states a claim. Therefore, this court recommends that the action against Local 264 be transferred to either New York or Pennsylvania as the plaintiffs request, so that the claim for breach of duty of fair representation is not deemed untimely. In all other respects the Union's motion to dismiss should be denied.

With respect to Ms. Creighton's motion, this court finds that there is no personal jurisdiction over her in Massachusetts, and that the claims against her are otherwise barred as a matter of law. Therefore, this court recommends that Ms. Creighton's motion to dismiss be allowed.

Finally, this court finds that the plaintiffs have failed to state a claim against Shuttle America and, therefore, recommends that its motion to dismiss be allowed.

## II.  STATEMENT OF FACTS

When ruling on a motion to dismiss, the court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all reasonable inferences.  See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).  Applying this standard to the instant case, the relevant facts are as follows.

### The Parties

Plaintiffs D. Lyle Elkins and Martha Elkins are husband and wife and they resided together in Massachusetts at all times relevant to the complaint.  (Compl. at ¶¶ 4-5).[1] Mr. Elkins is a licensed commercial airline pilot and an attorney who is licensed to practice in Massachusetts.  (Id. at ¶ 9).  He began working for defendant Shuttle America as a commercial airline pilot in the Spring of 1999.  (Id. at ¶ 10).  As a condition of his employment, Mr. Elkins paid service or agency fees to defendant Local 264, a labor union, in consideration for Local 264 serving as his collective bargaining agent and union representative.  (Id. at ¶¶ 6, 12). Under the collective bargaining agreement between Local 264 and Shuttle America, Local 264 is authorized to contest the termination of Shuttle America employees through a grievance process and an arbitration system.  (Id. at

---

[1]  Mr. Elkins has asserted, however, that he and his wife intended to move to Nova Scotia after his wife retires in February, 2005.  (Elkins Aff. at ¶ 2).  Therefore, it is unclear where he and his wife now live.

¶ 26).  It is up to Local 264 to decide whether to take a grievance to arbitration, and, once it does so, the employee does not have the right to take any further action to contest a termination of employment.  (Id.)

### Termination of Mr. Elkins' Employment

In 2001-2002, Mr. Elkins was involved in an employment dispute with Shuttle America in which Shuttle America "wrongfully claimed that Mr. Elkins had resigned." (Id. at ¶ 15).  By the time the dispute proceeded to arbitration, Mr. Elkins had been out of work for approximately one year.  (Id.).  The Union (on behalf of Mr. Elkins) was represented by Attorney Joseph Giroux at the arbitration.  (Id. at ¶ 16).  After a hearing, the arbitrator found in favor of Mr. Elkins and, in December 2002, ordered Shuttle America to reinstate Mr. Elkins and award him back pay and benefits.  (Id. at ¶ 15). However, due to a dispute between Mr. Giroux and Shuttle America's attorney as to how to compute the back pay Mr. Elkins was owed, and because Mr. Elkins had to attend ground school, Mr. Elkins did not immediately return to work.  (Id. at ¶ 16).  Shuttle America informed Mr. Elkins, by letter dated January 22, 2003, that he would have to attend flight training school on February 3, 2003.  (Id at ¶ 18).

The delay in returning to work and receiving the arbitration award, compounded with the flight training requirement, combined to cause Mr. Elkins "anxiety, stress and depression."  (Id. at ¶¶ 17-19).  As a result, he was treated by a psychiatrist, Dr. Stearns, who believed that Mr. Elkins should not attend flight school on February 3, 2003.  (Id. at

¶ 19).  Dr. Stearns wrote a letter to that effect on January 28, 2003, which was sent to

Attorney Giroux.  (<u>Id.</u>).  The letter stated as follows:

> Because of health concerns for my patient, D. Lyle Elkins, I am of
> the medical opinion that he should not attend the Shuttle America
> SAAB training scheduled for February 3, 2003.  Please note that I
> shall be out of my office from January 29 through February 14,
> 2003.

(<u>Id.</u>).

Mr. Giroux, in turn, informed Mr. Fogelman, Shuttle America's attorney, that

Mr. Elkins would not attend flight school for medical reasons, according to his doctor's

orders.  (<u>Id.</u> at ¶ 21).  On February 11, 2003, after Mr. Elkins did not arrive for flight

training on February 3, 2003, Shuttle America sent Mr. Elkins' a letter stating that he was

removed from the payroll.  (<u>Id.</u> at ¶ 22).  Mr. Elkins did not learn that this constituted his

termination until he reviewed his personnel file in April, 2003.  (<u>Id.</u>).

After Mr. Elkins' employment was terminated, Shuttle America sent him a letter in

which the company acknowledged that it "had been informed that [Mr. Elkins] did not

intend on attending the February 3, 2003 training class" and that it had been "further

informed that [Mr. Elkins] made this decision based on medical reasons."  (<u>Id.</u> at ¶ 23).

Nevertheless, the company noted it had "not received any supporting documentation, nor

a request for a medical leave of absence."  (<u>Id.</u>).  Mr. Giroux was the source of Shuttle

America's knowledge.  (<u>Id.</u> at ¶ 24).  Mr. Elkins commenced a grievance pursuant to the

process set forth in the collective bargaining agreement between Shuttle America and

Local 264.  (<u>Id.</u> at ¶ 27).

**<u>Representation of Mr. Elkins During the Grievance Proceedings</u>**

Following Mr. Elkins' removal from the Shuttle America payroll, he "became dissatisfied with the level of representation he was receiving from Local 264 through attorney Giroux." (<u>Id.</u> at ¶¶ 29, 30). Consequently, starting in April, 2003, Mr. Elkins made several requests for Local 264 to provide him with another attorney, but Local 264 did not respond to these requests. (<u>Id.</u> at ¶ 30). In addition, Mr. Elkins filed a complaint against Mr. Giroux with the Attorney Grievance Committee of the Bar of the State of New York. (<u>Id.</u> at ¶ 31). On April 14, 2003, Mr. Elkins asked the Attorney Grievance Committee to postpone its investigation of his complaint, but he renewed his complaint with the Committee on October 5, 2003. (<u>Id.</u> at ¶¶ 31, 33). The Attorney Grievance Committee reviewed Mr. Elkins' complaint and responded in November, 2003, that it was unable to determine whether attorney Giroux had "committed any breach of professional ethics or engaged in any improper conflict of interest." (<u>Id.</u> at ¶ 36). In December, 2003, Mr. Elkins filed suit against Local 264 for breach of its duty of fair representation. (<u>Id.</u> at ¶ 37). After Shuttle America informed Mr. Elkins in January, 2004, that he would be represented by a new union attorney, Mr. Elkins voluntarily dismissed his suit against the Union. (<u>Id.</u> at ¶¶ 37, 38).

On February 11, 2004, Mr. Elkins met with the new attorney, Ms. Creighton, who was a law partner of Mr. Giroux in Buffalo, New York. (<u>Id.</u> at ¶ 39). At this meeting, Mr. Elkins "expressed his concern about being represented by a partner of attorney

Giroux," and strongly disagreed with Ms. Creighton's belief that Mr. Elkins would not be entitled to emotional distress damages in the arbitration of his grievance.  (Id.).

Mr. Elkins and Ms. Creighton met again in person on June 9, 2004, the evening prior to the arbitration hearing, in Pittsburgh, Pennsylvania.  (Id. at ¶¶ 40, 41).  During their conversation at a restaurant, Mr. Elkins informed Ms. Creighton "that his mental state had deteriorated" and that "his emotional state was fragile."  (Id. at ¶ 41).  Further disagreement over the issue of emotional distress damages and the relevance of Mr. Elkins' mental health and emotional distress damages ensued, and Ms. Creighton eventually raised her voice and cursed at Mr. Elkins.  (Id.).  Subsequently, a union official assigned to represent Mr. Elkins who had been seated with Mr. Elkins and Ms. Creighton stated that if the two did not "shake hands," Mr. Elkins would "be in big trouble tomorrow."  (Id.).

That night, Mr. Elkins was upset and anxious and, despite taking medication to calm his distress, he was unable to sleep.  (Id. at ¶ 42).  During the arbitration on June 10, 2004, Ms. Creighton refused to sit next to Mr. Elkins.  (Id. at 43).  In addition, Ms. Creighton failed to submit into evidence a medical report regarding Mr. Elkins' emotional state at the time of the flight training scheduled for February 3, 2003, did not object to some of the evidence that Shuttle America presented, and generally refused to pursue Mr. Elkins' claims for emotional distress damages.  (Id.).  Finally, she had an off-the-record conversation with the arbitrator and opposing counsel, after which she allegedly "forced Mr. Elkins to drop his claim that he could not attend the training for

-7-

medical reasons." (Id.). Mr. Elkins claims that Ms. Creighton reported that the arbitrator had stated that if such a claim were pursued, opposing counsel would be called to testify, which would require Ms. Creighton to call Mr. Giroux, her law partner, as a witness. (Id.). Since, according to Mr. Elkins, Ms. Creighton, wrongfully, did not want to call Mr. Giroux as a witness, she pressured him to drop his claim. (Id.).

Following the arbitration, which was ultimately decided in favor of Shuttle America in December, 2004, Mr. Elkins complained of Ms. Creighton's actions to Local 264 and requested new representation, which was denied. (Id. at ¶¶ 45, 46). Moreover, the events of the arbitration caused Mr. Elkins' mental health to worsen, and in July, 2004, he underwent a 10-day inpatient hospital stay for psychiatric treatment. (Id. at ¶ 47). Since then, Mr. Elkins has received regular psychiatric treatment. (Id.). He has also had to cease practicing law and is unsure whether he will ever be medically approved to work as an airline pilot. (Id.). Mr. Elkins alleges that were it not for Ms. Creighton's improper actions, which were "discriminatory, perfunctory, and in bad faith" as well as being motivated by hostility, he would have prevailed at the arbitration. (Id. at ¶¶ 45, 49). In addition, Mr. Elkins alleges that Local 264 is liable for Ms. Creighton's actions and that it breached the duty of fair representation it owed Mr. Elkins pursuant to the Railway Labor Act and federal common law. (Id. at ¶¶ 48, 51).

## Defendants' Contacts with Massachusetts[2]

---

[2] Local 264 submitted the affidavit of its President, Ronald G. Lucas, in support of its motion to dismiss. (Docket No. 15). Ms. Creighton submitted an affidavit as well. (Docket

Local 264 and Ms. Creighton have moved to dismiss the complaint against them for lack of personal jurisdiction. Shuttle America, a foreign corporation which does business in Bedford, Massachusetts, is not contesting jurisdiction. (Id. at ¶ 8). The facts relevant to the jurisdictional issues are as follows.

### Local 264

Local 264 is a labor union which maintains offices in Cheektowaga and Falconer, New York. (Lucas Aff. (Docket No. 15) at ¶ 1). It does not own any real or personal property in Massachusetts. (Id. at ¶ 4). The jurisdiction of the Local, as defined by the charter issued to it by the International Brotherhood of Teamsters, is limited to Buffalo, New York and Western New York. (Id. at ¶ 2).

Local 264 was also the agent of the International Brotherhood of Teamsters, Airline Division, designated to provide contract administration and day-to-day representation to the pilots of Shuttle America, which was headquartered in Fort Wayne, Indiana. (Id. at ¶¶ 5, 6). As the designated agent for Shuttle America, Local 264 performed functions outside of New York, "such as conducting system board adjustment hearings in Fort Wayne, IN," but not in Massachusetts. (Id. at ¶ 7). According to Local 264, it conducts no business in Massachusetts, "either in person, by mail, or by telephone" and

---

No. 12-2). Mr. Elkins submitted his own affidavit in opposition to the motions to dismiss (Docket No. 18-2), as well as an affidavit of Brian Joseph O'Donnell, a pilot employed by Shuttle America and a member of Local 264. (Docket No. 18-2). These documents all relate to the jurisdictional issues and are properly considered by the court in connection with the motions to dismiss.

"[n]one of the Local's representation of Mr. Elkins, either in the grievance underlying the instant dispute or more generally in administering the contract on behalf of Shuttle America pilots, occurred in the Commonwealth of Massachusetts." (Id. at ¶ 12).

Mr. Elkins was not a member of Local 264, but while employed by Shuttle America and a Massachusetts resident, he paid a "service fee or agency fee" to Local 264, in return for which Local 264 served as his collective bargaining agent and union repre- sentative. ( Compl. at ¶¶ 5, 12). According to Mr. Elkins, he made 10 payments to Local 264 from a Massachusetts bank totalling at least $1,418.50 during the period between the Fall of 2001 and October 2003. (Elkins Aff. (Docket No. 18-2) at ¶¶ 66-67).

Local 264 asserts that none of its members reside in the Commonwealth of Massachusetts. (Lucas Aff. at ¶ 3). However, Mr. Elkins has submitted the affidavit of Brian O'Connell, an airline pilot for Shuttle America, who asserts that he has been a member of the Local since 2001 and has lived in Massachusetts since then. (O'Donnell Aff. (Docket No. 18-2) at ¶ 1). He further contends that he "was based in Hanscom Field in Bedford, Massachusetts from is opening in December 1999 until it closed as a Shuttle America crew base in November 2002,"[3] that at "its peak there were approximately 24 pilots based at Bedford," of which about one third lived in Massachusetts, and that as of the date of the affidavit, November 2005, he believed that there were at least two other union pilots who resided in Massachusetts. (Id.).

---

[3] The closure of Hanscom Field occurred before the events at issue in this litigation.

In addition to the fact that Mr. Elkins mailed checks to Local 264 from Massachusetts, the plaintiffs contend that there is personal jurisdiction over the Union because, after his termination in February 2003, Mr. Elkins called the Local approximately three times and received approximately six calls from the Union concerning its representation of him. (Elkins Aff. ¶ 70). He also sent the Union at least several dozen facsimiles from his home in Massachusetts to the Local's office in New York. (Id. at ¶ 71).

### Attorney Creighton

The plaintiffs' principal claim of jurisdiction over Ms. Creighton is based on her status as an agent of Local 264. Thus, plaintiffs argue, to the extent there is jurisdiction over the Union there is jurisdiction over Ms. Creighton. Moreover, the plaintiffs also argue that there is personal jurisdiction over Ms. Creighton due to her contacts with Mr. Elkins. The relevant facts are as follows.

Ms. Creighton is a resident of New York and is licensed to practice law in New York. (Creighton Aff. (Docket No. 12-2) at ¶¶ 1, 2). She is not licensed to practice law in Massachusetts. (Id. at ¶ 3). Neither Ms. Creighton nor her law practice have any "offices, representatives, realty, personalty, bank accounts, or presence whatsoever" in Massachusetts. (Id.). Ms. Creighton first met with Mr. Elkins in Buffalo, New York on February 11, 2004. (Compl. at ¶ 39). Between their first meeting and the June 10, 2004 arbitration, Ms. Creighton sent one letter to Mr. Elkins notifying him that she would be the attorney representing him on behalf of Local 264, and spoke with Mr. Elkins on the phone on one occasion. (Id. at ¶¶ 39, 40). Ms. Creighton and Mr. Elkins did not meet

-11-

again until the evening prior to the arbitration in Pittsburgh, Pennsylvania. (Id. at ¶ 41).

Ms. Creighton did not enter Massachusetts in connection with her representation of Local

264 or Mr. Elkins' grievance. (Creighton Aff. at ¶ 6). Furthermore, all of her work

related to Mr. Elkins' complaint was completed in New York and Pennsylvania. (Id. at ¶

5).

## III.  DISCUSSION

### A.    The 12(b)(2) Motions to Dismiss for Lack of Personal Jurisdiction

Defendants Local 264 and Catherine Creighton have moved pursuant to Fed. R.

Civ. P. 12(b)(2) to dismiss the complaint for lack of personal jurisdiction. For the

reasons discussed below, this court concludes that there is no jurisdiction over either of

these defendants.

The plaintiffs have requested that if this court is inclined to dismiss the complaint

for lack of jurisdiction, it should transfer the case to either New York (in the district

encompassing Buffalo) or Pennsylvania (in the district encompassing Pittsburgh). See

Pls.' Opp. to Union Motion to Dismiss (Docket No. 18) at 20 n.6. This court recom-

mends that the request to transfer be allowed.

### 1.    Standard of Review

"On a motion to dismiss for want of *in personam* jurisdiction, Fed. R. Civ. P.

12(b)(2), the plaintiff ultimately bears the burden of persuading the court that jurisdiction

exists." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir.

1998), citing cases.  Where, as here, the court elects to dispose of a motion to dismiss for

lack of personal jurisdiction without holding an evidentiary hearing, the court applies a

"prima facie" standard of review pursuant to which the plaintiff must "demonstrate the

existence of every fact required to satisfy both the forum's long-arm statute and the Due

Process Clause of the Constitution."  United Elec. Radio & Mach. Workers of Am. v. 163

Pleasant St. Corp., 987 F.2d 39, 43-44 (1st Cir. 1993) ("Pleasant St. II") (internal

quotation omitted).  Under this standard, the court will look to the facts alleged in the

pleadings and the parties' supplemental filings, including affidavits.  Id.; Sawtelle v.

Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995); Ticketmaster-New York, Inc. v. Alioto, 26

F.3d 201, 203 (1st Cir. 1994).  The court will accept specific facts affirmatively alleged by

the plaintiff as true and construe disputed facts in the light most favorable to the plaintiff.

See Mass. Sch. of Law, 142 F.3d at 34; Sawtelle, 70 F.3d at 1385.  In doing so, however,

the court will not "credit conclusory allegations or draw farfetched inferences."

Ticketmaster-New York, 26 F.3d at 203.

     In order to exercise personal jurisdiction over a defendant, the court must find

sufficient contacts between the defendant and the forum to satisfy both the state's long-

arm statute and the due process clause of the Fourteenth Amendment.  Sawtelle, 70 F.3d

at 1387; Ticketmaster-New York, 26 F.3d at 204.  Massachusetts' long-arm statute, Mass.

Gen. Laws ch. 223A, § 3 (2000), authorizes jurisdiction over the person to the limits

allowed by the federal Constitution.  See Daynard v. Ness, Motley, Loadholt, Richardson

& Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002) ("the Supreme Judicial Court of Massachu-

setts has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'") (quoting 'Automatic' Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass. 441, 443, 280 N.E.2d 423, 424 (1972)).  Consequently, the court "may sidestep the statutory inquiry and proceed directly to the constitutional analysis. . . ."  Id.; see also Sawtelle, 70 F.3d at 1388 ("when a state's long-arm statute is coextensive with the outer limits of due process, the court's attention properly turns to the issue of whether the exercise of personal jurisdiction comports with federal constitutional standards.").  Due process requires the court to determine whether the defendant has maintained "certain minimum contacts" with the forum state such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940)).  Accordingly, "the accepted mode of analysis for questions involving personal jurisdiction concentrates on the quality and quantity of the potential defendant's contacts with the forum."  Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).

The court may exercise two types of jurisdiction — general or specific.  "General jurisdiction 'exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state'."  Mass. Sch. of Law, 142 F.3d at 34 (quoting United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080,

1088 (1ˢᵗ Cir. 1992) ("Pleasant St. I")). "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." Id. In the instant case, the plaintiffs argue that this court may exercise both general and personal jurisdiction over Local 264 and Ms. Creighton.

This court has general jurisdiction over defendants whose "contacts are 'sufficiently continuous and systematic' that the assertion of jurisdiction is 'reasonable and just.'" United States v. Swiss Am. Bank Ltd., 116 F. Supp. 2d 217, 223 (D. Mass. 2000) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). "The standard for evaluating whether contacts satisfy the constitutional general jurisdiction test is considerably more stringent than that applied to specific jurisdiction questions." Noonan v. Winston Co., 135 F.3d 85, 93 (1st Cir. 1998) (internal quotations and citations omitted).

To determine whether there are significant contacts to exercise specific personal jurisdiction over a defendant, the court must use a three-part analysis. See Sawtelle, 70 F.3d at 1388-89. "An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction." Phillips Exeter Acad., 196 F.3d at 288. First, the court must decide whether the claim underlying the litigation relates to or arises out of the defendant's activities within the forum. See id. This "relatedness requirement" "focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." Ticketmaster-New York, 26 F.3d at 206. See also Sawtelle, 70 F.3d at

1389.  It ensures that the defendant will not be subject to specific personal jurisdiction unless the defendant's contacts with the forum state caused the alleged harm.  See Ticketmaster-New York, 26 F.3d at 207.

Second, the court must determine whether the defendant's contacts with the forum "'represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable'."  Sawtelle, 70 F.3d at 1389 (quoting Pleasant St. I, 960 F.2d at 1089).  "[T]he cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability."  Id. at 1391.  Voluntariness is present where a defendant deliberately has engaged in significant activities within the forum, but not where the defendant's contacts with the forum are "random, fortuitous, or attenuated" or result solely from "the unilateral activity of another party or a third person."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed.2d 528 (1985) (internal quotations and citations omitted).  Foreseeability exists where the defendant's conduct and connection with the forum state is such that the defendant should reasonably anticipate being haled into court there.  See id. at 474, 105 S. Ct. at 2183; Sawtelle, 70 F.3d at 1393.

Finally, if the first two parts of the test for specific jurisdiction have been fulfilled, the court must decide whether the exercise of personal jurisdiction is reasonable in light of the "Gestalt factors".  See Sawtelle, 70 F.3d at 1389; Pleasant St. II, 987 F.2d at 46.  "These Gestalt factors include: (1) the defendant's burden of appearing, (2) the forum

-16-

state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies."  Pleasant St. II, 987 F.2d at 46.  Even when the lawsuit arises out of the defendant's purposefully generated contacts with the forum, therefore, the court may decline to exercise personal jurisdiction if doing so would be unreasonable and fundamentally unfair.  See Burger King, 471 U.S. at 476-478, 105 S. Ct. at 2184-85; Ticketmaster-New York, 26 F.3d at 209-10.

"[A]n especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness."  Ticketmaster-New York, 26 F.3d at 210.  On the other hand, "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction."  Id.

As detailed below, the plaintiffs have not established that this court may assert general jurisdiction over Local 264 or Ms. Creighton, as they have not shown that either defendant has engaged in continuous and systematic activity, unrelated to the instant case, within Massachusetts.  In addition, plaintiffs have not established that this court may exercise specific jurisdiction over Local 264 or Ms. Creighton since, with respect to both defendants, the plaintiffs have failed to establish either relatedness or purposeful availment.

### 2.    Analysis - Local 264's Motion

-17-

The plaintiffs contend that this court may assert either general or specific jurisdiction over Local 264.  This court does not agree.

### a.     General Jurisdiction

The record demonstrates that Local 264's contacts with the forum state are too attenuated to constitute the type of "continuous and systematic activity" that is necessary to support this court's general jurisdiction over the defendant.  Mass. Sch. of Law, 142 F.3d at 34.  As previously noted, the standard for evaluating whether a court has general jurisdiction over a defendant is a "stringent" one.  Noonan, 135 F.3d at 93.  In the instant case, Local 264's contacts with the Commonwealth have been "limited and intermittent" and the plaintiffs have "not made the prima facie showing needed for the exercise of general jurisdiction."  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 620 (1st Cir. 2001) (describing cases in which contacts, although significant, have been found insufficient to establish general jurisdiction).  The mere fact that some of Local 264's members may have resided in Massachusetts is insufficient to create general jurisdiction especially where, as here, Local 264 did not take any steps in Massachusetts to solicit members.  See N.E. Health Care Employees Union, Dist. 1199 v. Fall River Nursing Home, Inc., 802 F. Supp. 674, 679 (D.R.I. 1992) (no general jurisdiction over employer in Rhode Island even though defendant Massachusetts company's employees were represented by Rhode Island-based union).

Local 264's contacts with the Commonwealth of Massachusetts are much less significant than the contacts in other cases where no general jurisdiction has been found.

For example, in <u>Noonan</u>, 135 F.3d at 92-94, while a defendant company "solicited" sufficient business in Massachusetts to satisfy the state's long-arm statute, Mass. Gen. Laws ch. 223A, § 3(d), its contacts were found insufficient to satisfy the constitutional general jurisdiction test where the defendant solicited business from one company in Massachusetts, and its employees visited a customer in Massachusetts on two occasions. In <u>Glater v. Eli Lilly & Co.</u>, 744 F.2d 213, 214-15, 217 (1st Cir. 1984), no general jurisdiction was found over a defendant that advertised in journals which circulated in the forum, and employed eight sales representatives, including several residents, to solicit orders within the forum.  <u>See</u> <u>also</u> <u>Bennett v. Jack Dennis Whitewater Trips</u>, 925 F. Supp. 889, 894-95 (D. Mass. 1996) (court found no general jurisdiction over tour operator whose injured customer resided in Massachusetts, relying on <u>Tatro v. Manor Care, Inc.</u>, 416 Mass. 763, 772 & n.6, 625 N.E.2d 549 (1994), where there was no general jurisdiction although defendant California hotel had directly solicited and obtained business from numerous Massachusetts individuals and businesses, and <u>Nowak v. Tak How Investment, Ltd.</u>, 899 F. Supp. 25, 32 & n.7 (D. Mass. 1995), where no general jurisdiction was found despite the fact that Hong Kong hotel directly solicited a Massachusetts company's business travelers and obtained customers from Massachu-setts).

Thus, even reading the record in the light most favorable to the plaintiff, the record is clear that Local 264 has no significant presence in Massachusetts and has not "engaged in continuous and systematic activity, unrelated to the suit, in the forum state."

Massachusetts Sch. of Law, 142 F.3d at 34.  Because there is no general jurisdiction over Local 264, the inquiry must turn to whether this court may assert specific jurisdiction over the Union.

### b.    Specific Jurisdiction

### Relatedness

To determine whether there are sufficient contacts to exercise specific jurisdiction over Local 264, this court must first consider the relatedness of plaintiffs' claims and Local 264's activities in Massachusetts.  Even in light of the fact that the relatedness prong of the specific jurisdiction analysis is a relatively "flexible, relaxed standard," plaintiffs have failed to satisfy this requirement.  Sawtelle, 70 F.3d at 1389 (quoting Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994)).

Plaintiffs' claims arise from Local 264's representation of Mr. Elkins at an arbitration hearing on a grievance he filed against Shuttle America.  It is undisputed that the preparation for the arbitration, as well as the arbitration itself, took place in New York and Pennsylvania, respectively.  Indeed, none of the actions by Local 264 of which plaintiffs complain took place in Massachusetts.  Nevertheless, plaintiffs argue that the relatedness element is satisfied because their claims arise from Local 264's representation of Mr. Elkins, and it is the representation of Massachusetts residents, including Mr. Elkins, which constitutes Local 264's contact with Massachusetts.  This argument is unavailing, however, since the specific jurisdiction analysis "focuses on the activities of the *defendant* in the forum, not the residence or location of the plaintiff."  New England

Health Care Employees Union, 802 F. Supp. at 678 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 1872 n.8, 80 L. Ed. 2d 404 (1984)). "Merely contracting with a party who resides in the desired forum is insufficient to subject a non-resident to the forum's jurisdiction." Id. and cases cited. Moreover, "[t]he relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state." Sawtelle, 70 F.3d at 1389.

Plaintiffs further argue that specific jurisdiction over Local 264 is warranted because Local 264 caused harm in Massachusetts through its extra-forum activities. Case law in this jurisdiction is clear, however, that the fact that harm was suffered in Massachusetts as a result of actions which took place outside of Massachusetts is insufficient to create specific personal jurisdiction. See Mass. Sch. of Law, 142 F.3d at 36 ("We have wrestled before with this issue of whether the in-forum effects of extra-forum activities suffice to constitute minimum contacts and have found in the negative."). See also Swiss Am. Bank, Ltd., 274 F.3d at 623-25 (confirming that the fact that harm was suffered in Massachusetts as a result of out of state conduct is insufficient to satisfy "relatedness" requirement).

Finally, plaintiffs contend that it is sufficient for specific jurisdiction that Local 264 communicated with Mr. Elkins "by phone and mail on a number of occasions." Pls.' Opp. (Docket No. 18) at 12. It is true that "[t]he transmission of information into [the

forum state] by way of telephone or mail is unquestionably a contact" for purposes of a jurisdictional inquiry. Sawtelle, 70 F.3d at 1389-1390. However, in the instant case, these contacts were ministerial in nature and there was no causal connection between the communications and the plaintiffs' claims. The record is clear that the aspects of the representation which allegedly caused Mr. Elkins harm related to his representation by Ms. Creighton and the actions that she took. See, e.g., Compl. ¶ 44 (listing wrongful conduct). None of these events took place in Massachusetts. Therefore, the plaintiffs cannot satisfy the relatedness requirement and this court lacks specific jurisdiction over Local 264.

## **Purposeful Availment**

The plaintiffs' claim also must fail because they cannot satisfy the second prong of the jurisdictional analysis. The court must consider, in analyzing this element, whether Local 264's contacts with Massachusetts "represent a purposeful availment of the privilege of conducting activities in [Massachusetts], thereby invoking the benefits and protections of [Massachusetts'] laws and making [the Union's] involuntary presence before the state's courts foreseeable." Sawtelle, 70 F.3d at 1389 (quoting Pleasant St. I, 960 F.2d at 1089). As noted above, the "cornerstones" of the concept of purposeful availment are the voluntariness of a defendant's activities in the forum and the foresee-ability of being haled into court there. See Sawtelle, 70 F.3d at 1391; Burger King Corp., 471 U.S. at 475, 105 S. Ct. at 2183. Neither of these elements exists in the instant case.

Plaintiffs contend that because Local 264 was party to a collective bargaining agreement with Shuttle America, which did business in Massachusetts and employed Massachusetts residents, the voluntariness element is satisfied.[4]  In addition, plaintiffs allege that Local 264 had members and agency fee payers in Massachusetts, and accepted payments from them in return for union representation.  Without question, these facts demonstrate that Local 264 maintained a relationship with Massachusetts residents, albeit only a minimal number of them.  However, Local 264 had contact with Mr. Elkins (and perhaps other Shuttle America employees) in Massachusetts only because that was "the state where [they] happened to live."  Sawtelle, 70 F.3d at 1391.  "[W]ithout evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship - say, by solicitation - the mere fact that the defendant willingly entered into a tendered relationship does not carry the day."  Phillips Exeter Acad., 196 F.3d at 292 (purposeful availment not satisfied where "defendant agreed to act as the trustee of a trust that benefitted a resident of the forum state") (internal citation omitted).  See also Sawtelle, 70 F.3d at 1392-1394 (no purposeful availment where defendant attorney agreed to represent clients residing in forum state in matters pending in other states).  Thus, plaintiffs have failed to show that Local 264's activities satisfy the voluntariness component of purposeful availment.

---

[4]  The record does not indicate where Shuttle America is incorporated.  However, Local 264 states that Shuttle America is headquartered in Indiana.  (Lucas Aff. at ¶ 6).

-23-

Plaintiffs' showing with respect to the foreseeability component of purposeful availment is similarly inadequate. This component requires the court to investigate whether the non-resident defendant's activities in the forum state made being haled into court there foreseeable. See Sawtelle, 70 F.3d at 89. Along those lines, plaintiffs argue that because Local 264 received income from Massachusetts residents and agreed to represent those individuals, it was foreseeable that it would be subject to suit in Massachusetts. However, given that Local 264 performed none of its representational activities on behalf of Shuttle America employees in Massachusetts, this argument is unpersuasive. Local 264's only relevant contacts with Massachusetts were its communications by mail and telephone with Mr. Elkins, and there is no indication that, in undertaking that activity, Local 264 invoked the benefits and protections of the laws of Massachusetts. Thus, Local 264's activities in Massachusetts fall short of establishing that it could have reasonably foreseen that it would be susceptible to suit in Massachusetts. Under such circumstances, there was no purposeful availment. See Phillips Exeter Acad., 196 F.3d at 292.

### Gestalt Factors

As plaintiffs have not satisfied the first two elements of the specific jurisdiction test, no further analysis is necessary to demonstrate that their argument for specific jurisdiction must fail. See Sawtelle, 70 F.3d at 1394 ("the gestalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled") (quoting Pleasant St. I, 960 F.2d at 1091 n. 11). If, however, the gestalt factors are

reviewed, they do not argue strongly either for or against the exercise of personal jurisdiction.

With respect to the first Gestalt factor – the burden on the defendant in appearing – while it would undoubtedly be inconvenient for Local 264, it certainly would not be impossible. Moreover "this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Ticketmaster-New York, 26 F.3d at 210 (quoting Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994)). No such showing has been made in the instant case.

The second Gestalt factor – the forum state's interest in adjudicating the dispute – might warrant having the case heard in Massachusetts, since the Commonwealth, like all other states, has a "generalized concern for the rights of its own domiciliaries." Donatelli v. Nat'l Hockey League, 893 F.2d 459, 472 (1st Cir. 1990). However, in the instant case the plaintiffs have asserted that they intend to make Port Maitland, Nova Scotia, their permanent residence. (Elkins Aff. at ¶ 2.) Consequently, it is unclear whether they still reside in Massachusetts, and whether Massachusetts has any relationship to the instant dispute.

The third Gestalt factor – the plaintiff's interest in obtaining convenient and effective relief – weighs in favor of maintaining the litigation in the plaintiffs' home state, where some of their witnesses and other relevant evidence are presumably located. Indeed, "a plaintiff's choice of forum must be accorded a degree of deference with

respect to the issue of its own convenience." <u>Sawtelle</u>, 70 F.3d at 1395, and cases cited. Again, however, it is unclear whether Massachusetts remains the plaintiffs' home state.

The fourth Gestalt factor is the judicial system's interest in resolving this matter. This factor is generally considered "a wash" where, as here, even if the case is dismissed in Massachusetts "it is unlikely that the parties will be able to resolve the dispute without judicial intervention in some forum." <u>Hasbro, Inc. v. Clue Computing, Inc.</u>, 994 F. Supp. 34, 46 (D. Mass. 1997). Under such circumstances, "[t]he most efficient path for the judicial system . . . is to move forward with the lawsuit in the present forum." <u>Id.</u> The final Gestalt factor is the common interests of all sovereigns in promoting substantive social policies. In the instant case, this factor does not weigh in favor of any one forum over another.

In sum, while it may be somewhat inconvenient for Local 264 to litigate in Massachusetts, that fact is not conclusive, nor is the inconvenience overwhelming. The other Gestalt factors are basically neutral and do not overcome the fact that the plaintiffs have not satisfied the other elements necessary to invoke this court's jurisdiction.

### 3.    <u>Analysis - Catherine Creighton's Motion</u>

Plaintiffs argue that this court has jurisdiction over Ms. Creighton to the same extent that it has jurisdiction over Local 264, as Ms. Creighton was acting as the union's agent during her representation of Mr. Elkins. Since, however, this court concludes that there is no personal jurisdiction over the Union, this argument is unavailing. The

plaintiffs also argue that this court may assert jurisdiction over Ms. Creighton in her individual capacity.  This argument, too, must fail.

### a.    General Jurisdiction

Just as Local 264's contacts with Massachusetts are inadequate to warrant this court's assertion of general jurisdiction over the Union, Ms. Creighton's contacts with the forum state are inadequate.  In fact, Ms. Creighton's contacts with Massachusetts are even more attenuated than those of Local 264.  It is undisputed that Ms. Creighton has no assets, offices, or professional licenses in Massachusetts.  In addition, Ms. Creighton never entered Massachusetts to conduct business related to her representation of Local 264 or Mr. Elkins' grievance.  As was the case with Local 264, Ms. Creighton's only contacts with Massachusetts which are relevant to a jurisdictional inquiry are her very limited communications by mail and telephone with Mr. Elkins.  Thus, plaintiffs have failed to show that Ms. Creighton engaged in "continuous and systematic activity, unrelated to the suit, in the forum state" and this court may not exercise general jurisdiction over her.  Mass. Sch. of Law, 142 F.3d at 34.

### b.    Specific Jurisdiction

### Relatedness

In the instant case, plaintiffs have alleged claims against Ms. Creighton for the torts of intentional and negligent infliction of emotional distress (Counts VI and VII) and lack of consortium (Count X).  To determine whether specific jurisdiction may be

asserted over a defendant in a tort case such as this, the court "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." Phillips Exeter Acad., 196 F.3d at 289. For the reasons detailed below, the court finds that the relatedness test is not satisfied in the instant case.

The plaintiffs' claims against Ms. Creighton arise from her conduct prior to and during the arbitration hearing on Mr. Elkins' grievance against Shuttle America. It is undisputed that all of that activity took place in New York or Pennsylvania. Neverthe-less, the plaintiffs argue, as they did with respect to Local 264, that jurisdiction over Ms. Creighton is proper because she represented a Massachusetts resident to whom her client, Local 264, had an obligation, caused tortious injury in Massachusetts by her extra-forum activities, and directed communications to Mr. Elkins in Massachusetts. For the same reasons that these arguments failed to establish personal jurisdiction with respect to Local 264, they fail to confer jurisdiction over Ms. Creighton.

As detailed more fully above, for the relatedness requirements to be satisfied, "the action must directly arise out of the specific contacts between the defendant and the forum state." See Sawtelle, 70 F.3d at 1389. See also New England Health Care Employees Union, 802 F. Supp. 674 at 678 ("the specific in personam jurisdiction analysis focuses on the activities of the defendant in the forum"). Any contacts with Mr. Elkins in Massachusetts were ministerial. Ms. Creighton's conduct which allegedly caused Mr. Elkins harm took place out of state. Therefore, the plaintiff cannot establish the relatedness requirement for jurisdiction.

-28-

## Purposeful Availment

The plaintiffs also cannot establish that Ms. Creighton purposefully availed herself of the privilege of conducting activities in Massachusetts. After consideration of the two "cornerstones" of purposeful availment, voluntariness and foreseeability, this court again concludes that this prong of the jurisdictional analysis is not satisfied in the instant case.

As in the case of Local 264, any contact that Ms. Creighton had with Massachusetts was because of the happenstance that Mr. Elkins lived in the Commonwealth at the time. She did nothing to solicit business in Massachusetts, and the plaintiffs have failed to establish that Ms. Creighton's activities satisfy the voluntariness component of purposeful availment. Moreover, there is no indication that Ms. Creighton benefitted from the protections of Massachusetts law in directing communications to Mr. Elkins, and the scarcity of Ms. Creighton's contacts with Massachusetts suggests that Ms. Creighton "could not reasonably have foreseen [her] susceptibility to suit in a [Massachusetts] court." Philips Exeter Acad., 196 F.3d at 292. Therefore, the element of purposeful availment is not satisfied.

## Gestalt Factors

Because plaintiffs have not met the first two elements of the specific jurisdiction inquiry, an analysis of the reasonableness of exercising personal jurisdiction over Creighton is unnecessary. Sawtelle, 70 F.3d at 1394. Even if each of the Gestalt factors is considered, however, it would not be appropriate for this court to exercise jurisdiction over Ms. Creighton. It would be inconvenient for Ms. Creighton to litigate in Massachu-

setts, although it does not appear that the burden on her would be overwhelming or unique. It remains unclear whether the plaintiffs continue to reside in Massachusetts and, thus, whether the Commonwealth has an interest in adjudicating the dispute or whether it would be more convenient for the plaintiffs to litigate here. Like the case of Local 264, the fourth Gestalt factor, the judicial system's interest in resolving this matter, is "a wash" since the dispute would undoubtedly be litigated somewhere. All in all, there is not an especially strong showing of reasonableness sufficient to overcome even a borderline showing on the first two elements of the specific jurisdiction inquiry. Ticketmaster-New York, 26 F.3d at 210 ("the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction"). Therefore, this court lacks jurisdiction over Ms. Creighton.

### B.    The Plaintiffs' Request to Transfer

The plaintiffs have requested that, if this court lacks personal jurisdiction over the defendants, the action be transferred to either New York or Pennsylvania where there is jurisdiction. See Pls.' Opp. (Docket No. 18) at 20 n.6. Because the claim for breach of the duty of fair representation is governed by a six month statute of limitations, Dement v. Richmond, Fredericksburg & Potomac R.R. Co., 845 F.2d 451, 457 n.12 (4th Cir. 1988), and the claim may be lost if the case is dismissed for lack of jurisdiction, this court recommends that the plaintiffs' request to transfer be allowed. However, since none of

the defendants have addressed this issue, which was raised by the plaintiffs in a footnote, further briefing may be appropriate.

28 U.S.C. § 1406(a) provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, <u>or if it be in the interest of justice</u>, transfer such case to any district or division in which it could have been brought.

(Emphasis added). "The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." <u>Goldlawr, Inc. v. Heiman</u>, 369 U.S. 463, 466, 82 S. Ct. 913, 916, 8 L. Ed. 2d 39 (1962). The general purpose of § 1406(a) is to remove "whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on the merits." <u>Id.</u> at 466-67, 82 S. Ct. at 916. Courts have found that transfer is particularly appropriate under § 1406(a) where, absent a transfer, "the plaintiff faced a loss of his cause of action due to the operation of the applicable statute of limitations." <u>Mulcahy v. Guertler</u>, 416 F. Supp. 1083, 1086 (D. Mass. 1976), and cases cited. That is the situation here. Since, as detailed below, this court concludes that the plaintiffs have stated a cause of action for breach of the duty of fair representation, and there is a six month statute of limitations for bringing such a claim, the interest of justice compels the conclusion that this action be transferred.

**C.    Local 264's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted**

-31-

1.    **Standard of Review**

Mr. Elkins has claimed that Local 264 breached its duty of fair representation (Count I) and is liable for intentional infliction of emotional distress (Count II) and negligent infliction of emotional distress (Count III). Local 264 has moved to dismiss these claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. If the court does not either dismiss or transfer this litigation, and addresses the merits, this court recommends that the Union's motion to dismiss for failure to state a claim be denied.

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings. Thus, when confronted with a motion to dismiss the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. Dartmouth Review, 889 F.2d at 16. "Dismissal under Fed. R. Civ. P. 12(b)(6) is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery." Cooperman, 171 F.3d at 46; Conley v. Gibson, 355 U.S. 41, 45-48, 78 S. Ct. 99, 101-103, 2 L. Ed. 2d 80 (1957).

Under the liberal notice pleading requirement of Fed. R. Civ. P. 8(a), a plaintiff is required to submit "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Thus, "[p]laintiffs only are obligated to set forth in their complaint factual allegations either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." Raytheon Co. v. Cont'l Cas. Co., 123 F. Supp. 2d 22, 26-27 (D. Mass. 2000) (quoting Gooley v. Mobil

Oil Corp., 851 F. 2d 513, 515 (1st Cir. 1988)).  "The Rules 'do not require a claimant to set out in detail the facts upon which he bases his claims.'" Id. (quoting Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)).

In connection with a claim of breach of duty of fair representation, some courts have emphasized that the plaintiff may not rely on bald conclusions and must plead specific facts to show the union's lack of good faith and survive a motion to dismiss. See, e.g., Lusk v. E. Prod. Corp., 427 F.2d 705, 708 (4th Cir. 1970); Williams v. Gen. Foods Corp., 492 F.2d 399, 405 (7th Cir. 1974).  Other courts, however, have rejected any contention that these claims necessitate "any special factual pleading requirements above the usual requirement that the defendant be given fair notice of the plaintiff's claim for relief."  Stefanich v. Am. Motors Corp., 70 F.R.D. 62, 64 (E.D. Wisc. 1975).  While the First Circuit has not addressed the standard in connection with the duty of fair repre- sentation, it is well-established in this jurisdiction that "[t]he pleading requirements, though 'minimal' are not 'non-existent.'  Modern notions of 'notice pleading' notwithstanding, a plaintiff is nonetheless required to set forth factual allegations, either direct or inferential, *respecting each material element necessary to sustain recovery under some actionable legal theory*."  Rumford Pharmacy, Inc. v. City of E. Providence, 970 F.2d 996, 998 (1st Cir. 1992) (internal citations omitted; emphasis in original).

### 2.     Breach of the Duty of Fair Representation

The parties are in agreement as to the standard that applies to a claim for breach of the union's duty of fair representation. The Supreme Court has held that "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190, 87 S. Ct. 903, 916, 17 L. Ed. 2d 842 (1967). See also Plumley v. Southern Container, Inc., 303 F.3d 364, 374 (1st Cir. 2002). Thus, a plaintiff may succeed on a claim for breach of a union's statutory duty of fair representation by establishing that he or she "had a meritorious claim that the Union handled in a perfunctory manner, or that the Union's conduct toward him was otherwise arbitrary, discriminatory or in bad faith." Plumley, 303 F.3d at 375. A "union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness as to be irrational.'" Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 68, 111 S. Ct. 1127, 1130, 113 L. Ed. 2d 51 (1991) (internal citations omitted). Moreover, unions are generally "accorded considerable discretion in dealing with grievance matters[.]" Ayala v. Union de Tronquistas de Puerto Rico, 74 F.3d 344, 346 (1st Cir. 1996). See also Air Line Pilots Ass'n, Int'l, 499 U.S. at 79, 111 S. Ct. at 1136 (a union's rational decision which turns out in retrospect to have been a "bad" decision, does not constitute a breach of the duty of fair representation); MacKnight v. Leonard Morse Hosp., 828 F.2d 48, 51 (1st Cir. 1987) (a union's mere negligence or error during the arbitral process is not enough to establish a breach of the duty of fair representation); Williams v. Sea-Land

-34-

Corp., 844 F.2d 17, 21 (1st Cir. 1988) (plaintiff's disappointment with union's judgment that his termination was "for cause" is not enough, by itself, to establish a breach of the duty of fair representation). Even a union's hostility or animosity toward an employee who has filed a grievance will not suffice to establish a breach of the union's duty of fair representation, unless it can also be shown that the union's handling of the grievance was "materially deficient." Early v. Eastern Transfer, 699 F.2d 552, 556 (1st Cir. 1983).

Despite this high standard, this court recommends that the motion to dismiss be denied. In the instant case, the plaintiffs have pleaded sufficient facts to state a claim for breach of the duty of fair representation so that they should be given the opportunity to more fully develop the record.[5] For example, but without limitation, the plaintiffs have raised a question as to whether Ms. Creighton was appropriately appointed as counsel given the fact that Mr. Elkins had filed disciplinary claims against her law partner. In particular, the plaintiffs have claimed that Ms. Creighton acted with actual animosity toward Mr. Elkins. It is not illogical to assume that the filing of complaints against her partner affected Ms. Creighton's view of Mr. Elkins. The plaintiffs have further alleged that this hostility materially affected the representation provided. Thus, according to Mr. Elkins, Ms. Creighton refused to sit next to him and displayed "open hostility" toward him, which Mr. Elkins asserts "detracted from [his] credibility and the merit of his claims." (Compl. at ¶ 44(b), (d) & (m)). Similarly, in addition to claiming that

---

[5] Claims such as the instant one are frequently reviewed by the court at the summary judgment stage. See, e.g., Plumley, 303 F.3d at 374-75; Ayala, 74 F.3d at 346.

Ms. Creighton's representation was "perfunctory" and "inadequate," plaintiffs have

alleged that Ms. Creighton forced Mr. Elkins to drop the meritorious claim that he missed

flight training for medical reasons, and failed to object to improper evidence or testimony

presented by Shuttle America.  (Id. at ¶¶ 43-45).  The allegations that Ms. Creighton

acted with improper motives and affirmatively failed to object to evidence or to introduce

evidence, among other things, are sufficient to state a claim that the Union's conduct was

"arbitrary, discriminatory, or in bad faith."[6]  Therefore, this court recommends that the

defendant's motion to dismiss for failure to assert a claim of breach of the duty of fair

representation be denied.

### 3.    Preemption of the Tort Claims

Local 264 has moved to dismiss the tort claims of wrongful infliction of emotional

distress asserted against it on the grounds that they are preempted by the duty of fair

representation.  Thus, the Union argues, because "[n]one of the allegations of the

complaint go beyond the scope of the grievance process or the union's representation of

Mr. Elkins," they are preempted.  See Local 264 Mem. (Docket No. 14) at 16.  While this

court recognizes that the plaintiffs have an uphill battle in this case to avoid preemption,

---

[6]  Mr. Elkins also has alleged that Ms. Creighton took certain actions for the sole purpose
of avoiding having to call Mr. Giroux as a witness.  This court agrees with the defendants that,
based on the present record, there does not appear to be a need for Mr. Giroux to have been
called as a witness, since there could have been a stipulation as to the relevant events and, if this
was the sole basis for the plaintiffs' claim, this court would be more inclined to conclude that the
plaintiffs failed to state a claim.  However, this court finds, as detailed above, that the plaintiffs
have alleged additional facts that are sufficient to withstand the motion to dismiss.

this court recommends that they be allowed to more fully develop the record, and that the issue be reconsidered at the summary judgment stage if appropriate. See Goulet v. Carpenters Dist. Council of Boston & Vicinity, 884 F. Supp. 17, 19 n.1 (D. Mass. 1994) (preemption claim denied at motion to dismiss stage but reconsidered at the close of discovery).

It is by now well-established that "state law is preempted whenever a plaintiff's claim invokes rights derived from a union's duty of fair representation." BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., 132 F.3d 824, 830 (1st Cir. 1997). "Thus, if the state claim creates no new rights for an employee and imposes no duty on a union not already present under the federal duty of fair representation, the state claim is preempted." Bergeron v. Henderson, 52 F. Supp. 2d 149, 153 (D. Me. 1999). Conversely, "[s]tate-imposed duties of a union are . . . not preempted by the federal duty of fair representation if they arise wholly outside the ambit of those allegations circumscribed by the federal duty." Id.

Whether the claims for intentional and/or negligent infliction of emotional distress are preempted will depend upon the factual bases for the claims. In Farmer v. United Bhd. of Carpenters & Joiners of Am., 430 U.S. 290, 97 S. Ct. 1056, 51 L. Ed. 2d 338 (1977), the Supreme Court held that a claim of intentional infliction of emotional distress which was based on "outrageous" conduct was not preempted. The Court held that since "there is no federal protection for conduct on the part of union officers which is so outrageous that 'no reasonable man in a civilized society should be expected to endure it'

. . . permitting the exercise of state jurisdiction over such complaints does not result in state regulation of federally protected conduct." Id. at 302, 97 S. Ct. at 1064. With these principles in mind, and based on the specific facts asserted, some state tort claims have been found to be preempted, while others have not. See, e.g., Condon v. Local 2944, United Steelworkers of Am., AFL-CIO, 683 F.2d 590, 595 (1st Cir. 1982) (recognizing that there is no preemption of state law claims "where the union has engaged in affirmative improper conduct independent of the collective bargaining agreement such as a union's infliction of severe emotional distress on a member by its intentional and outrageous conduct); Wolfson v. Am. Airlines, Inc., 170 F. Supp. 2d 87, 91-92 (D. Mass. 2001) (concluding that claim of intentional interference with contractual relations was not preempted, and recognizing that claims of intentional infliction of emotional distress are also not generally preempted); Bergeron, 52 F. Supp. 2d at 154 (citing cases where claims for intentional infliction of emotional distress have been found to be preempted). Thus, even in courts which read the Supreme Court's decision in Farmer narrowly, a claim of intentional infliction of emotional distress would not be preempted if the wrongful conduct was undertaken in a "particularly abusive manner." See Volentine v. Bechtel, Inc., 27 F. Supp. 2d 728, 738 (E.D. Tex. 1998).

Since this court cannot conclude that the complaint "presents no set of facts justifying recovery," this court recommends that the motion to dismiss the tort claims on the grounds of preemption be denied at this stage.

**4.    Sufficiency of Allegations of Intentional Infliction**

**of Emotional Distress**

Finally, Local 264 contends that the complaint fails to state a claim of intentional infliction of emotional distress because the conduct, as alleged, is not sufficiently egregious to establish such a claim. Again, however, this court finds that the allegations are sufficient to survive a motion to dismiss, and the issue should be reexamined at the summary judgment stage if appropriate.

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must establish "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community;' (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable man could be expected to endure it.'" Agis v. Howard Johnson Co., 371 Mass. 140, 144-45, 355 N.E.2d 315, 318-19 (1976). Moreover, "the actor's conduct must be more than mere insults, indignities, threats, annoyances, petty oppressions or other trivialities." Gouin v. Gouin, 249 F. Supp. 2d 62, 73 (D. Mass. 2003) (internal quotation omitted). "[T]he actor's extreme and outrageous conduct may be found in the totality of the circumstances, and does not have to be alleged in a single incident." Id. In the instant case, the allegations are sufficient to support a claim against Local 264 for intentional infliction of emotional distress.

The plaintiffs have alleged that Ms. Creighton was informed of the fact that Mr. Elkins' mental state had deteriorated and that his emotional state was fragile.  <u>See</u> Compl. at ¶ 41.  Nevertheless, "Ms. Creighton proceeded to verbally abuse Mr. Elkins in public, cast serious doubt upon her ability and desire to represent Mr. Elkins and placed Mr. Elkins in dire fear that his interests would not be represented in a case which was crucial to him.  As a result of this conduct, Mr. Elkins' mental condition deteriorated both immediately before the hearing and in the weeks and months after it."  Pls.' Opp. (Docket No. 18) at 19.  Such conduct must be viewed at this stage against the backdrop of Ms. Creighton's affirmative dislike of Mr. Elkins due to his hostile relationship with Mr. Giroux.

Plaintiffs also have alleged that Ms. Creighton's conduct was "extreme and out-rageous, beyond all possible bounds of decency," and "utterly intolerable in a civilized community," that Ms. Creighton's actions caused Mr. Elkins' emotional distress, and that Mr. Elkins' emotional distress was severe, requiring him to undergo inpatient psychiatric treatment.  (Compl. at ¶¶ 47, 56).  In order to withstand a motion to dismiss, a plaintiff must only have set forth in his or her complaint "factual allegations either direct or inferential regarding each material element necessary to sustain recovery under some actionable legal theory."  <u>Raytheon Co.</u>, 123 F. Supp. 2d at 27 (internal quotation omitted).  Because "[a]ll of the necessary elements of the tort of intentional infliction of emotional distress are present," Local 264's motion to dismiss for failure to state a claim should be denied.  <u>See</u> <u>Gouin</u>, 249 F. Supp. 2d at 73-74.

### D.    Ms. Creighton's Motion to Dismiss

Plaintiffs have asserted claims for intentional infliction of emotional distress (Count VI) and for negligent infliction of emotional distress (Count VII) against Ms. Creighton.  For the reasons detailed above, this court concludes that there is no pesonal jurisdiction over Ms. Creighton and that, therefore, her motion to dismiss should be allowed.  If the merits of the claims are reached, this court also recommends that the suit against Ms. Creighton be dismissed because she is immune from suit since she was acting in her capacity as a union representative.  If Mr. Elkins' claims against Ms. Creighton are dismissed, Mrs. Elkins' loss of consortium claim (Count X) should be dismissed as well.  See Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 74 n.2 (1st Cir. 2001); Breton v. Travelers Ins. Co., 147 F.3d 58, 59 n.1 (1st Cir. 1998).

Since many of the arguments raised by Ms. Creighton are repetitive of those raised by the Union, they will be addressed only briefly.

### 1.    Preemption of State Law Claims

Ms. Creighton has moved to dismiss the claims against her on the grounds that the state law claims are preempted by federal law.  In addition to the arguments raised by the Union, i.e., that the state law claims are preempted by the duty of fair representation, she also contends that they are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, because her obligations are defined by the collective bargaining agreement.  It is clear as a matter of law that where the resolution of the state law claim "depends upon the meaning of a collective bargaining agreement," the state law

claims are preempted. <u>Lingle v. Norge Div. of Magic Chef, Inc.</u>, 486 U.S. 399, 405-06, 108 S. Ct. 1877, 1881, 100 L. Ed. 2d 410 (1988). Nevertheless, because the resolution of the preemption issue requires further development of the state law claim being asserted, this court recommends that the motion to dismiss based on preemption grounds be denied.

As detailed above, the duty of fair representation does not bar claims against a union based on outrageous conduct. There are situations, however, where courts have found an analysis of the collective bargaining agreement to be necessary to determine if the challenged conduct was, in fact, outrageous. Thus, in some circumstances, "the terms of the CBA can become relevant in evaluating whether the defendant's behavior was reasonable. Actions that the collective bargaining agreement permits might be deemed reasonable by virtue of the fact that the CBA permits them." <u>Miller v. AT&T Network Sys.</u>, 850 F.2d 543, 550 (9th Cir. 1988) (where the "outrageousness of [the plaintiff's] reassignment and dismissal could depend on whether the behavior violated the terms of the CBA," claim of intentional infliction of emotional distress preempted. <u>Id.</u> at 551). <u>See also</u> <u>Goulet</u>, 884 F. Supp. at 23 n.10 ("Even claims for intentional infliction of emotional distress are preempted where they 'require interpretation' of the collective bargaining agreement").

In the instant case, it is unclear how the terms of the collective bargaining agreement would be relevant to evaluating Ms. Creighton's conduct. None of her challenged conduct appears to be of the type defined by a CBA, such as work assign-

ments.  Nevertheless, all parties should have an opportunity to more fully develop the

relevant facts.  Since the plaintiffs may be able to establish facts which would result in

their claim not being precluded by federal law, the motion to dismiss should be denied.

### 2.    Sufficiency of Pleading Outrageous Conduct

Like Local 264, Ms. Creighton argues that the complaint fails to allege sufficient

"outrageous conduct" to sustain a finding of intentional infliction of emotional distress."

For the reasons detailed above, this court finds that the pleading of this state law claim is

sufficient to withstand a motion to dismiss.

### 3.    Whether Ms. Creighton's Conduct was Privileged

Ms. Creighton contends that all of her challenged conduct was privileged, as a

result of which the claims against her should be dismissed.  Thus, she relies on "the

privilege which attaches to statements made by an attorney 'in the institution or conduct

of litigation or in conferences and other communications preliminary to litigation." Doe

v. Nutter, McClennen & Fish, 41 Mass. App. Ct. 137, 140, 668 N.E.2d 1329, 1332

(1996) (quoting Sriberg v. Raymond, 370 Mass. 105, 109, 345 N.E.2d 882 (1976)).

While this is an absolute privilege, "it is available only when the challenged remarks are

relevant or pertinent to the judicial proceedings." Sullivan v. Birmingham, 11 Mass. App.

Ct. 359, 362, 416 N.E.2d 528, 530 (1981).  Moreover, the privilege only applies where

the "statements are made by an attorney engaged in his function as an attorney" and the

privilege appears to be limited to situations involving litigation, and does not appear to

encompass the conduct of an attorney "in counselling and assisting their clients in

business matters generally." <u>Kurker v. Hill</u>, 44 Mass. App. Ct. 184, 192, 689 N.E.2d

833, 838-39 (1998) (internal citation omitted).

The plaintiffs contend that the statements at issue were not "related to" the court

proceedings or other litigation. Pls.' Opp. (Docket No. 20) at 5. If this was the only

objection raised, this court would recommend that the motion to dismiss be denied. It is

not clear at this stage of the proceedings whether the complained of conduct was

pertinent to the proceedings and further development of the record is appropriate. <u>See</u>

<u>Meltzer v. Grant</u>, 193 F. Supp. 2d 373, 381 (D. Mass. 2002) (where applicability of the

litigation privilege not apparent from complaint alone, "the matter may be resolved on a

well-pleaded motion for summary judgment").

However, the plaintiffs then proceed to deny that Ms. Creighton was acting in her

capacity as an attorney. As the plaintiffs assert:

> More importantly, in terms of her representation of Mr. Elkins, Ms.
> Creighton was not acting as an attorney, but as a union representa-
> tive. Her actionable statements as a union representative must not be
> accorded a shield of privilege simply because she also happens to be
> an attorney.

Pls.' Opp. (Docket No. 20) at 5. This assertion then raises the issue whether Ms.

Creighton is immune from suit as a union representative.[7] "The immunity of individual

union officers from liability for union activities in the collective bargaining context has

---

[7] While Ms. Creighton only addressed her status as an attorney, the Union argued in a
lengthy footnote that Ms. Creighton was immune from suit due to her status as a union
representative. <u>See</u> Local 264's Mem. (Docket No. 14) at 18 n.7. The plaintiffs have not
responded to this argument.

-44-

long been an important fixture of Federal labor policy." <u>Wolfson v. Am. Airlines, Inc.</u>, 170 F. Supp. 2d 87, 95 (D. Mass. 2001). "These principles apply to a dispute . . . arising under the Railway Labor Act." <u>Id</u>. at 96. Moreover, the immunity extends to attorneys acting on "the union's behalf in the collective bargaining process." <u>Montplaisir v. Leighton</u>, 875 F.2d 1, 4 (1st Cir. 1989). Such conduct includes representing the union in a grievance proceeding challenging an employee's termination. <u>See</u> <u>Peterson v. Kennedy</u>, 771 F.2d 1244, 1256-61 (9th Cir. 1985), <u>cited</u> <u>with</u> <u>approval</u> <u>in</u> <u>Montplaisir</u>, 875 F.2d at 5-6. In such circumstances, only the union may be liable to the employee.

Since Ms. Creighton is immune from suit as a union representative, this court recommends that Ms. Creighton's motion to dismiss be allowed.

### E.    <u>Shuttle America's Motion to Dismiss</u>

Mr. Elkins is pursuing a claim for breach of contract and wrongful termination (Count I) against Shuttle America. He has withdrawn his claim for intentional infliction of emotional distress (Count V). <u>See</u> Pls.' Opp. (Docket No. 19) at 8 n.3. This court concludes that the complaint fails to state a claim against Shuttle America and, therefore, this court recommends that Shuttle America's motion to dismiss be allowed.

### 1.    <u>The Failure to Plead Collusion</u>

Under the RLA so-called "minor disputes," i.e., those grievances "between employees and carriers regarding rates of pay, rules and working conditions," may not be brought in court, but, rather, must be resolved through administrative procedures. <u>See</u> <u>Raus v. Bhd. Railway Carmen of the U.S. & Can.</u>, 663 F.2d 791, 794 & n.5 (8th Cir.

-45-

1981) (citing Union Pac. R.R. v. Sheehan, 439 U.S. 89, 93, 99 S. Ct. 399, 402, 58 L. Ed. 2d 354 (1978)).  In contrast, "[s]uits by employees against only their unions for a breach of duty of fair representation do not fall under the explicit provisions of the Railway Labor Act[.]"  Id. at 794.  Thus, under the RLA,[8] a federal court may properly exercise jurisdiction over both the union and the employer only if the suit is essentially a suit between "some employees on the one hand and the union and management together on the other" as opposed to being a suit between an employee or group of employees and their employer carrier.  Glover v. St. Louis-San Francisco Ry. Co., 393 U.S. 324, 329, 89 S. Ct. 548, 551, 21 L. Ed. 2d 519 (1969) (emphasis added).  Courts have interpreted this to require "well-plead allegations of something like collusion between the [carrier] and the union in denying the employees their rights under the contract and the Railway Labor Act."  Raus, 663 F.2d at 798.  Thus, "where there are good faith allegations and facts supporting those allegations indicating collusion or otherwise tying the [carrier] and union together in allegedly arbitrary, discriminatory or bad faith conduct amounting to a breach of the duty of fair representation, the district court has jurisdiction over the union on the fair representation claim and over the [employer] on the contract violation claim."  Id.  See also Dement v. Richmond, Fredericksburg & Potomac R.R. Co., 845 F.2d 451,

---

[8]  While plaintiffs seem to argue without any citation that they should be allowed to bring a "hybrid action" directly against the union and the employer, as permitted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, § 301 does not apply to carriers covered by the RLA.  See United Indep. Flight Officers, Inc. v. United Air Lines, Inc., 756 F.2d 1274, 1283 (7th Cir. 1985).

457 (4th Cir. 1988) (an employee may join an employer in a suit against a union for breach of the duty of fair representation if employee "can allege that the employer's conduct somehow contributed to the union's breach) (quotations omitted); <u>United Indep. Flight Officers</u>, 756 F.2d at 1283 ("An employer is liable together with the union for the union's breach of its duty of fair representation if it acts in collusion with the union.").

In the instant case, the plaintiffs have not alleged any such involvement by Shuttle America. At most, the plaintiffs point to the fact that there was an off the record conversation between counsel for Shuttle America, Ms. Creighton and the arbitrator, outside of Mr. Elkins' presence, after which Ms. Creighton forced Mr. Elkins to drop his medical claim on the grounds that the arbitrator would allow Shuttle America's attorney to testify. While Mr. Elkins contends that Ms. Creighton did this out of her dislike for him and to avoid having to call her partner as a witness, which was in Ms. Creighton's alleged self interest, there is nothing in the record to indicate that Shuttle America acted in any way inappropriately. Rather, the only evidence is that Shuttle America's counsel acted in the best interest of his client. Furthermore, by being available to testify, Shuttle America made it possible for Mr. Giroux to testify if the plaintiffs elected to call him as a witness.

In sum, there is nothing beyond a "bare allegation of the existence of a conspiracy" which, without more, is insufficient to survive a motion to dismiss a claim that an employer shares liability for a union's breach of the duty of fair representation. See <u>Maisonet v. Trailer & Marine Transp.</u>, 514 F. Supp. 1129, 1133 (D.P.R. 1981). For

these reasons, this court recommends that Shuttle America's motion to dismiss be allowed.[9]

### 2.    Maintaining Jurisdiction to Afford Relief

The plaintiffs claim that Shuttle America is a necessary party in order for Mr. Elkins to obtain complete relief in this action, i.e., reinstatement. The Supreme Court has left open the question whether an employer may be joined in a suit alleging breach of the duty of fair representation by a union solely for the purpose of affording complete relief. Sisco v. Consol. Rail Corp., 732 F.2d 1188, 1190-91 (3d Cir. 1984) (citing Czosek v. O'Mara, 397 U.S. 25, 30, 90 S. Ct. 770, 774, 25 L. Ed. 2d 21 (1970)). See also Carroll v. Bhd. of R.R. Trainmen, 417 F.2d 1025, 1027 (1st Cir. 1969) ("courts have consistently upheld joinder of the employer when the employee's primary dispute was with his union and the employer is joined only to afford complete relief").

Nevertheless, the employer is not a necessary party to an action challenging a union's handling of a grievance arising out of the termination of an employee's employment. Carroll, 417 F.2d at 1027. "To justify permissive joinder, plaintiff must demonstrate that he has some right to relief against the [carrier] growing out of the events in question." Id. Thus, absent some evidence of culpable complicity" between an employer

---

[9] Shuttle America has also moved to dismiss the complaint on the grounds that if Local 264 is not liable for a breach of the duty of fair representation, the employer cannot be liable. See Plumley v. So. Container, Inc., 303 F.3d 364, 375 (1st Cir. 2002). Since, however, this court has concluded that the plaintiffs have stated a claim against the union, this is not a basis for dismissing Shuttle America's claim.

and the union in a suit challenging a union's breach of the duty of fair representation, the suit against the employer is properly dismissed. Id. at 1028-29. Therefore, this court recommends that Shuttle America's motion to dismiss be allowed.

## IV.  CONCLUSION

For the reasons detailed herein, this court finds that there is no personal jurisdiction in Massachusetts over Local 264, although the complaint against the Union otherwise states a claim. Therefore, this court recommends that the action against Local 264 be transferred to either New York or Pennsylvania as the plaintiffs request, so that the claim for breach of duty of fair representation is not deemed untimely. In all other respects the Union's motion to dismiss (Docket No. 13) should be denied.

With respect to Ms. Creighton's motion, this court finds that there is no personal jurisdiction of her in Massachusetts, and that the claims against her are otherwise barred as a matter of law. Therefore, this court recommends that Ms. Creighton's motion to dismiss (Docket No. 11) be allowed. This court further finds that the complaint fails to state a claim against Shuttle America, and recommends that its motion to dismiss (Docket No. 9) be allowed as well.[10]

---

[10]  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v.

_____ / s / Judith Gail Dein _____
Judith Gail Dein
United States Magistrate Judge

---

Valencia-Copete, 792 F.2d 4, 6 (1ˢᵗ Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616
F.2d 603, 604-605 (1ˢᵗ Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1ˢᵗ Cir. 1982);
Scott v. Schweiker, 702 F.2d 13, 14 (1ˢᵗ Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-
54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp.,
199 F.3d 1, 3-4 (1ˢᵗ Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1ˢᵗ Cir.
1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1ˢᵗ Cir. 1998).