UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO.: 05-11130-NMG
_____

**D. LYLE ELKINS AND MARTHA ELKINS**
Plaintiffs

v.

**INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, LOCAL 264, CATHERINE CREIGHTON
AND SHUTTLE AMERICA**
Defendants
_____

PLAINTIFFS' OBJECTIONS PURSUANT TO RULE 72(b) TO REPORT AND
RECOMMENDATION OF MAGISTRATE ON DEFENDANTS' MOTIONS TO
DISMISS

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, Plaintiffs D. Lyle

Elkins and Martha Elkins hereby object to the Report and Recommendation of Magistrate

Judith Dein on Defendants' Motions to Dismiss.

In her August 28, 2006 Report and Recommendation, Magistrate Dein granted the

motion to dismiss of Local 264 for lack of personal jurisdiction, granted the motion to

dismiss of Catherine Creighton for lack of personal jurisdiction and as the claims against

her were barred as a matter of law, and granted the motion to dismiss of Shuttle America

as Plaintiffs failed to state a claim against it.  Magistrate Dein denied the motions to

dismiss in all other respects, and recommended (subject to further briefing by the parties)

that the claims against Local 264 be transferred to the appropriate District Court in either

Pennsylvania or New York.  As Mr. Elkins' claims were all dismissed, Magistrate Dein

also dismissed the related and dependent loss of consortium claims of Mrs. Elkins.

Although Magistrate Dein issued a thorough and well detailed decision, containing an exacting analysis of the motions and oppositions, Plaintiffs object to her report and recommendation.  Specifically, Plaintiffs object to the following findings in the Report and Recommendation:

1. That this Court does not have personal jurisdiction over Local 264.  Plaintiffs assert that this Court does indeed have personal jurisdiction over Local 264, and that this case should be litigated in this Court.
2. That this Court does not have personal jurisdiction over Ms. Creighton and that the claims against her are barred as a matter of law as she is protected by a privilege or by immunity from suit, as a union representative.  This Court has personal jurisdiction over Ms. Creighton, she should not be subject to any privilege or immunity from suit as a union representative, and on the face of the pleadings in this action, it cannot be determined with certainty whether her conduct should be reviewed as a union representative or as an attorney.
3. That Plaintiffs have failed to state a claim as to Shuttle America.  Plaintiffs assert that for purposes of the motion to dismiss, they have adequately alleged some type of collusion between Shuttle America and Local 264 which requires further fact finding, and that Shuttle America is a necessary party to this litigation in order to accord Plaintiff D. Lyle Elkins full relief.

In opposing the three motions to dismiss filed by Defendants, Plaintiffs filed three separate oppositions, with attachments including several affidavits.  Those three oppositions as well as the affidavits attached to them are relied upon by Plaintiffs as further support for the arguments set forth herein.  The oppositions and their attachments are incorporated by reference herein.  Although Plaintiffs incorporate those three briefs as support for these objections, the facts of this case are set forth below to place Plaintiffs' argument in context.  Secondly, except as may be noted otherwise, Plaintiffs do not disagree with the legal standards set forth in Magistrate Dein's decision (but rather, her application of the relevant law to the facts of this action).  Accordingly, Plaintiffs have not repeated the controlling law in this brief.

## FACTUAL BACKGROUND

For their factual basis for objecting to the Magistrate's decision, Plaintiffs rely upon the well-pleaded allegations of the Complaint, the Affidavit of Plaintiff Lyle Elkins which is appended to the Opposition to Local 264's motion to dismiss, and the Affidavit of Brian O'Donnell which is also appended to the Opposition to Local 264's motion to dismiss.

### 1.    Facts Regarding Personal Jurisdiction.

Plaintiff Lyle Elkins was a pilot employed by Shuttle America until on or about February, 2003.  In February of 2003, Mr. Elkins was fired for refusing to attend a "ground school" which Shuttle America claims was required.  Mr. Elkins has asserted that he was unable to attend the ground school due to medical reasons.

At the time of his termination and thereafter, Mr. Elkins was represented by Teamsters Local 264 as his collective bargaining agent and representative.  Although Mr. Elkins was not a "member" of Local 264, he paid an "agency fee" to Local 264 on a regular basis and Local 264 was obligated to represent him in the grievance and arbitration process in exactly the same way it was obligated to represent members of the Union.  Complaint at par. 12-13.

Mr. Elkins was first fired by Shuttle America in 2001.  During the course of his grievance contesting that termination, he was represented by Local 264 through Attorney Joseph Giroux.  One of Mr. Giroux' law partners was and is Defendant Creighton. Complaint at par. 15.

During 2002, Mr. Elkins was ordered reinstated to his position with Shuttle America by an arbitrator. The parties to the arbitration disagreed as to the correct manner of carrying out the arbitrator's reinstatement decision. Id.

Mr. Elkins' second termination occurred on or about February 3, 2003. The reason given by Shuttle America for firing Mr. Elkins was that Mr. Elkins did not attend a "ground school" training course which Shuttle America claims he was obligated to attend before being reinstated. Mr. Elkins claims he was medically unable to attend the ground school, that his medical inability to attend was communicated to the Union's representative Attorney Giroux, and that Attorney Giroux communicated these facts to Shuttle America. Complaint at par. 18-22; 29.

The arbitration of Mr. Elkins' second termination occurred in June, 2004. In the one and one-half years between Mr. Elkins' termination and the occurrence of the arbitration hearing, Mr. Elkins communicated extensively with Local 264 (although Local 264 did not consistently communicate back with Mr. Elkins). Elkins Affidavit at par. 68-71.

Also during this period, Mr. Elkins felt that he was being inadequately represented by Attorney Giroux on behalf of Local 264. Among other things, Mr. Elkins filed two complaints with the New York State Bar regarding Attorney Giroux' actions on his behalf. Mr. Elkins also requested that the Teamsters appoint a different representative to work with him due to his inability to continue working with Attorney Giroux. Complaint at par. 31-38.

In February 2004, Mr. Elkins was informed that he would indeed have a new representative.  The new representative was Defendant Creighton, who was and is a law partner of Attorney Giroux. Complaint at par. 38-39.

In June, 2004, Ms. Creighton represented Mr. Elkins at his arbitration hearing regarding the second termination of employment.  Complaint at par. 43-44.

On December, 2004, Mr. Elkins learned that the arbitration had been decided against him and that his termination had been upheld.

Mr. Elkins had started paying an agency fee to Local 264 in approximately the fall of 2001.  Elkins Affidavit at ¶66.  He paid that for a few months, until his first firing.  Id.  Once Mr. Elkins was ordered reinstated from his first firing, he paid money to Local 264 to make up for the agency fees that he had not paid while he was fired, and started paying fees again.  Id.  He even paid agency fees for some time after he was fired for the second time in February, 2003.  Id.  In relation to all of those payments, Mr. Elkins mailed checks drawn on Massachusetts banks to Local 264 in New York from his home in Massachusetts.  Id.  Local 264 negotiated those checks.  Id.

Between the Fall of 2001 and October, 2003, Mr. Elkins mailed agency fee checks to Local 264 on at least 10 occasions.  Elkins Affidavit at ¶67.  The total of the agency fees paid to Local 264 by Mr. Elkins was at least $1,418.50.  Id.

Subsequent to Mr. Elkins' termination in February, 2003, he wrote at least several dozen letters to Local 264 regarding different aspects of their representation of him.  Elkins Affidavit at ¶68.  All of the letters were mailed from Massachusetts to Local 264 in New York.  Id.

Subsequent to Mr. Elkins' termination in February, 2003, Local 264 officials wrote several letters to Mr. Elkins regarding their representation of him. Elkins Affidavit at ¶69. All of those letters were sent from New York to Mr. Elkins at his home in Massachusetts. Id.

Subsequent to Mr. Elkins' termination in February, 2003, Local 264 officials placed approximately 6 phone calls to him regarding their representation of him and he placed approximately 3 phone calls to Local 264 regarding their representation of him. Elkins Affidavit at ¶70. In relation to those calls, Mr. Elkins spoke on the phone to Local 264 officials approximately 3 times after his termination in February, 2003. Id. at par. 70.

Subsequent to Mr. Elkins' termination in February, 2003, Mr. Elkins sent at least several dozen facsimile transmissions to Local 264 regarding different aspects of their representation of him. Elkins Affidavit at ¶71. All of these facsimiles were transmitted from Massachusetts to Local 264 at their address in New York. Id.

In approximately 2001, Local 264 organized Shuttle America pilots. Elkins Affidavit at ¶64. Brian O'Donnell Affidavit.

The pilots who were organized by Local 264 and who were members of Local 264 included approximately 24 or 25 Shuttle America pilots who either lived in Massachusetts or worked out of Hanscom Field in Bedford, Massachusetts, or both. Id.

Until 2001 or 2002, Local 264 of the Teamsters had approximately 25 members who were Shuttle America pilots who either lived in Massachusetts or worked out of Hanscom Field in Bedford, Massachusetts. Elkins Affidavit at ¶65.

Brian O'Donnell is an individual living in West Barnstable, Massachusetts. O'Donnell Affidavit. Mr. O'Donnell is currently employed as a pilot by Shuttle

America.  Id.  Mr. O'Donnell was hired by Shuttle America in 1998 and has been continuously employed by the Company since that date.  Id.  Mr. O'Donnell is currently a member of Local 264 of the Teamsters, and has been a member of the Union since approximately 2001.  Id.  During the whole time period that he has been employed by Shuttle America and has been a member of Local 264, Mr. O'Donnell has lived in West Barnstable, Massachusetts.  Id.  There are at least 2 other current pilots of Shuttle America planes who are members of Local 264 who also reside in Massachusetts. Id.

**2.    Facts Regarding Breach of Duty of Fair Representation.**

Mr. Elkins was represented in the arbitration of his first grievance by Attorney Giroux.

Mr. Giroux was and is a law partner of Defendant Catherine Creighton.

Between the time that Mr. Elkins was first represented by Attorney Giroux and the time of his arbitration over his second termination, Mr. Elkins filed two complaints with the New York State Bar regarding Attorney Giroux.  Complaint at par. 31-38.

At pages 14 to 15 of the Complaint in this action, Plaintiff has listed a number of improper actions Ms. Creighton engaged in at the arbitration of the second termination. Among the items listed are Ms. Creighton's public verbal abuse of Mr. Elkins, her refusal to sit next to Mr. Elkins at the hearing, her refusal to raise the issue of disability discrimination at the arbitration, her failure to withdraw as Mr. Elkins' representative knowing that her partner had a conflict of interest in relation to Mr. Elkins because of the disciplinary complaints, her failure to withdraw as Mr. Elkins' representative at the arbitration knowing that if she fully presented Mr. Elkins' claims about his medical

reason for not attending ground school her law partner, Attorney Giroux would have to be a witness and she would have to be forced to withdraw as representative, her failure to call her law partner Mr. Giroux as a witness, and her engaging in an off the record conversation with the arbitrator and opposing counsel out of the presence of Mr. Elkins (after which she forced Mr. Elkins to drop his claim that he could not attend the training for medical reasons).  Ms. Creighton took this last action apparently based on a threat by the arbitrator to allow counsel for Shuttle America who was conducting the hearing for Shuttle America to testify, which would have required Attorney Creighton to call her partner Attorney Giroux as a witness.


## ARGUMENT

### 1.  THIS COURT HAS PERSONAL JURISDICTION OVER LOCAL 264

Magistrate Dein found that Local 264 did not have adequate contacts with Massachusetts to justify this Court exercising either general or specific jurisdiction over it.  Plaintiffs disagree.

For several years Local 264 has had many union members who work out of Massachusetts and reside in Massachusetts.  Those members have paid union dues to Local 264 since approximately 2001.  According to the O'Donnell Affidavit, Local 264 still has between 1 and 3 members who live in Massachusetts and who work out of Massachusetts.  By having union members in Massachusetts for several years, by collecting dues from those members for several years and by performing whatever functions it performed for those members who are Massachusetts residents for several years, Local 264 must be deemed to be "doing business in" Massachusetts.

In addition to the members it has dealt with over the years, from 2001 until at least 2003, Local 264 had enough dealings with Mr. Elkins to be considered to have transacted business in Massachusetts.  Mr. Elkins communicated with Local 264 by telephone and facsimile on several dozen occasions.  Local 264 communicated with Mr. Elkins by phone and mail on a number of occasions.  Over several years, Mr. Elkins made at least 10 payments to Local 264 for the services they were obligated to provide to him, and the total of his payments was over $1,400.00.  By its actions in servicing and dealing with its members other than Mr. Elkins, and by its actions in dealing with and servicing Mr. Elkins, Local 264 has transacted business in Massachusetts.

Plaintiffs' claims against Local 264 are based upon the deficient, bad faith nature of the representation provided by Local 264, the very matters for which Mr. Elkins was paying Local 264 and communicating with it, and the very matters for which Local 264 was communicating with and receiving dues from its other members. Plaintiffs' claims have arisen from Defendant's transaction of business in Massachusetts.  It is appropriate for this Court to exercise personal jurisdiction over Local 264 pursuant to M.G.L. c.223A §3(a).

The Court may also exercise Long-Arm jurisdiction over Local 264 because it has caused tortious injury in Massachusetts by an act or omission outside the Commonwealth, and it regularly does business in Massachusetts and engages in a persistent course of conduct in Massachusetts.

Mr. Elkins was injured due to actions taking place outside of Massachusetts. However, due to the extreme emotional distress Local 264's actions caused Mr. Elkins to suffer, as well as the fact that its actions caused Mr. Elkins' spouse to suffer a loss of

consortium, Local 264 has caused a tortious injury in Massachusetts. See, e.g. Darcy v. Hankle, 54 Mass. App. Ct. 846, 768 N.E. 2d 583, 587 (Mass. App. Ct. 2002); Noonan v. The Winston Company, 135 F. 3d 85, 92 (1st Cir. 1998). For the reasons discussed earlier, namely the representation of various members who are residents of Massachusetts and its activities in relation to Mr. Elkins, Local 264 both "regularly does or solicits business" in Massachusetts and additionally, has engaged in a "persistent course of conduct" in Massachusetts. It is appropriate for the Court to assert jurisdiction over Local 264 pursuant to M.G.L. c.223A §3(d).

The next relevant question is whether it is constitutional for this jurisdiction over Local 264 to be exercised. The exercise of such jurisdiction is indeed in accordance with the Constitution, either as "general jurisdiction" or as "special jurisdiction."

Based upon Local 264 having members in Massachusetts for a series of years, collecting dues from those members for a series of years, representing those members, and collecting agency fees and dealing with Mr. Elkins in a representative context, Local 264 has engaged in a continuous and systematic course of activity in Massachusetts.[1] Local 264 has engaged in enough of a continuous and systematic course of activity in Massachusetts to subject it to general jurisdiction in Massachusetts.

The exercise of specific jurisdiction is appropriate as well.

The claim underlying this litigation relates to the quality of Local 264's representation of Mr. Elkins in a work-related arbitration. Such a claim arises directly

---

[1] As was set forth by the Court in Workgroup Technology vs. MGM Grand Hotel, 246 F.Supp. 2d 103 (D. Mass. 2003) at 109-110, in order for a Defendant to be deemed to be transacting business in a state it is not necessary that a Defendant be physically present in the state. Additionally, even just a few actions on a Defendant's part can often suffice to satisfy the Long-Arm Statute's threshold for transacting business.

out of and relates to, Local 264's contacts with Massachusetts, namely obtaining union members and servicing those union members in exchange for dues or agency fees.

Local 264's activities in this regard have been purposeful and voluntary. Local 264 chose to have members in Massachusetts, and accepted dues or agency fees from members in exchange for the obligation to represent them when such representation was required.

By choosing to have members and an agency fee paying individual in Massachusetts, knowing that it was being paid by their dues or agency fee to represent these members as the need required, it was clearly foreseeable to Local 264 that it could be subject to suit in Massachusetts.

The last matter to be considered is whether the "Gestalt factors" are present. Workgroup, supra at 114.

As for the first "Gestalt" factor, although it would undoubtedly be burdensome to Local 264 to have to appear in Massachusetts rather than New York, it is almost always inconvenient for a party to litigate in a foreign jurisdiction. As Local 264 cannot demonstrate that the exercise of jurisdiction in the present case is onerous in any special, unusual or other significant way, this factor weighs in favor of the Court's exercise of jurisdiction. See, e.g. Workgroup, supra at 115.

Regarding the second factor, Massachusetts has an interest in this action because it has an interest in seeing that employees working in Massachusetts but who are represented by labor unions not physically located in Massachusetts, have a fair chance to litigate claims against those labor unions.

With regard to the third factor, it would be very much in Mr. Elkins' interest to be able to litigate this matter in Massachusetts, rather than having to obtain counsel in the Buffalo or Pittsburgh areas and have to travel to meet with counsel and litigate the case. The burden in this regard is much greater on Mr. Elkins as an individual than the burden on Local 264 to have to come to Massachusetts to litigate this case.

As to the fourth factor, it appears that there is no reason to believe that New York has a greater interest in the resolution of this controversy than Massachusetts does. The witnesses to this matter are in various states in addition to New York and Massachusetts. As Mr. Elkins is an individual with limited resources, it is less onerous to require Local 264 to litigate this matter in Massachusetts than to require Mr. Elkins to litigate it in New York.

As to the fifth factor, it does not appear that the social policies of New York or Massachusetts are an issue in this case or in conflict in this case and therefore that factor is not relevant.

Accordingly, when all of the Gestalt factors are weighed, the factors are either neutral or favor the litigation of this matter in Massachusetts. Based upon all of the above, the exercise of jurisdiction in Massachusetts will not offend traditional notations of fair play and substantial justice.

This Court has personal jurisdiction over Local 264 and it would be completely in accordance with the U.S. Constitution for the Court to exercise that jurisdiction. The dismissal of Local 264 for lack of personal jurisdiction was in error.

**2.  THIS COURT HAS PERSONAL JURISDICTION OVER CATHERINE CREIGHTON, AND THE CLAIMS AGAINST HER ARE NOT BARRED**

In relation to her representation of Mr. Elkins, Ms. Creighton was acting on behalf of Local 264 (either as its attorney or as a union representative other than an attorney). Accordingly, the Court has personal jurisdiction over Ms. Creighton to the same extent that it has jurisdiction over Local 264.  Additionally, the contacts of Local 264 with Massachusetts which give the Court jurisdiction over Local 264, bind Ms. Creighton.

The argument set forth in the prior section of this brief regarding this Court's jurisdiction over Local 264, applies to Ms. Creighton as well.  Those arguments are incorporated by reference in this section.

In representing Mr. Elkins on behalf of Local 264, Ms. Creighton was acting on behalf of a labor union which did business in Massachusetts.  She was representing an individual to whim the union had representational obligations, who lived in Massachusetts and worked out of Massachusetts.  She had contact with this individual in Massachusetts by mail and by phone.  See Elkins Affidavit attached to Opposition to Motion to Dismiss of Local 264 at par. 72.  Ms. Creighton caused tortious injury in Massachusetts by actions outside of Massachusetts.

When her own contacts with Mr. Elkins are viewed in light of the contacts Local 264 had with Massachusetts and with Mr. Elkins, it is evident that it is appropriate and constitutional for the Court to assert personal jurisdiction over Ms. Creighton.

Magistrate Dein also dismissed the claims against Ms. Creighton on the grounds that Ms. Creighton was immune from suit for actions she engaged in as a union representative.

Notably, in her own motion to dismiss Ms. Creighton did not claim immunity from suit. Rather, she asserted that her actions were privileged as the actions of an attorney involved in litigation. It was Local 264 which raised the issue of Ms. Creighton being immune from suit as a union representative.

Magistrate Dein agreed with Plaintiffs that the "privilege" claimed by Ms. Creighton would not apply, but then proceeded to hold that as Plaintiffs asserted that Ms. Creighton had been acting as a union representative, Ms. Creighton would be subject to immunity from suit.

Plaintiffs assert that there exists a genuine issue of fact as to whether Ms. Creighton was acting as an attorney for Local 264, whether she had been hired by Local 264 to act as an attorney for Mr. Elkins, or whether (as Magistrate Dein seems to find) Ms. Creighton was a union representative who happened to also be an attorney. Whether any immunity from suit as a union representative applies to Ms. Creighton can only be determined after the facts of her status while representing Mr. Elkins are further developed.[2]

It was error to dismiss the claims against Ms. Creighton.

## 3.  PLAINTIFF HAS STATED A CLAIM AGAINST SHUTTLE AMERICA

Magistrate Dein dismissed Plaintiffs' claims against Shuttle America, holding that

---

[2] Plaintiffs also assert that as a matter of public policy, an attorney representing an employee in a termination grievance, when that attorney is supplied by the employee's union, should not be immune from suit. Furthermore, to whatever extent immunity might exist from negligence claims which would otherwise amount to legal malpractice, there should be no immunity from suit for intentional torts such as the claim for intentional infliction of emotional distress alleged in the Complaint.

Plaintiffs were required to plead conduct akin to "collusion" between Shuttle America and Local 264 in relation to the breach of the duty of fair representation being complained of, and that there had been an inadequate claim of such "collusion." Additionally, Magistrate Dein held that Shuttle America was not a necessary party to Plaintiffs' action against Local 264.  Plaintiffs object to both findings.

As is set forth in the discussion of the facts of this action, Plaintiffs have alleged that at a crucial point in Mr. Elkins' employment termination arbitration hearing, an off the record discussion (from which Mr. Elkins was excluded) took place between the arbitrator, Mr. Elkins' attorney/representative (Ms. Creighton) and the attorney for Shuttle America. As a result of that discussion, Ms. Creighton insisted that Mr. Elkins withdraw his claim of having a medical excuse for not attending flight training (the alleged reason for which his employment was terminated). The threat transmitted to Mr. Elkins by Ms. Creighton was that if Mr. Elkins did not drop his medical excuse, Shuttle America's attorney would be allowed to testify as a witness.

It was to Ms. Creighton's benefit that Mr. Elkins drop his medical excuse, as this would allow her to avoid the ethical dilemma of having to call as a rebuttal witness her law partner Mr. Giroux, Mr. Elkins prior counsel, against whom Mr. Elkins had filed disciplinary charges.  Additionally, if Mr. Giroux had been required to testify, Ms. Creighton would have had to withdraw as counsel.

In short, the result of the secret meeting was that Shuttle America precluded Mr. Elkins form asserting one of his strongest defenses to his termination, the arbitrator was able to dispose of a strong defense, Ms. Creighton was able to avoid a conflict of interest situation which might have revealed further ethical compromises in her representation of

15

Mr. Elkins, but Mr. Elkins was injured by having to give up what might have been the strongest argument in his case.

Mr. Elkins cannot know exactly what was said by the representative of Shuttle America and the representative of Local 264 during the secret meeting. He needs to be able to engage in discovery to be able to know what was said. However, based upon what is known about the meeting, it is reasonable to assume at this point in these proceedings that "collusion" between Local 264 and Shuttle America did occur, and that the collusion resulted in the duty of fair representation owed to Mr. Elkins being breached.

This is more than the "bare allegation of a conspiracy" referred to by Magistrate Dein. It is enough to survive a motion to dismiss.

Finally, there is the issue of whether or not Shuttle America is a necessary party to this litigation. It is.

In her decision, Magistrate Dein ruled that in order for Shuttle America to be a necessary party to this litigation, some evidence of collusion or complicity must be shown.

Plaintiffs assert that without the presence of Shuttle America in this action, it is not possible to accord complete relief to Mr. Elkins. Simply put, Mr. Elkins desires to be reinstated as an airline pilot with Shuttle America, and without Shuttle America being a party to this action, there is no way to grant him that relief, no matter what relief he may obtain against Local 264. As Mr. Elkins cannot obtain complete relief in this action without Shuttle America being a party, the dismissal of Shuttle America was error.

However, even under Magistrate Dein's analysis, it was error to dismiss Shuttle America as a party. As is set forth above, there are indeed adequate allegations of "culpable complicity" between Shuttle America and Local 264. Under the circumstances, Shuttle America must remain a party to this action.

**CONCLUSION**

For all of the reasons set forth above, Plaintiffs object to the Report and Recommendation of Magistrate Dein in this action. The findings dismissing the claims of both Plaintiffs against Local 264, Catherine Creighton and Shuttle America must be reversed.[3]

Respectfully submitted,
D. LYLE ELKINS and MARTHA ELKINS
By their Attorney,

/s/Mitchell J. Notis
_____
Mitchell J. Notis, BBO # 374360
LAW OFFICE OF MITCHELL J. NOTIS
370 Washington Street
Brookline, MA 02445
DATED:   September 6, 2006        Tel.: (617) 566-2700

CERTIFICATE OF SERVICE

I, Mitchell J. Notis, hereby certify that a true copy of the foregoing document was served upon the attorneys of record for all parties to this action by electronic means using the Court's Electronic Case Filing System, on September 6, 2006.

_____

[3] To the extent that Mr. Elkins' claims are reinstated, the loss of consortium claims asserted by Mrs. Elkins must be reinstated as well.

/s/Mitchell J. Notis

_____
MITCHELL J. NOTIS, BBO# 374360
Law Office of Mitchell J. Notis
370 Washington Street
Brookline, MA 02445
Tel: 617-566-2700