## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSCHUSETTS

|  |  |  |
|---|---|---|
| D. Lyle Elkins, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 05-11130 (NMG) |
| | ) | |
| Teamsters Local 264, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT TEAMSTERS LOCAL 264's
## OBJECTIONS TO MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Defendant Teamsters Local 264 ("Local" or "Union") respectfully submits under Fed. R. Civ. P. 72(b) its objections to the Report and Recommendation of Magistrate Judge Dein.[1]   The Defendant objects to the Magistrate Judge's recommendations contained in Section III.C.1 (Standard of review); Section III.C.2 (recommending denial of the Defendant's motion to dismiss plaintiffs' claim for breach of the duty of fair representation), Section III.C.3 (recommending denial of the defendants' motion to dismiss plaintiffs' claim for intentional infliction of emotional distress on the ground of preemption), and Section III.C.4 (recommending denial of the defendants' motion to dismiss plaintiffs' claim for intentional infliction of emotional distress on the ground that plaintiffs fail to state a claim upon which relief can be granted).  Further, Local 264 submits its briefing concerning the Magistrate Judge's recommendation that this matter be transferred to the Federal District Court encompassing either Buffalo, NY or Pittsburgh, PA.  Local 264 submits that, if the district court chooses to adopt the

---

[1]     References to the Report and Recommendation will be designated "*R&R* at ____."

Magistrate Judge's recommendations that the Union's motion to dismiss the plaintiffs' claims be denied, that this action be transferred to the United States District Court for the Western District of New York, Buffalo Division.

**SUMMARY OF ARGUMENT**

1.    The Magistrate Judge's recommendation that the Local's motion to dismiss the plaintiffs' claim for breach of the duty of fair representation be denied

Local 264 objects to the Magistrate Judge's recommendation to deny its motion to dismiss the plaintiffs' claim for breach of the duty of fair representation.  The Union submits that the complaint fails to state a claim that its representation of the plaintiff Mr. Elkins violated the very deferential standard for the duty of fair representation.  Mr. Elkins does not allege any hostility against him by Local 264.  Instead, he alleges only that the Union's attorney was hostile toward him and failed to represent him adequately in the arbitration of his grievance.  But the Union is not required to provide him with an attorney to handle his grievance.    *Johnson v. United Steelworkers District 7*, 843 F. Supp. 944, 947 (M.D. Pa. 1994).    Moreover, the Union's attorney represents the Union, not Mr. Elkins.  *Best v. Rome,* 858 F. Supp. 271 (D. Mass. 1994).  Any claim of an alleged conflict of interest is without merit since the Union's attorney had no conflict toward the Union.

Further, mere alleged hostility toward a grievant is insufficient to support a claim for breach of the DFR absent a showing that the handling of the grievance itself was materially deficient.  *MacKnight v. Leonard Morse Hospital*, 828 F.2d 48, 51 (1st Cir. 1987).  The allegations of the complaint do not identify any evidence that, if presented, would have altered to outcome of the grievance proceeding.  Rather, they simply reflect Elkins' disagreement with tactical decisions made by the attorney.  Since Elkins must

also show that his grievance was other meritorious, the failure to allege facts to establish that he would have prevailed on his grievance is fatal to his claim. *Ooley v. Schwitzer Div., Household Mfg., Inc.*, 961 F.2d 1293, 1303-04 (7th Cir. 1992); *NLRB v. Eldorado Mfg.*, 660 F.2d 1207, 1214 (7th Cir. 1981).

Elkins' allegations of hostility on the part of the Union's attorney must also fail because he failed to raise them at the arbitration hearing. *Early v. Eastern Transfer*, 699 F.2d 552 (1st Cir. 1983). The complaint makes plain that the Union processed Mr. Elkins' grievance to arbitration. He testified before the arbitrator and could have raised any testimony he alleged was omitted by the attorney. *Dirring v. Lombard Brothers, Inc.*, 619 F. Supp. 911, 916 (D. Mass. 1984). The complaint fails to allege that Elkins objected to the attorney's representation of him at any time prior to or during the arbitration. It was only after the fact that Elkins alleged the attorney's representation was deficient. This cannot state a claim under the DFR. *Best*, 858 F. Supp. at 277. Since Elkins agreed to be represented by the Union, he is bound by the outcome of his arbitration. *Parker v. Connors Steel*, 855 F.2d 1510, 1520-22 (11th Cir. 1988); *Crenshaw v. Allied Chemical*, 387 F. Supp. 594 (E.D. Va. 1975). Accordingly, the plaintiffs' claim for breach of the duty of fair representation should be dismissed.

2.    The plaintiffs' state law tort claims

State law claims are preempted whenever a plaintiff invokes a right derived from a union's duty of fair representation. *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of America*, 132 F.3d 824, 830 (1st Cir. 1997). Here, Elkins' allegations that the Defendant committed the tort of intentional infliction of emotional distress all arise from acts allegedly committed during the attorney's preparation and presentation of Elkins' grievance at arbitration. None of the allegations go outside the

representational setting. Accordingly, the plaintiffs' do not allege rights going beyond the Union's duty of fair representation, and their tort claim should be dismissed as preempted.

Further, it is well-settled under the law of Massachusetts that the tort of intentional infliction of emotional distress will only lie for actions by a defendant that are "beyond all possible bounds of decency" and "utterly intolerable in a civilized community." *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45, 355 N.E.2d 315, 318-19 (1976). Petty annoyances, insults, or other indignities will not support a claim for breach of this tort. *Gouin v. Gouin*, 249 F. Supp. 2d 62, 73 (D. Mass 2003).

Elkins alleges no more than that the union's attorney yelled at him and swore at him and, therefore, put him in fear that she would not adequately represent him at the arbitration hearing. In essence, he complains about a heated disagreement with the attorney. These allegations simply do not rise to the level of outrageous conduct contemplated by the tort of intentional infliction of emotional distress. Indeed, they are the sorts of factual allegations that would otherwise be seen in a legal malpractice claim. Elkins fails to allege any other facts and relies solely on his conclusory recitation of the elements of the tort. By permitting Elkins to proceed with his tort claim under these insufficient allegations, the court would be inviting a claim for intentional infliction of emotional distress in run-of-the-mill employment cases and in legal malpractice claims asserted in the Commonwealth. The tort of intentional infliction of emotional distress is an extraordinary remedy, reserved for truly extreme and outrageous conduct. The plaintiffs' allegations, which really arise to no more than a claim that the Union breached its DFR, fall well short of sufficiently alleging the extreme facts necessary to support such a claim and their claim should be dismissed.

## ARGUMENT

The Union has objected to the Report and Recommendation of Magistrate Judge Dein concerning the Union's motion to dismiss the complaint under Rule 12(b)(6). Accordingly, the district court conducts a de novo review of the motion to determine whether it should be granted.  Fed. R. Civ. P. 72(b).

**I.     The plaintiff's claim for breach of the duty of fair representation should be dismissed since he fails to allege facts showing that the Union undermined the arbitral process, he failed to raise his allegations of hostility before the arbitrator, and he fails to allege facts showing that he would have otherwise prevailed on his grievance**

### A.     *Elkins fails to allege specific facts that if proven could establish a breach of the duty of fair representation*

A plaintiff alleging a violation of the duty of fair representation should be required to plead his allegations with particularity. *Slagley v. Illinois Central R.R.*, 397 F.2d 546, 552 (7th Cir. 1968); *Augspurger v. BLE*, 510 F.2d 853, 859 (8th Cir. 1975); *Lusk v. Eastern Product Corp.*, 427 F.2d 705, 708 (4th Cir. 1970); *Balowski v. UAW*, 372 F.2d 829, 835 (6th Cir. 1967); *Gainey v. Brotherhood of Ry. & S.S. Clerks*, 313 F.2d 318, 323 (3rd Cir. 1963); *Hardcastle v. Western Greyhound Lines*, 303 F.2d 182, 185 (9th Cir. 1962).[2/] This requirement of specificity in pleading derives from the substantial

---

[2/]     *See also Archie v. Chicago Truck Drivers*, 585 F.2d 210, 219-20 (7th Cir. 1978); *Williams v. General Foods Corp.*, 492 F.2d 399, 405 (7th Cir. 1974); *Curry v. Atlanta Newspapers*, 1981 U.S. Dist. LEXIS 11085 (N.D. Ga. 1981)("where, as here, the plaintiff alleges that the union acted arbitrarily and in bad faith, but fails to set forth specific facts supporting that contention, the complaint should be dismissed for failure to state a claim), *citing Lusk*, 427 F.2d at 708; *Stephens v. Roadway Express*, 1982 U.S. Dist. LEXIS 9561 (N.D. Ga. 1982)("conclusory allegations of a breach of a duty of fair representation without supporting facts tending to prove this breach are themselves insufficient to state a claim"); *West v. Keebler Co.*, 1982 U.S. Dist. LEXIS 16756 (M.D. Ga. 1982)("it is not enough for plaintiff . . . to offer subjective suspicions of arbitrary conduct based upon his perceptions as to the merits of his grievance"); *Maisonet v. Trailer and Marine Transport, Inc.*, 514 F. Supp. 1129, 1133 (D.P.R. 1981)("bare

deference owed to a union's decision making when considering a claim for breach of the duty of fair representation. "Courts seeking to conduct a substantive review of a union's conduct must do so in a 'highly deferential' manner. Given this high degree of judicial deference, a plaintiff who alleges a breach of the duty of fair representation must do so with a fair measure of specificity." *Washington v. Chicago & N.W. Transportation Co.*, 1992 U.S. Dist. LEXIS 15900 (N.D. Ill. 1992). As noted by the Seventh Circuit Court of Appeals in *Archie v. Chicago Truck Drivers*, 585 F.2d 210, 219-20 (7th Cir. 1978), when addressing a claim for breach of DFR under the LMRA, "a complaint brought pursuant to 29 U.S.C. § 185 is legally insufficient unless the allegations of the complaint contain more than conclusory statements alleging improper representation, i.e. unless they set forth facts showing discriminatory conduct." *Archie*, 585 F.2d at 219-20.

This pleading requirement is also consistent with the well-established policy against judicial interference in labor affairs. If courts permitted plaintiffs to maintain a cause of action for breach of the duty of fair representation on the basis of the conclusory and empty allegations presented here, virtually any unfavorable grievance result could give rise to litigation for breach of DFR, requiring unions and employers to expend costly sums in litigation defeating claims which will ultimately be proven to be without any substance.

---

conclusory allegation of the existence of a conspiracy, without more, is insufficient to state a cause of action")

**B.    Elkins' allegations fail to establish a claim for breach of the duty of fair representation since he did not present his allegations of hostility by the Union's attorney to the arbitrator and his allegations present nothing more than a disagreement with the Union over tactics and interpretation of the parties' collective bargaining agreement**

1.    The Union is entitled to great deference in prosecuting grievances under a collective bargaining agreement

The duty of fair representation gives wide latitude to a union in conducting representation under a collective bargaining agreement.  To prevail in alleging a breach of that duty a plaintiff must establish that the union's actions were "arbitrary, discriminatory, or in bad faith." *Plumley v. Southern Container*, 303 F.3d 364, 374 (1st Cir. 2002), *quoting Vaca v. Sipes,* 386 U.S. 171, 186 (1967).  The arbitrariness required is conduct that is "so far outside a wide range of reasonableness as to be irrational." *ALPA v. O'Neill*, 499 U.S. 65, 67 (1991).  The court must be "highly deferential" to the union. *Morales-Vallellanes v. Potter*, 339 F.3d 9, 16 (1st Cir. 2003), *citing O'Neill*. In the context of grievance processing, a union breaches its DFR only if its actions "seriously undermined the arbitral process." *Vaca*, 386 U.S. at 191.

The grievance process is not a "straightjacket" forcing the union to pursue every grievance filed by an employee. *Ayala v. Union de Tronquista de Puerto Rico*, 74 F.3d 344, 345-46 (1st Cir. 1996).    The union has considerable discretion in adjusting a grievance.  *Id.* at 346.  Negligence in the processing of a grievance does not constitute a breach of the DFR.  *MacKnight v. Leonard Morse Hospital*, 828 F.2d 48, 51 (1st 1987). *See also Miller v. United States Postal Serv.*, 985 F.2d 9, 12 (1st Cir. 1993).  Nor is it a breach of that duty for a union to misconstrue a collective bargaining agreement in processing a grievance.  *Ayala*, 74 F.3d at 346.  And merely because the union disposes

of a grievance in a manner contrary to the wishes of the employee does not give rise to a claim for breach of the DFR. *Id. See also Williams v. Sea-Land Corp.*, 844 F.2d 17, 21 (1st Cir. 1988)(grievant's disappointment with union's decision that his discharge was with cause does not meet standard for breach of DFR). Even the union's personal hostility or animosity toward the grievant is insufficient to establish a breach of the DFR in the absence of facts showing "that the union's handling of the grievance was itself materially deficient." *Leonard Morse Hospital*, 828 F.2d at 51.

2.    The plaintiffs' complaint fails to state a claim for breach of the DFR since it alleges only that Elkins disagreed with the contract interpretation and litigation tactics of the Union's attorney

The plaintiffs' complaint is heavy with their subjective characterizations of the motives of Union representatives who prosecuted Mr. Elkins' grievance. What is clear from the complaint is that—for the second time—the union took to arbitration Mr. Elkins' discharge by Shuttle America. The discharge that gave rise to the grievance that is the subject of this action occurred only after the union won Mr. Elkins' reinstatement from an earlier discharge by Shuttle America. Complaint ¶ 15.

When Mr. Elkins failed to report for work following his reinstatement and was terminated, the Local again filed a grievance on his behalf. Complaint ¶¶ 22, 27. It prosecuted that grievance to an arbitration hearing and, though it was not required to do so, retained an attorney to handle the grievance. Complaint ¶¶ 27, 40.

Plaintiffs must establish that the Union prosecuted Mr. Elkins' grievance in a perfunctory manner that was arbitrary, discriminatory, or in bad faith. The arbitrariness required is conduct that is "so far outside a wide range of reasonableness as to be irrational." *ALPA v. O'Neill*, 499 U.S. 65, 67 (1991).

The plaintiffs' allegations fall well short of this standard. They complain first that the Union's attorney disagreed with Mr. Elkins on the availability of emotional distress damages in arbitration and declined to present that issue to the system board of adjustment. Complaint ¶¶ 39, 43. They also complain of tactical decisions made by the union attorney not to present evidence of Mr. Elkins' medical condition or call another union attorney as witness. *Id*. ¶¶ 43, 44. Of the litany of allegations in paragraph 44 of the complaint, the specific allegations made relate only to tactical decisions by the union's attorney on what evidence or argument ought to be presented to the system board. *See* Complaint ¶¶ 44(c)-(k), (n)-(o). The other allegations are conclusory and subjective characterizations of Ms. Creighton's demeanor during the hearing and its effect on the system board. Complaint 44(b), (l), (m), (p). Elkins simply cannot establish facts proving the state of mind of the System Board.

Plaintiffs allege nothing more than that Mr. Elkins disagreed with the tactical decisions of the Union's attorney and her appraisal of his grievance. But that is insufficient to make out a claim for breach of DFR. Even if the Union attorney misconstrued the contract in determining that Mr. Elkins' medical condition was not relevant to the grievance and emotional distress damages were unavailable under the agreement,[3]/ that is not enough to establish a breach of DFR. *Ayala*, 74 F.3d at 346; *Williams*, 844 F.2d at 21. The union is granted "great latitude in determining the merits of an employee's grievance and the level of effort it will expend to pursue it." *Miller*, 844 F.2d at 12.

---

[3]    Whether a particular damages remedy was available under the parties' agreement could have no relevance to the merits of Elkins' discharge.

In *Williams*, the grievant, a seaman, was discharged for alleged insubordination. The union assigned an agent to investigate the issue and the agent concluded Williams' discharge was for just cause. The union refused to process the grievance. The First Circuit held that the union's conduct could not be described as arbitrary, discriminatory, or in bad faith. 844 F.2d at 21.

Here, the complaint shows "the union neither ignored [Elkins'] complaint nor processed it in a perfunctory way." *Williams*, 844 F.2d at 21. Rather, it prosecuted Elkins' grievance fully to arbitration. The complaint fails to allege more than the plaintiffs' disagreement with the Union's evaluation of his grievance and its chosen tactics for presenting the case at arbitration. *Plumley*, 303 F.3d at 375 (plaintiff's allegation that union disposed of grievance contrary to his wishes inadequate to establish claim for breach of DFR); *Williams*, 844 F.2d at 21 (grievant's disappointment with union's evaluation of his grievance does not give rise to a claim for breach of DFR). The Union is entitled to its interpretation of the collective bargaining agreement and its disagreement with Elkins about the proper interpretation of the agreement cannot support a claim for breach of the duty of fair representation. *Dirring v. Lombard Bros., Inc.*, 619 F. Supp. 911, 916 (D. Mass 1984). At most, plaintiffs allege that the Union's attorney, Ms. Creighton, acted negligently in prosecuting the grievance at hearing. Complaint ¶¶ 44(p), 46 (representation inadequate), 58 (attorney's actions "constitute negligence), 59 (attorney "negligent in her representation"). But negligence does not create a DFR breach. *Miller,* 985 F.2d at 12; *Leonard Morse Hosp.*, 828 F.2d at 51.

3.     Elkins' allegations that the Union's attorney was hostile and abusive toward him do not state a claim for breach of the DFR since the complaint does not allege facts that could establish the Union's representation was materially deficient and Elkins failed to present his claim of hostility to the arbitrator

Even the plaintiffs' allegations that Ms. Creighton swore and was abusive toward Mr. Elkins in a preparation meeting before the arbitration are subjective characterizations and inadequate to make out a DFR breach. As the First Circuit Court of Appeals noted in *Leonard Morse Hospital*, hostility or animosity alone do not establish a DFR breach. 828 F.2d at 51. Rather, the plaintiff must be able to show the union's handling of the grievance was itself materially deficient. *Id.* Courts have also noted that the collective bargaining and union environment can be a forum where opinions and disagreements are strongly stated in a heated fashion. *See, e.g., Petramale v. Local No. 17 of Laborers Int'l Union*, 736 F.2d 13, 17 (2d Cir. 1984) (noting that "union meetings, especially those involving ... disputes between rival factions within the union, ... can be fraught with tension and even sparked with vitriol and calumny," and holding that "leeway for the expression of strongly held views in emotional terms ... must be afforded union members") (internal quotation omitted). The Supreme Court has noted that "robust language and clash of strong personalities" are "commonplace in various labor contexts." *Farmer v. B'hd of Carpenters,* 430 U.S. 290, 306 (1977). Elkins' allegations of a heated disagreement with Creighton over contract interpretation and the handling of his grievance are hardly unusual.

Plaintiffs allege in a conclusory way that Ms. Creighton was hostile to Elkins, but fail to allege facts that could show the union's representation at the hearing was irrational, in bad faith or discriminatory. Given that the Union twice prosecuted Mr.

Elkins' discharge grievances to arbitration, the complaint's conclusory allegations that the Union discriminated against him or held bad faith toward him cannot be credited. Indeed, Elkins does not allege, in other than conclusory fashion, actual hostility toward him from the Union, only its attorney Creighton.

In concluding that the plaintiffs stated a claim for breach of the DFR, Magistrate Judge Dein identified plaintiffs' allegations that Union attorney Creighton held "actual animosity" toward Elkins and that this hostility materially affected the representation provided. *R&R* at 35. The Magistrate Judge cited plaintiffs' allegations that Creighton refused to sit next Elkins during the arbitration hearing and displayed open hostility that detracted from his credibility. *Id*. Of course, it is hardly unusually for counsel to have a business agent assist during an arbitration hearing rather than a grievant. And Elkins' allegation that Creighton's conduct detracted from his credibility would require findings on the arbitrator's state of mind that can never be proven. But, for purposes of the Union's motion, the plaintiffs' allegations of hostility by Creighton fail to state a claim because the law required Elkins to present the issue of that alleged hostility to the arbitrator. *Early v. Eastern Transfer*, 699 F.2d 552 (1st Cir. 1983).

In *Early,* the court of appeals held that "in the absence of exceptional circumstances, we will not entertain a claim of personal bias where it could have been but was not raised at the hearing to which it applies." 699 F.2d at 558. *See also Dirring,* 619 F. Supp. at 917 ("The First Circuit has agreed with the generally accepted rule of arbitration that only in exceptional circumstances will a claim of personal bias or conflict of interest be entertained where it could have been raised at the hearing to which it applies."). Here, Elkins does not allege any facts that, if proven, would establish that he either presented his allegations of hostility and bias by Creighton to the

arbitrator or that he was somehow unable to do so. Indeed, nothing in the complaint alleges that Elkins raised his objections about Creighton to the Union at any time prior to the hearing. Having failed to raise his allegations of bias either to the Union (giving it an opportunity to provide a different representative) or to the arbitrator at the hearing, Elkins' claim is barred as a matter of law. *Early,* 669 F.2d at 558 ("we cannot accept that parties have a right to keep two strings to their bow—to seek victory before the tribunal and then, having lost, to seek to overturn it for bias never before claimed."). *See also Hazard v. Southern Union Co.*, 275 F. Supp. 2d 214, 225 n. 13 (D.R.I. 2003), *citing Early.*

Dismissal is the proper result here since Elkins has not alleged any hostility from the Union to him. The Union was not obligated to provide Elkins an attorney and Attorney Creighton represented the Union, not Elkins. *Johnson v. United Steelworkers District 7*, 843 F. Supp. 944, 947 (M.D. Pa. 1994)(DFR does not require union to provide attorney to grievant); *Best v. Rome,* 858 F. Supp. 271 (D. Mass. 1994)(union attorney represents union, not grievant). Elkins' failure to notify the Union of his alleged conflict with Creighton deprived it of the ability to cure the alleged problem.

As noted by the court in *Dirring*, a complaint about the Union choosing not to present certain arguments to an arbitrator cannot give rise to a claim for breach of the DFR in light of the Union's right to maintain its interpretation of the contract and "especially when [the grievant] himself could have raised the argument when he made a statement to the arbitrator." 619 F. Supp. at 916. While, in an exercise of artful pleading, Elkins omitted from his complaint the fact that he testified at the hearing, his complaint nowhere alleges that he was refused the right to testify before the arbitrator. Since Elkins could have raised himself the arguments allegedly omitted by the Union's

attorney—particularly since Elkins himself is an attorney (Complaint ¶9)—his disagreement with the Union over the relevance of his medical excuse testimony cannot state a claim for breach of the DFR.  619 F. Supp. at 916.

> 4.    Since the Union prosecuted Elkins' grievance to arbitration, he is bound by that result; Elkins otherwise makes only conclusory allegations that fail to allege facts that if proven could establish he had a meritorious grievance

The complaint makes plain that Elkins consented to representation by the Union in his grievance proceeding. A plaintiff is bound by the outcome of an arbitration in which he agreed to be represented by the union.  *See Parker v. Connors Steel*, 855 F.2d 1510, 1520-22 (11th Cir. 1988); *Crenshaw v. Allied Chemical*, 387 F. Supp. 594 (E.D. Va. 1975)(where plaintiffs consented to representation by the union and did not allege facts showing collusion by the employer or union in the process, they are bound by the result of the arbitration).[4]/ That rule is particularly appropriate in the RLA context since an employee has the right to pursue a grievance individually before the System Board with a representative of his own choosing, and not rely on the Union to represent him.  *See Capraro v. United Parcel Serv. Co.*, 993 F.2d 328, 336 (3d Cir. 1993); *Air Line Pilots Ass'n v. Precision Valley Aviation*, 855 F. Supp. 27, 32 (D.N.H. 1993)(Employees have a statutory right to designate representatives to arbitrate minor disputes); *Blakeley v. USAirways*, Inc., 23 F. Supp. 2d 560, 566 (W.D. Pa. 1998)(employee may be represented before System Board by person of his own choosing).

---

[4]    Because the plaintiff's grievance constituted a "minor dispute" under § 2, Third of the Railway Labor Act, it was committed to the exclusive jurisdiction of the System Board of Adjustment and all parties, including the plaintiff, are bound by the result. *Conrail v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 303-04 (1989); *Detroit & Toledo Shore Line Railroad Co. v. United Transportation Union, et al.*, 396 U.S. 142 (1969).

Apart from the plaintiffs' insufficient allegations of bias and disagreement with the Union attorney's tactics at the hearing, the complaint presents no more than a conclusory recitation of the elements of a DFR claim that Creighton's representation was "perfunctory" and "inadequate." *R&R* at 36. Plaintiffs simply allege that Creighton did not introduce certain testimony that Mr. Elkins missed training for medical reasons and failed to object to improper evidence or testimony. *Id.* The complaint fails to allege what this improper evidence or testimony was, or how it could affect the outcome of the arbitration. The complaint nowhere alleges facts to establish that Elkins would otherwise have prevailed on his grievance absent the failures alleged. Since plaintiff must be able to establish that his grievance was meritorious, the inability of Elkins to allege facts that if proven could establish that his grievance had merit prohibits him from stating a claim for breach of the DFR. *Ooley v. Schwitzer Div., Household Mfg., Inc.*, 961 F.2d 1293, 1303-04 (7th Cir. 1992); *NLRB v. Eldorado Mfg.*, 660 F.2d 1207, 1214 (7th Cir. 1981). The plaintiffs' failure to allege specific facts—rather than conclusory assertions—should be fatal to their claim of a breach of the DFR since the best reading of the cause of action requires more specific pleading in light of the substantial deference paid to the Union.

## II.    The plaintiffs' state law tort claims should be dismissed as they are preempted by the union's duty of fair representation

### A.    *The duty of fair representation completely preempts state law claims that challenge a union's representative actions*

"Preemption [] can occur by operation of the so-called duty of fair representation (DFR)." *BIW Deceived v. Local S6, IAMAW,* 132 F.3d 824, 830 (1st Cir. 1997). Unlike preemption by Section 301 of the LMRA, preemption by the DFR doctrine is not

predicated on the necessity of interpreting the collective bargaining agreement to dispose of a plaintiff's claims. Rather, "state law is preempted whenever a plaintiff's claims invoke rights derived from the union's duty of fair representation." *Id.* DFR preemption operates similarly to Section 301 preemption in that it completely preempts state law claims within its scope. *Id.* at 831. Accordingly, the "artful pleading" doctrine applies to analyze a claim pled as a state law claim that in fact states a claim for the breach of the duty of fair representation. *Id.*

The scope of DFR preemption encompasses all representational conduct by a union. *BIW Deceived,* 132 F.3d at 833 (non-member plaintiffs' claims of discrimination by union in employer's interview process preempted since union "plainly acted in a representational capacity during the recruitment process"); *Cahoon v. IBEW, Local 261*, 175 F. Supp. 2d 200, 227 (D. Conn. 2001). State law duties will only escape preemption if they are "wholly outside the ambit of those obligations circumscribed by the federal duty." *Bergeron v. Henderson*, 52 F. Supp. 2d 149, 153 (D. Maine 1999). Moreover, the "local interest" exception to preemption under *San Diego Bldg. Trades Council v. Garmon* , 359 U.S. 236 (1959), does not apply to preemption under the DFR doctrine because DFR preemption presents an issue of substantive conflict between state and federal law, where federal law must prevail. *Cahoon*, 175 F. Supp. 2d at 228.

> **B.    The plaintiffs' state law claims complain of actions by the Union, through its agents, as exclusive representative in the grievance process; accordingly, the claims are preempted by the union's duty of fair representation**

It is clear from the complaint that Mr. Elkins' state law claims rely entirely on events during the grievance process. He complains of the union attorney's conduct during a preparation meeting the night before the arbitration hearing. Complaint ¶ 41.

He further complains of the union attorney's conduct during the hearing. *Id.* ¶ 43-44. None of the allegations of the complaint go beyond the scope of the grievance process or the union's representation of Mr. Elkins. As Magistrate Judge Dein noted, the plaintiffs asserted in opposing the motions to dismiss that the Union's attorney acted as a union representative. *R&R* at 44.

In his claim for negligent infliction of emotional distress[5], Mr. Elkins alleges specifically "Ms. Creighton was negligent in her representation of Mr. Elkins." Complaint ¶ 59. The union acts in its representative capacity in the grievance process and its conduct in that process is governed by its duty of fair representation. *Vaca*, 368 U.S. at 191. By asserting a claim for negligent action in the grievance process, Mr. Elkins is challenging conduct where "the Union plainly acted in a representational capacity" to prosecute the grievance. *BIW Deceived*, 132 F.3d at 833. M.J. Dein did not address the Union's motion to dismiss the plaintiffs' claim for negligent infliction of emotional distress. However, since Elkins fails to identify any duty negligently violated by the union except the duty of fair representation owed in processing his grievance, this negligent infliction claim is preempted by the DFR. The exception from preemption for outrageous conduct does not apply to a claim for negligent infliction of emotional distress, *R&R* at 37, which does not involve an element of outrageousness. The plaintiffs are simply attempting to evade the clear authority under DFR law that negligence by a

---

[5]    The elements for a claim of negligent infliction of emotional distress are that (1) the defendant was negligent; (2) that plaintiff suffered emotional distress as a result of the negligence; (3) the emotional distress was caused by the negligence; (4) the plaintiff suffered physical harm manifested by objective symptomatology; and (5) a reasonable person would have suffered emotional distress under the same circumstances. *Goiun v. Gouin*, 249 F. Supp. 2d 62, 74 (D. Mass. 2003).

Union in the grievance process does not give rise to a claim for relief.  The claim is preempted by the DFR.

Further, Mr. Elkins' claim for intentional infliction of emotional distress is predicated on his factual allegations regarding the conduct of the Union's attorney as representative in the grievance process.  In pleading their state tort claims, plaintiffs incorporated their DFR factual allegations by reference in its Count II and state, "in taking the actions set forth above", the Union is liable for the tort of intentional infliction of emotional distress based on the actions of its agent.  Complaint ¶¶ 55, 56. Elkins does not allege any conduct going beyond the scope of the Union's representative capacity in pleading either tort claim.  Rather, he complains only of conduct in the grievance process.  His intentional infliction of emotional distress claim is likewise preempted by the duty of fair representation.  *Bergeron*, 52 F. Supp. 2d at 153 (state law duties must "wholly outside the ambit" of the duty of fair representation to avoid preemption); *Cahoon*, 175 F. Supp. 2d at 227.

Elkins' attempt to cast these claims as state law torts cannot avoid the inevitable conclusion that they are preempted.  *Sousa v. Stop & Shop Supermarket*, 1999 U.S. Dist. LEXIS 9367 (D. Mass. 1999), *quoting Steelworkers v. Rawson*, 495 U.S. 362, 371-72 (1985)("preemption cannot be avoided by characterizing [a] Union's negligent performance of what it does on behalf of the members of the bargaining unit pursuant to the terms of the collective-bargaining contract as a state-law tort.").  As the Supreme Court noted in *Farmer*, "The potential for undue interference with federal regulation would be intolerable if state tort recoveries could be based on the type of robust language and clash of strong personalities that may be commonplace in various labor contexts."  430 U.S. at 305-06.  Elkins complains of nothing more than just such "robust

language and clash of strong personalities." Accordingly, Counts II and III of the complaint should be dismissed with prejudice. *Vargas v. Geologistics Americas, Inc.*, 2854 F.3d 232, 234 (1st Cir. 2002)(state law actions subject to DFR preemption do not survive.).

## III.    The complaint fails to state a claim for intentional infliction of emotional distress

### A.    *Standard for claim of intentional infliction of emotional distress*

Under Massachusetts law a plaintiff seeking to prosecute a claim for intentional infliction of emotional distress must be able to prove that the defendant (1) intended to inflict emotional distress; (2) by undertaking actions that were extreme and outrageous, thereby (3) causing emotional distress which (4) was severe.  *Flibotte v. Pennsylvania Truck Lines, Inc.*, 131 F.3d 21, 27 (1st Cir. 1997).   "Massachusetts law and the Restatement make clear that 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' do not constitute 'extreme and outrageous behavior.'" *Gouin*, 249 F. Supp. 2d at 78.   Rather, the conduct challenged must "go beyond all possible bounds of decency and [be] regarded as atrocious and utterly intolerable in our civilized community."  *Id.*

### B.    *The plaintiffs' allegations cannot establish that Ms. Creighton's conduct was outrageous and the claim should be dismissed*

Mr. Elkins alleges only that he had an argument with Ms. Creighton in a meeting prior to the arbitration hearing over the relevance of his medical condition and that she swore at him and was "abusive" during that argument.  Complaint ¶ 41.  His additional allegations go only to Ms. Creighton's representation in the arbitration claiming that she would not sit with him and had "general hostility" toward him.  Complaint ¶ 43, 44(b),

(l), (m).  These allegations fall squarely under the rubric of "petty oppressions and other trivialities."  *Goiun*, 249 F. Supp. 2d at 78.  Swearing at a person and refusing to sit with him during an arbitration hearing do not begin to approach conduct that is "beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in our civilized community."  *Id.*

Magistrate Judge Dein recommended that the plaintiff be permitted to go forward with his claim for intentional infliction of emotional distress on the basis that he allegedly informed Ms. Creighton that his mental state had deteriorated and that his emotional state was fragile.  *R&R* at 40.[6]/ M.J. Dein also noted that Elkins alleges Creighton verbally abused him and cast doubt on her representation of him that placed him in fear of losing his job.  *Id.*  These types of allegations have been rejected as failing to state a claim for intentional infliction of emotional distress.

Courts have repeatedly rejected fear of loss of employment as supporting a claim for intentional infliction of emotional distress.  *See, i.e., Capresecco v. Jenkinton Borough*, 261 F. Supp. 2d 319, 323 (E.D. Pa. 2003).  Indeed, other jurisdictions have noted that "the rare instances where the New York courts have found the complaint sufficient to state an [intentional infliction of emotional distress] claim in the

---

[6]    The Union notes that Elkins' allegations in support of his claim for intentional infliction of emotional distress are in conflict with his claim for breach of the duty of fair representation.  Plaintiff alleges that he had a deteriorated mental state and his emotional state was fragile.  *R&R* at 40.  But in order to be reinstated as a pilot, Elkins needed to be medically fit.  *See* 14 C.F.R. § 67.107.  His allegations regarding his mental and emotional condition show that Elkins was not fit to work as a pilot and, therefore, could not be reinstated. This medical qualification issue illustrates why the dispute arose between Elkins and the Union's attorney over whether to introduce medical testimony in the arbitration hearing.  These conflicting claims show that Elkins' state tort claims are preempted and he should be restricted to seeking relief under his claim for breach of the duty of fair representation.

employment context generally involve allegations of more significant battery, or improper physical contact." *Curto v. Medical World Commun., Inc.*, 388 F. Supp.2d 101, 112 (E.D.N.Y. 2005). "It must be recognized that it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Cox v. Keytone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988). Fear of loss of employment, particularly where a party is legally entitled to take its position (as the Union was entitled to present its interpretation of the agreement in Elkins' arbitration), will not support a claim for intentional infliction of emotional distress. *Id.* ("while loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event and cannot provide a basis for recovery for intentional infliction of emotional distress."). *See also Flibotte*, 131 F.3d at 27; *Hirscheimer v. Assoc. Metals and Minerals Corp.*, 1997 U.S. Dist. LEXIS 12838 at *17-18 (S.D.N.Y. 1997)(alleged six-month campaign of harassment by employee leading to unlawful termination in sufficient to state a claim for intentional infliction of emotional distress).

Elkins' allegations of verbal harassment, even of a person in a compromised mental or emotional state, have likewise been rejected by the courts. *See* cases collected in *Mariani v. Consolidated Edison Co.*, 982 F. Supp. 267, 277 n. 7 (S.D.N.Y. 1997). *See also Curto*, 388 F. Supp. 2d at 112 ("Plaintiff's allegations that she was verbally abused, ostracized by co-workers, falsely criticized, directed not to report any complaints under threat of termination do not rise to the level of outrageousness required to state a claim for intentional infliction of emotional distress."). *See also Walther v. Liebman,* 1998 U.S. Dist. LEXIS 15592 at * 10 (S.D.N.Y. 1998).

Apart from these inadequate allegations, M.J. Dein cited only the plaintiffs' conclusory recitation of the elements of the tort in which they assert that Creighton's conduct was "extreme and outrageous, beyond all possible bounds of decency", and "utterly intolerable in a civilized society." *R&R* at 40. But the standard for offensive conduct under this tort is an objective one that the court is obligated to evaluate as a threshold matter.[7]/ Plaintiffs' allegations against Ms. Creighton's conduct must fail in light of the fact that courts strictly construe when an attorney's conduct may establish a claim for the intentional infliction of emotional distress. *Williams v. Attorney Martin Callaghan*, 938 F. Supp. 46, 51 (D.D.C. 1996). Courts have held that plaintiffs failed to state claims for this tort when alleging an attorney fraudulently seized control of business interest, withheld legal services when sexual favors were not granted by the client, delayed resolution of an action, or represented both parties in a transaction while taking a position detrimental to one party. *Williams*, 938 F. Supp. at 51 (internal citations omitted). In *Williams*, the court held a plaintiff failed to state a claim for intentional infliction of emotional distress where he complained that an attorney failed to adequately investigate a case, failed to properly interview witnesses, failed to vigorously cross-examine witnesses or zealously advocate for the client. *Id.*

Elkins' allegations against Creighton allege no more than, at worst, inadequate representation by her in the grievance proceeding. Notwithstanding the hyperbole utilized by the plaintiffs, these facts fail to allege a claim for intentional infliction of

---

[7]    Magistrate Judge Dein's Recommendation that plaintiffs be permitted to move forward on their claim for intentional infliction of emotional distress implies that at the Rule 12 stage a plaintiff should be give latitude to discover facts in support of a claim for this tort. But case law demonstrates that the standard for pleading such a claim is a high one and that courts review the adequacy of such pleadings at the preliminary stage. *See Williams*, 938 F. Supp. at 51 n. 5.

emotional distress.   Indeed, by permitting plaintiff to move forward under such inadequate factual allegations against an attorney, the court would invite the assertion of this tort in legal malpractice cases as a matter of course.  But the tort of intentional infliction of emotional distress is designed to target only truly outrageous conduct, not common negligence or malpractice, much less verbal harassment.  The plaintiffs' claim falls well short of the exacting standards of this tort and should be dismissed.

## IV.   If the court chooses not to dismiss the plaintiffs' action against the Union, this action should be transferred to the Western District of New York

The Magistrate Judge noted that plaintiffs requested in a footnote a transfer of their action in lieu of dismissal for lack of personal jurisdiction.    The Magistrate Judge recommended that such transfer be granted.  *Id.*  The Union submits that if the district court chooses to transfer this matter, the standard of 28 U.S.C. § 1404(a) requires transfer to the Western District of New York.

Under Section 14041(a), the convenience of witnesses is "probably the most important factor."  *Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass. 1991), *citing Brant Point v. Poetzch*, 671 F. Supp. 2, 5 (D. Mass. 1987).  The court should also consider the ability to compel witnesses to trial.  *Id.* at 20.  Given the choice between the Western District of Pennsylvania, Pittsburgh District, and the Western District of New York, Buffalo District, the appropriate venue for transfer is the Western District of New York.   There are no witnesses who reside in the Western District of Pennsylvania, whereas the Local and Ms. Creighton reside in the Western District of New York.  If Ms. Creighton is dismissed from this action, she will become a nonparty witness and could only be compelled to trial in the Western District of New York.  Any Company witnesses will also be nonparty, but since they cannot be compelled to trial in either the Western

District of New York or the Western District of Pennsylvania, their convenience is equally compromised by the Districts. As for the plaintiffs, M.J. Dein noted that it appears Elkins currently resides in Nova Scotia, Canada. Convenience to the plaintiffs is also equally compromised by either District. However, in light of the fact that the Western District of New York would be convenient for the Local and would permit compelling Ms. Creighton as a witness at trial, satisfying at least some of the elements of Section 1404(a), the Western District of New York should prevail over the Western District of Pennsylvania, which satisfies none of those elements.

## CONCLUSION

Contrary to M.J. Dein's Recommendation, the plaintiffs should not be permitted to pursue their claims for either breach of the duty of fair representation or their state tort claims. Congress intended the System Board of Adjustment to be the final arbiter of minor disputes, such as the one that arose from Elkins' termination. It did not wish such disputes to be dragged out into courts of law. *See Union Pacific v. Sheehan,* 439 U.S. 89, 94 (1976)("Congress considered it essential to keep these so-called "minor" disputes within the Adjustment Board and out of the courts. *Trainmen v. Chicago, R. & I. R. Co.,* 353 U.S. 30, 40 (1957). The effectiveness of the Adjustment Board in fulfilling its task depends on the finality of its determinations."). The duty of fair representation is an extraordinary remedy, originally crafted under the RLA by the Supreme Court to address racial discrimination by certain rail unions against black employees. *See Steele v. Louisville & Nashville R. Co.,* 323 U.S. 192 (1944). As illustrated by its origin, the DFR action is intended for egregious circumstances, not as a vehicle for a grievant's recriminations over an unsuccessful arbitration. Permitting Elkins to "pull the second string in his bow", *Early*, 699 F.2d at 588, would go against the long-established policy

discouraging judicial interference in union affairs and would undermine the finality of the System Board's decision resolving his grievance. Considering the paucity of allegations presented in the complaint, the Court should not indulge the plaintiffs' recriminations. For the foregoing reasons, the Union submits that this court should overrule the Recommendations of Magistrate Judge Dein regarding the Plaintiffs' claim for breach of the duty of fair representation and the plaintiffs' state tort claims, and dismiss those claims with prejudice.[8]/

Dated:  September 12, 2006.          Respectfully submitted,


                                   /s/William R. Wilder
                                   William R. Wilder
                                   Baptiste & Wilder, P.C.
                                   1150 Connecticut Ave., N.W.
                                   Suite 500
                                   Washington, D.C. 20036
                                   (202) 223-0723
                                   (202) 223-9677 [fax]
                                   wwilder@bapwild.com

                                   John D. Burke, BBO#556951
                                   Dumont, Morris and Burke, P.C.
                                   14 Beacon Street, Suite 300
                                   Boston, MA  02108
                                   (617) 227-7272/(617) 227-7025 [fax]

                                   Counsel for Defendant Local 264

---

[8]     Dismissal of these primary claims by the plaintiffs would also require dismissal of Mrs. Elkins' derivative claim for loss of consortium.  *See Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 74 (1st Cir. 2001); *Breton v. Travelers Ins. Co.*, 147 F.3d 58 (1st Cir. 1998).

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing motion was served on counsel for the plaintiffs and defendants via the Court's ECF system this 12th day of September 2006.


/s/William R. Wilder
William R. Wilder